UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 10-256 (RMC) |
| | : | Hon. Rosemary M. Collyer |
| HENRY SARBA, | : | Sentencing Date: May 4, 2011 |
| also known as Henry Saravia, | : | |
| also known as Flaco, | : | |
| also known as Flaco from Park View, | : | |
| Defendant. | : | |

UNITED STATES'S MEMORANDUM
IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby states the following in support of its sentencing allocution for

defendant Henry Saravia[1] (also known as Henry Sarba, Flaco, and Flaco from Park View).

I.  BACKGROUND

Saravia is a member of *La Mara Salvatrucha*, also known as the MS-13 gang (hereafter

"MS-13").  MS-13 is a criminal street gang and enterprise composed primarily of immigrants or

descendants of immigrants from El Salvador, with members operating throughout the United States,

including within the District of Columbia.

MS-13 members are expected to protect the name, reputation, and status of the gang from

rival gang members and other persons.  To protect the gang and to enhance its reputation, MS-13

---

[1]    The Presentence Report ("PSR") indicates that the defendant's legal surname is Saravia.  (PSR, p. 16, n. 3).  This memorandum will refer to him as Saravia.

members are expected to use any means necessary to force respect from those who show disrespect, including acts of intimidation and violence.

MS-13 members have engaged in criminal activity, including murders, attempted murders, narcotics distribution, assaults, robberies, extortions, stealing vehicles, and obstructing justice in the form of threatening and intimidating witnesses whom they believed to be cooperating with law enforcement. A common practice of MS-13 is to force individuals who are involved in illicit criminal activities, such as prostitution or drug distribution, to routinely pay "rent," or extortion money, to MS-13. MS-13 often forces the payment of rent by violence or threats.

MS-13 has been organized in the District of Columbia and elsewhere in "cliques," that is, smaller groups operating in a specific city or region. MS-13 cliques sometimes work together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement. In the District of Columbia and surrounding metropolitan jurisdictions, these cliques include Sailors, Normandy, Peajes, Western, Uniones, Fultons, and Park View. Members from different cliques often work together to commit crimes for the benefit of MS-13 as a whole. Saravia is affiliated with the MS-13's Park View clique.

On December 11, 2009, five members or associates of MS-13's Sailors and Fultons cliques – Wilfredo Mejia (also known as Freddie and Majestic), Omar R. Aguilar (also known as Omar Rivera-Aguilar and Flaco), Carlos Silva (also known as Carlos M. Silva-Cortez and Cangri), Luis Velasquez (also known as Peligro), and Dimas Perez (also known as Dimas Perez-Carvajal and Pelon) – planned and committed an armed burglary at ███████████████, Washington, D.C.[2]

---

[2] This sentencing memorandum has been redacted pursuant to Fed. R. Crim. P. 49.1. The redactions herein contain references to the home address where the armed burglary occurred.

The residence at this address was being used as a bordello, which was operated by Domingo Garcia. Mejia, Aguilar, Silva, Velasquez, and Perez intended to rob the individuals affiliated with the bordello, including Garcia, and to force them to begin paying rent to MS-13.

During the December 11, 2009, armed burglary, five individuals were inside the bordello. Mejia drove Aguilar, Silva, Velasquez, and Perez to the bordello to commit the armed burglary. Aguilar, Silva, Velasquez, and Perez entered the bordello and kidnaped and robbed the five individuals inside at gunpoint and knifepoint. Garcia arrived at the entrance to the bordello during the commission of the armed burglary, but was not inside the bordello during the armed burglary. Garcia fled from the residence when someone chased him.

On December 11, 2009, Saravia was incarcerated at D.C. Jail stemming from an unrelated Bail Reform Act ("BRA") case. At some point between December 11, 2009, and December 18, 2009, Saravia learned about that ███████ burglary, and learned that MS-13 members had been arrested and detained for their participation in the crime. Saravia knew of the ███████ bordello, and knew that Garcia was affiliated with that bordello.

On or about December 18, 2009, Saravia was released from D.C. Jail. On or about that date, Saravia began calling people affiliated with the ███████ bordello. He called Garcia and two other individuals associated with the bordello, Mary Colon and Infain Cruz. He threatened to hurt Cruz if he did not pay rent to MS-13. He told Garcia and Colon not to go to court to testify against his "people" who were in jail (*i.e.,* the arrested burglars), and told Garcia not to report anything to the police. Saravia told Garcia that someone had offered to pay Saravia to hurt Garcia, but Saravia did not need money to hurt him. Saravia stated he would hurt Garcia because he "loves the Mara, and lives for the Mara." He threatened to "beat the shit" out of Garcia if he did not pay the rent that

MS-13 was seeking, which was $100 per week.

Saravia called Garcia or Garcia's girlfriend at least three times between December 18, 2009, and April 2010 to threaten Garcia and coerce him to pay rent to MS-13.  By his conduct, Saravia intended to intimidate Garcia and others affiliated with the bordello, to enhance the reputation of MS-13, and to force the individuals affiliated with the bordello to respect and pay money to MS-13.

In April 2010, a D.C. Superior Court grand jury indicted Saravia for 10 offenses: three counts of obstructing justice, in violation of 22 D.C. Code § 722(a); two counts of threatening to kidnap or injure a person (one count of which pertained to the threats against Garcia), in violation of 22 D.C. Code § 1810; and five counts of criminal-street-gang affiliation, in violation of 22 D.C. Code § 951(b)(1).  The Superior Court charges against Saravia were eventually dismissed, and Saravia was charged in an initial Federal indictment, and then by a superseding Federal indictment (returned on February 4, 2011), which charged Saravia with six offenses (counts 26-31): one count of accessory after the fact, in violation of 18 U.S.C. § 3; three counts of obstructing justice, in violation of 22 D.C. Code § 722(a); and two counts of threatening to kidnap or injure a person, in violation of 22 D.C. Code § 1810, one count of which pertained to threats against Garcia.

On February 15, 2011, pursuant to a plea agreement, Saravia accepted responsibility and pleaded guilty to one count of threatening to injure or kidnap Garcia (count 31 of the February 4, 2011, indictment).[3/]  In exchange, the government agreed to dismiss the remaining counts pending against Saravia in the indictment (counts 26-30), and agreed to cap its sentencing allocution to 12-18

---

[3/]      The maximum penalties for threatening to kidnap or injure a person are 20 years' imprisonment, a $5,000 fine, or both.  22 D.C. Code § 1810.  Pursuant to 24 D.C. Code § 403.01(b), the Court must impose a term of supervised release of not more than three years for this offense.  If the Court imposes a sentence of more than one year, the Court must impose a three-year period of supervised release.  24 D.C. Code § 403.01(b)(2)(B).

months' incarceration.

## II.  ALLOCUTION

Pursuant to the District of Columbia Code, sentences in the District of Columbia must serve

three objectives:

> (1)   Reflect the seriousness of the offense and the criminal history of the offender;
>
> (2)   Provide for just punishment and afford adequate deterrence to potential criminal conduct of the offender and others; and
>
> (3)   Provide the offender with needed educational or vocational training, medical care, and other correctional treatment.

24 D.C. Code § 403.01(a).  For the following reasons, a sentence of time served is appropriate to

achieve these three objectives.[4/]

### 1.   **The seriousness of the offense and the defendant's criminal history.**

The offense for which Saravia pleaded guilty is serious.  Saravia's threats against Domingo

Garcia – taken in context with the terrifying nature of the bordello burglary and with MS-13's

notorious reputation for retaliating against those who report crimes or testify against the gang – left

---

[4/]   In negotiating a plea agreement, the parties agreed that the *D.C. Voluntary Sentencing Guidelines* ("*D.C. Guidelines*") would apply to the sentencing in this case.  The government preliminarily calculated Saravia's *D.C. Guidelines* range as 6-24 months' incarceration, with eligibility for probation or a short-split sentence. This calculation was based on computing Saravia's criminal-history score at a level of "A" (the lowest possible criminal-history score under the *D.C. Guidelines*).  According to the PSR, Saravia has a juvenile adjudication from 2006.  When preliminarily calculating Saravia's criminal-history score, the government was unaware of this prior adjudication, as the U.S. Attorney's Office often does not have access to undisclosed juvenile records.  Nevertheless, accounting for the juvenile adjudication, Saravia's criminal history is correctly scored at a level of  "B," resulting in a sentencing range of 10-28 months (probation and short-split eligible). (*See* PSR, p. 14, para. 42.)  At any rate, the government is still honoring its commitment under the plea agreement to a sentencing cap of 12-18 months.  Indeed, a time-served sentence would result in a sentence of less than 13 months.

Garcia and his girlfriend scared of further harassment and harm by the gang.[5] While the government has agreed to dismiss the more serious indicted charges of accessory after the fact and obstructing justice, Saravia has forthrightly admitted that he engaged in the conduct encompassed in those offenses. (PSR, p. 9, para. 35.) Saravia's conduct in those offenses also left the targets of those threats frightened of further trouble from MS-13. Nevertheless, Saravia has commendably accepted responsibility for his criminal conduct, and the government agrees with the defense that Saravia should not receive further punishment beyond a time-served sentence.

Saravia has a relatively minor criminal history. In 2009, he was convicted in D.C. Superior Court of a BRA violation, and was sentenced to a probationary term. He violated his probation and served a brief period in jail in mid-December 2009, shortly before he began the threatening conduct to which he pleaded guilty here. His probation was eventually revoked in June 2010. Saravia also has another nonviolent juvenile adjudication referenced in the PSR (p. 10, para. 37).

### 2.      Just punishment and adequate deterrence.

A sentence of time served is sufficient to provide just punishment and adequate deterrence for Saravia's offense. Saravia has already served over a year while being preventively detained in this case, and that is a just punishment for the threatening, gang-related conduct he committed. The time he has already served should deter him and others from engaging in similar criminal conduct

---

[5] During the last three weeks, the government has attempted repeatedly to obtain a victim-impact statement from Garcia. On April 27, 2011, the government was able to talk with Garcia's girlfriend, who stated that she would inform Garcia about his opportunity to make a victim-impact statement. Garcia did not return the government's call until the mid-afternoon of April 29, 2011. Garcia, whose primary language is Spanish, then indicated that he wished to make a written victim-impact statement. As of the time of filing this memorandum, a Spanish-speaking victim advocate was arranging to take Garcia's statement, and to have the statement translated before the May 4, 2011, sentencing. The government will make this statement available to the Court and to the defense as soon as it is translated.

in the future.

**3.     Training, care, or treatment.**

Saravia is an illegal alien.  A detainer lodged in 2010 by U.S. Immigration and Customs Enforcement ("ICE") remains outstanding for Saravia, and the government expects that Saravia will be deported to El Salvador following completion of his incarceration.  Accordingly, consideration of any postincarceration training, care, or treatment is not necessary.

*   *   *

In sum, Saravia committed a serious crime, but he has paid his debt for this offense.  Should the Court agree with the government and the defense that a time-served sentence is appropriate, the government requests that the Court order Saravia to be taken into ICE's custody immediately after he has completed serving his sentence here.

### III.  CONCLUSION

WHEREFORE, and for any additional reasons that will be stated at the sentencing hearing, the United States respectfully requests that Saravia be sentenced to a period of time served.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY

/s/

BY:

_____

WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney

/s/

_____

LAURA GWINN
Special Assistant United States Attorney

/s/

_____

SETH ADAM MEINERO
Assistant United States Attorney
Violent Crime and Narcotics Trafficking Section
555 4th St., N.W., Room 4215
Washington, DC 20530
Phone: 202-252-7012
seth.meinero@usdoj.gov