# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term

### Grand Jury Sworn in on November 12, 2010

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL CASE NO. 10-256 (RMC)** |
| | : | |
| **v.** | : | **GRAND JURY ORIGINAL** |
| | : | |
| **OMAR R. AGUILAR,** | : | |
|   **also known as Omar Rivera-Aguilar,** | : | **VIOLATIONS:** |
|   **also known as Flaco,** | : | |
|   **also known as Flaco from Fulton,** | : | **18 United States Code, § 1962(d)** |
| **WILFREDO MEJIA,** | : |   **RICO Conspiracy** |
|   **also known as Freddie,** | : | **18 United States Code, §§ 1959(a)(1)** |
|   **also known as Majestic,** | : |   **(Kidnaping in Aid of Racketeering)** |
| **MICHELLE NICOLE RIOS,** | : |   **(Murder in Aid of Racketeering)** |
|   **also known as La Licensiada,** | : | **18 United States Code, §§ 1959(a)(3)** |
| **HECTOR DIAZ-FLORES,** | : |   **(Assault with a Deadly Weapon in** |
|   **also known as Littleman,** | : |     **Aid of Racketeering)** |
| **MANUEL ANTONIO SARAVIA,** | : | **18 United States Code, §§ 924(c)(1)(A)** |
|   **also known as Cholo,** | : |   **(Possession of a Firearm During and In** |
| **NOE MACHADO-ERAZO,** | : |     **Relation to a Crime of Violence)** |
|   **also known as Gallo,** | : | **18 United States Code, § 2** |
| **JOSE MARTINEZ-AMAYA,** | : |   **(Aiding and Abetting)** |
|   **also known as Crimen,** | : | **22 D.C. Code, §§ 2801, 4502 (2001 ed.)** |
| **RUDY MARTINEZ,** | : |   **(Armed Robbery)** |
|   **also known as Rudis Castro-Martinez,** | : | **22 D.C. Code, §§ 2001, 4502 (2001 ed.)** |
|   **also known as Krypta,** | : |   **(Kidnaping While Armed)** |
|   **also known as Luis Garcia,** | : | **22  D.C. Code, §§ 2101, 4502 (2007 ed.)** |
| **MARIO LOPEZ-RAMIREZ,** | : |   **(First Degree Murder While Armed,** |
|   **also known as Pava,** | : |     **Premeditated)** |
| **WILLIAM SARAVIA-BENITEZ,** | : | **22 D.C. Code, §§ 801(a), 4502 (2001 ed.)** |
|   **also known as Shady,** | : |   **(First Degree Burglary While Armed)** |
|   **also known as Hechicero,** | : | |
| **MOISES HUMBERTO RIVERA-LUNA** | : | |
|   **also known as Santos,** | : | |
|   **also known as Viejo Santos,** | : | |
| **DENNIS L. GIL-BERNARDEZ,** | : | |
|   **also known as Pando,** | : | |
|   **also known as Dopre,** | : | |

| | |
|---|---|
| **TOKIRO RODAS-RAMIREZ** | : |
|   also known as **Johnny**, | : |
|   also known as **Perverso**, | : |
| **MARVIN GEOVANNY** | : |
| **MONTERROSA-LARIOS** | : |
|   also known as **Enano**, | : |
| **JUAN MELGAR-HERNANDEZ** | : |
|   also known as **Triste**, | : |
| **HENRY DIAZ-ANTUNUEZ**, | : |
|   also known as **Stewie**, | : |
|   also known as **Stuvi** | : |
|         **Defendants.** | : |

## I N D I C T M E N T

The Grand Jury charges that:

## COUNT ONE

### Introduction

1.      *La Mara Salvatrucha*, also known as the MS-13 gang (hereafter "MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating throughout the United States, including within the District of Columbia. The name "*Mara Salvatrucha*" is a combination of several slang terms. The word "*Mara*" is the term used in El Salvador for "gang." The phrase "*Salvatrucha*" is a combination of the words "*Salva*," which is an abbreviation for "Salvadoran," and "*trucha*," which is a slang term for the warning "fear us," "look out," or "heads up."

2

2.     In the United States, MS-13 originated in Los Angeles, California, where, among other things, MS-13 members engaged in turf wars for the control of drug distribution locations. MS-13 quickly spread to states across the country, including Virginia, Maryland, Tennessee, North Carolina, and the District of Columbia.

3.     MS-13 is a national and international criminal organization with over 10,000 members regularly conducting gang activities in at least twenty states and the District of Columbia, as well as in Mexico, Honduras, Guatemala, and El Salvador.  MS-13 is one of the largest street gangs in the United States. Gang members actively recruit members, including juveniles, from communities with a large number of immigrants from El Salvador.  Members, however, can also have ethnic heritage from other Central American countries.  In the United States, MS-13 has been functioning since at least the 1980s.

4.     At all times relevant to this Indictment, in order to join MS-13, members were required to complete an initiation process, often referred to as being "jumped in" or "beat in" to the gang.  During that initiation, other members of MS-13 would beat the new member, usually until a gang member finishes counting aloud to thirteen.

5.     At all times relevant to this Indictment, some members of MS-13 signified their membership by wearing tattoos reading "MARA SALVATRUCHA," "MS," "MS-13," or similar slogans, often written in Gothic lettering.  The gang colors of MS-13 are blue, black, and white, and members often wear clothing of these colors bearing the number "13," or with numbers that, when added together, totaled 13, such as "76."  Also, MS-13 members from time to time marked their territory or signified their presence through the use of graffiti with the words "MS" or other identifying slogans.  More recently, some MS-13 members have more discreetly and less publicly

signified their membership by hiding and avoiding such clothing and tattoos in order to avoid detection by law enforcement. MS-13 members refer to one another by their gang names or other nicknames and may not know fellow gang members except by these gang names.

6.    At all times relevant to the Indictment, members of MS-13 were expected to protect the name, reputation, and status of the gang from rival gang members and other persons. MS-13 members required that all individuals should show respect and deference to the gang and its membership. To protect the gang and to enhance its reputation, MS-13 members were expected to use any means necessary to force respect from those who show disrespect, including acts of intimidation and violence. MS-13's creed is exemplified by one of its mottos, "*Mata, roba, viola, controlla,*" which translates in sum and substance to, "Kill, steal, rape, control."

7.    At all times relevant to this Indictment, members of MS-13 engaged in criminal activity, including murders, attempted murders, narcotics distribution, assaults, robberies, extortions, stealing vehicles, and obstructing justice in the form of threatening and intimidating witnesses that they believed to be cooperating with law enforcement. MS-13 members were required to commit acts of violence to maintain membership and discipline within the gang, including violence against rival gang members or those they perceived to be rival gang members, as well as MS-13 members and associates who violated the gang's rules. As a result of MS-13's frequent use of violence, innocent persons were often injured or killed. Participation in criminal activity by an MS-13 member, particularly violent acts directed at rival gang members or as ordered by the gang leadership, increased the level of respect accorded that member, resulting in that member maintaining or increasing his position in the gang, and possibly resulting in recognition as a leader.

8.      At all times relevant to this Indictment, MS-13 was organized in the District of Columbia and elsewhere in "cliques," that is, smaller groups operating in a specific city or region. MS-13 cliques sometimes worked together cooperatively to engage in criminal activity and to assist one another in avoiding detection by law enforcement.  The cliques operated under the umbrella rules of MS-13.   In the District of Columbia and surrounding metropolitan jurisdictions, these cliques included Sailors (SLSW), Normandy (NLS), Peajes, Western (WLS), Uniones (ULS), and Fultons.  The principal, although not the only, rivals to MS-13 in the District of Columbia and surrounding jurisdictions are  18th Street, STC and the Mara R gangs.  One of the principal rules of MS-13 is that its members must attack and kill rivals whenever possible.

9.      At all times relevant to this Indictment, MS-13 members attended meetings together on a regular basis.  Within the Washington, D.C. metropolitan area, specific cliques have banded together under an initiative from El Salvador called "The Program."  Each program is usually designated by its geographic area.  However, in the District of Columbia the collaborative cliques call themselves "La Hermandad" (meaning "The Brotherhood").  The leaders of each clique meet as representatives of La Hermandad to discuss gang rules and gang business, to resolve problems or issues involving the cliques, and to unite gang members.  Specific issues may include among other things: gang organizational issues; illegal activity conducted on behalf of MS-13; acts of violence committed by MS-13 members against rival gang members and others; law enforcement activity against MS-13 members; and purging the gang of those suspected of cooperating with law enforcement.

10.      The leaders of individual MS-13 cliques are typically called "shot callers" or "*La Palabra*."  Above the "shot callers" are MS-13 leaders, often referred to as the "big homies," some

of whom are incarcerated in El Salvador, who convey their orders through, among other means, the use of telephones. The leaders of MS-13 resolve disputes between gang members, address organizational issues, and participate in significant gang decisions such as whether to assault or murder gang members, associates, and other individuals suspected of cooperating with law enforcement. When such a decision is made to assault or murder gang members, associates, and other individuals suspected of cooperating with law enforcement or to otherwise discipline an MS-13 member, there is said to be a "green light" on that gang member, associate, or other individual.

11. At all times relevant to this Indictment, MS-13 members paid dues that were collected at gang meetings. MS-13 members collected dues for the benefit of, and to be provided to, MS-13 gang members who were imprisoned in the United States, in El Salvador, and elsewhere. On more than one occasion, MS-13 members in La Hermandad transferred funds to MS-13 members incarcerated in prison in El Salvador. MS-13 members also collected dues to buy firearms to be used in the conduct of MS-13's affairs and other illegal activities.

12. At all times relevant to this Indictment, MS-13 members communicated about gang activities with other MS-13 members in the District of Columbia and elsewhere using mobile telephones, telephone text messages, notes or "kites," and other modes of communication. Additionally, MS-13 members used transnational and international money wire transfers to conduct and promote gang activities.

The Racketeering Enterprise

13. MS-13, including its leadership, members and associates, in the District of Columbia, Maryland, El Salvador, and elsewhere, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4) [hereinafter "the enterprise"] that is, a group of individuals associated

in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

<u>Purposes of the Enterprise</u>

14.     The purposes of the MS-13 enterprise included the following:

a.     Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.     Promoting and enhancing the enterprise and the activities of its members and associates by committing crimes, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, extortion, human smuggling, and other criminal activities;

c.     Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.     Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador; and

e.     Providing assistance to other MS-13 members who committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders.

15.     The defendants, who encompass some of the membership and the leadership of MS-13, acted individually, with each other, with other members known and unknown to the Grand Jury, and also with non-member MS-13 associates in the commission of racketeering activities and other criminal conduct.

16. Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, **WILFREDO MEJIA,** also known as Freddie, also known as Majestic, **MICHELLE NICOLE RIOS,** also known as La Licensiada, **MANUEL SARAVIA,** also known as Cholo, also known as Mecia, **NOE MACHADO-ERAZO,** also known as Gallo, **RUDIS CASTRO-MARTINEZ**, also known as Rudy Martinez, also known as Krypta, also known as Luis Garcia, **MARIO LOPEZ RAMIREZ**, also known as Pava, **JOSE MARTINEZ,** also known as Crimen, **WILLIAM SARAVIA BENITEZ,** also known as Shady, also known as Hechicero, **MOISES HUMBERTO RIVERA-LUNA**, also known as Santos, also known as Viejo Santos, **DENNIS L. GIL-BERNARDEZ**, also known as Pando, also known as Dopre, **TOKIRO RODAS-RAMIREZ,** also known as Johnny, also known as Perverso, **MARVIN GEOVANNY MONTERROSA-LARIOS,** also known as Enano, **JUAN MELGAR-HERNANDEZ**, also known as Triste, together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under the following provisions of District of Columbia and Maryland law:

a.    Murder, in violation of 22 District of Columbia  Code, §§ 2101 and 2103, and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland and ;

b.    Robbery in violation of 22 District of Columbia  Code, § 2801 and in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland;

c.    Extortion, in violation of 22 District of Columbia Code, § 3251, and Maryland Code, Criminal Law §§ 3-701, 3-705, and the Common Law of Maryland;

and multiple acts involving the following provisions of federal narcotics law:

d.    Sections 841(a)(1) and 846 of Title 21, United States Code;

and multiple acts indictable under the following provisions of federal law:

e.    18 U.S.C. § 1512 (Witnesses Retaliation/Tampering);

f.    18 U.S.C. § 1503 (Obstruction of Justice);

17.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

<u>Manner and Means of the Conspiracy</u>

18.    It was part of the manner and means of the conspiracy that the defendants, as gang members of MS-13, were required to have and did have regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the identities of gang members and gang associates suspected of cooperating with law enforcement and the proposed actions to be taken against such members and associates; plans and agreements

regarding the commission of future crimes, including murder, extortion, narcotics distribution, robbery, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

19.     It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate a collection of firearms for use in criminal activity by MS-13 members.

20.     It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including murder, attempted murder, and assault, would be committed by members and associates of MS-13 against rival gang members and others when it suited the enterprise's purposes.  MS-13 members also used violence to impose discipline within the gang.

21.     It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to distribute narcotics, to use the telephone to facilitate narcotics distribution,  to commit robbery, extortion, and other crimes, and to conceal their criminal activities by obstructing justice, threatening or intimidating witnesses, and other means.

Overt Acts

22.     In furtherance of the racketeering conspiracy and to effect the objectives thereof, the defendants and their co-conspirators committed and caused to be committed  the following overt acts, among others, on or about the following dates in the District of Columbia, the District of Maryland and elsewhere:

10

a.    On or about April 7, 2008, in the District of Columbia, DENNIS L. GIL-BERNARDEZ also known as Pando also known as Dopre and TOKIRO RODAS-RAMIREZ also known as Johnny also known as Perverso shot a person they believed to be a rival gang member.

b.    On or about May 19, 2008, RUDI CASTRO-MARTINEZ, also known as Rudy Martinez, also known as Krypta, also known as Luis Garcia, and other individuals known to the Grand Jury stabbed a person.

c.    On or about July 2008, MICHELLE NICOLE RIOS, also known as La Licensiada, sent money intended for an MS-13 leader in El Salvador via Western Union to Domatila de la Paz Portillo-Ramos in El Salvador.

d.    On or about July 29, 2008, DENNIS L. GIL-BERNARDEZ, also known as Pando, also known as Dopre, and TOKIRO RODAS-RAMIREZ, also known as Johnny, also known as Perverso, along with other MS-13 members known to the Grand Jury, and while in possession of firearms, hunted for a rival gang member in Riverdale, Maryland.

e.    On or about July 29, 2008, DENNIS L. GIL-BERNARDEZ, also known as Pando, also known as Dopre, and TOKIRO RODAS-RAMIREZ, also known as Johnny also known as Perverso, shot and killed a person in Riverdale, Maryland.

f.    On or about Aug 3, 2008, a juvenile gang member sent money intended for an MS-13 leader in El Salvador via Western Union to Domatila de la Paz Portillo-Ramos in El Salvador.

g.    On or about September 14, 2008, in Riverdale, Maryland, MS-13 gang members, known and unknown to the Grand Jury, including TOKIRO RODAS-RAMIREZ, also known as Johnny, also known as Perverso, led by DENNIS L. GIL-BERNARDEZ, also known as Pando, also known as Dopre, held a meeting to discuss MS-13 gang business and initiate new members into the gang.

11

h.       On or about October 6, 2008, DENNIS L. GIL-BERNARDEZ, also known as Pando, also known as Dopre shot three persons in Reston, Virginia.

i.       Between on or about the summer of 2008 through November 6, 2008, from a jail in El Salvador, MOISES HUMBERTO RIVERA-LUNA, also known as Santos, also known as Viejo Santos, issued and conveyed through DENNIS L. GIL-BERNARDEZ also known as Pando, also known as Dopre, a greenlight which ordered the murder of Louis Alberto Membreno-Zelaya, also known as "El Brujo". GIL-BERNARDEZ subsequently ordered the greenlight to cliques in the Washington, D.C. metropolitan area.

j.       On or about November 6, 2008, in the District of Columbia persons whose identity is known to the Grand Jury stabbed and killed Louis Alberto Membreno-Zelaya, also known as "El Brujo" in accordance with the greenlight which had been issued by RIVERA-LUNA and GIL-BERNARDEZ.

k.       On or about December 12, 2008, in Washington, D.C., HECTOR DIAZ-FLORES, also known as "Littleman," along with a juvenile gang member and others known and unknown participated in the assault and stabbing of Giovanni Sanchez, who subsequently died.

l.       On or about January 20, 2009, MICHELLE NICOLE RIOS, MARIO LOPEZ-RAMIREZ, NOE MACHADO-ERAZO, and others known and unknown attended a meeting at which at least one person was initiated into the gang.

m.       Between or about March 2009 and July 2009, MICHELLE NICOLE RIOS, JOSE MARTINEZ, MARIO LOPEZ-RAMIREZ, and others participated in a beating administered as discipline by MS-13 to a gang member.

n.      On or about Jan. 19, 2009, MICHELLE NICOLE RIOS sent $40 intended for an MS-13 leader in El Salvador via Western Union to Julia Abarca in El Salvador.

o.      On or about February 18, 2009, MICHELLE NICOLE RIOS sent $50 intended for an MS-13 leader in El Salvador via Western Union to Julia Abarca in El Salvador.

p.      On or about March 8, 2009, in the Eastern District of Virginia, a juvenile gang member participated in an assault of another juvenile.

q.      On or about March 9, 2009, MICHELLE NICOLE RIOS sent $200 intended for an MS-13 leader in El Salvador via Western Union to Julia Abarca in El Salvador.

r.      Between on or about June 2009 and September 2009, NOE MACHADO-ERAZO ordered a beating of MICHELLE NICOLE RIOS due to suspicion of cooperation with law enforcement.

s.      Between on or about June 2009 and on or about December 2009, WILFREDO MEJIA led MS-13 meetings in which he encouraged members to extort money from various businesses.

t.      Between on or about June 2009 and on or about December 2009, WILFREDO MEJIA directed new recruits to MS-13, also known as paisas, to commit robberies of certain businesses.

u.      Between on or about June 2009 and on or about December 2009, WILFREDO MEJIA told a paisa that he had to kill a chavala to earn the "MS' letters as a tattoo.

v.      On or about July 31, 2009, RUDIS CASTRO-MARTINEZ and another person in the District of Columbia stabbed two persons.

w.      In or about the summer of 2009, WILFREDO MEJIA, along with other MS-13 members and associates, attacked two persons believed to be rival gang members.

13

x.    On or about October 15, 2009, in the District of Maryland, MS-13 members including MANUEL SARAVIA also known as Cholo assaulted individuals near a nightclub.

y.    On or about October 17, 2009, in the District of Maryland, MS-13 members including LOPEZ-RAMIREZ and JOSE MARTINEZ participated in an assault on a person they believed to be a rival gang member.

z.    On or about November 17, 2009, in Silver Spring, Maryland, an MS-13 member sold cocaine to a Montgomery County police officer acting in an undercover capacity.

aa.    On or about November 28, 2009, an MS13 meeting was held in the District of Maryland, and attended by MARIO LOPEZ-RAMIREZ, JOSE MARTINEZ and others.

bb.    On or about December 6, 2009, a co-conspirator known to the Grand Jury spoke to an MS-13 member in another city who advised him of violent activity by MS-13 members in that city.

cc.    On or about December 9, 2009, in the District of Columbia MARIO LOPEZ RAMIREZ, also known as Pava, and MANUEL SARAVIA, also known as Cholo, shot a person .

dd.    On or about December 9, 2009, NOE MACHADO-ERAZO agreed to assist in hiding another MS-13 member who had been involved in a shooting.

ee.    On or about December 11, 2009, WILFREDO MEJIA also known as Majestic, OMAR R. AGUILAR, also known as Flaco from Fulton, and others known to the Grand Jury planned to rob persons located at a residence on Taylor Street in Washington, D.C., in order to intimidate them into providing future extortion payments.

ff.     Between December 11, 2009, and April 2010, HENRY SARBA called the victims of the Taylor Street robbery and threatened them with harm if they testified against the MS-13 members who were arrested.

gg.     On or about December 22, 2009, in Silver Spring, Maryland, an MS-13 member sold cocaine to a Montgomery County Police Officer acting in an undercover capacity.

hh.     On or about December 28, 2009, MANUEL SARAVIA sent $40 intended for an MS-13 leader in El Salvador via Western Union to Julia Abarca in El Salvador.

ii.     In or about the latter part of 2009, at the direction of MOISES HUMBERTO RIVERA-LUNA, also known as Santos, also known as Viejo Santos, MARVIN GEOVANNY MONTERROSA-LARIOS, also known as Enano, and an unidentified person, each of whom was incarcerated in El Salvador and participated by telephone in a meeting which was also attended by NOE MACHADO-ERAZO, representing the Normandy clique, JUAN MELGAR-HERNANDEZ, representing the Uniones clique, an unidentified representative of the Western clique, and others known and unknown to the Grand Jury, and during that meeting it was agreed and directed that a coalition of cliques, known as a Program, would be formed and called La Hermandad.

jj.     In or about the latter part of 2009 or early 2010, MARVIN GEOVANNY MONTERROSA-LARIOS and MOISES HUMBERTO RIVERA-LUNA, advised La Hermandad members that one of the purposes of La Hermandad was to investigate persons in other cliques who were suspected of talking to law enforcement, and kill them if they were found to be cooperating.

kk.     On or about January 5, 2010, in Silver Spring, Maryland, an MS-13 member sold cocaine to a Montgomery County Police Officer acting in an undercover capacity.

ll.    On or about January 9, 2010, JUAN MELGAR-HERNANDEZ told an unknown person that he would call MARVIN GEOVANNY MONTERROSA-LARIOS to help with killing a person in El Salvador.

mm.    On or about January 10, 2010 , a co-conspirator known to the Grand Jury asked an MS-13 member in another city for assistance in smuggling some persons, including at least one MS-13 member, into the United States

nn.    On or about January 13, 2010, in Silver Spring, Maryland, an MS-13 gang member sold cocaine to a Montgomery County Police Officer acting in an undercover capacity.

oo.    During in or about January, 2010, JUAN MELGAR-HERNANDEZ and MARVIN GEOVANNY MONTERROSA-LARIOS, along with others unknown to the Grand Jury attempted to locate a house in El Salvador which could be used to hide from the police unknown MS-13 members who had arrest warrants.

pp.    On or about January 14, 2010, NOE MACHADO-ERAZO engaged in a conversation with a co-conspirator known to the Grand Jury in which they discussed other MS-13 members being arrested in possession of a gun.

qq.    On or about January 15, 2010, WILLIAM SARAVIA-BENITEZ agreed to go to Houston to teach clique leaders there how to run an MS-13 clique.

rr.    On or about January 29, 2010, in Silver Spring, Maryland, an MS-13 gang member sold cocaine to a Montgomery County Police Officer acting in an undercover capacity.

ss.     On or about February 4, 2010, a co-conspirator known to the Grand Jury engaged in a conversation with a clique member in another city at which time the co-conspirator known to the Grand Jury advised that NOE MACHADO-ERAZO and MANUEL SARAVIA would come to that city to help organize an MS-13 clique and they would bring a firearm.

tt.     On or about February 20, 2010, an MS-13 meeting  was held in the District of Maryland at which time an MOISES HUMBERTO RIVERA-LUNA, an El Salvador leader, spoke to the membership via NOE MACHADO-ERAZO's cell phone.

uu.     On or about February 20, 2010, an MS-13 meeting was held at which time it was discussed sending NOE MACHADO-ERAZO and MANUEL SARAVIA to another city to assist in organizing an MS-13 clique.

vv.     Between on or about December 2008 and March 2010, WILLIAM SARAVIA-BENITEZ participated in a disciplinary beating of a gang member who had failed to share with his clique his profits from directing prostitution activities.

ww.     On or about March 1, 2010, MOISES HUMBERTO RIVERA-LUNA participated in a three-way telephone conversation with a person known to the Grand Jury located in the Washington metropolitan area and an unindicted co-conspirator located in a city in another state. During that conversation RIVERA-LUNA advised that later that day he was participating in a meeting with Maryland, New York, and Los Angeles.  RIVERA-LUNA said that it was important for members of the Normandy clique in the Washington, D.C. area to go to the other city to make sure the members of the Normandy clique there are following the clique's guidelines, to show the members of the Normandy clique in the other city how to run things, and to accompany members of the Normandy clique in the other city to search for and assault rival gang members.

xx.    On or about March 4, 2010, MANUEL SARAVIA sent $350 intended for an MS-13 leader in El Salvador via Western Union to Julia Abarca in El Salvador.

yy.    On or about March 6, 2010, in Silver Spring, Maryland, an MS-13 meeting was held, which was attended by MANUEL SARAVIA, NOE MACHADO-ERAZO and others, and during which MANUEL SARAVIA and NOE MACHADO-ERAZO discussed the proper method of jumping-in, or initiating, a new member

zz.    On or about March 6 2010, a co-conspirator known to the Grand Jury led an MS-13 meeting in the District of Maryland and urged the attendees to commit crimes on behalf of the gang.

aaa.    Beginning at least on or about November 2009 and continuing at least through on or about March 31, 2010, JUAN MELGAR-HERNANDEZ did conspire with other members of MS-13 known and unknown to the Grand Jury, as well as other persons, to distribute cocaine.

bbb.    On or about March 7, 2010, JUAN MELGAR-HERNANDEZ did distribute a quantity of cocaine to another MS-13 member known to the Grand Jury for further distribution and sale.

ccc.    On or about March 7, 2010, a co-conspirator known to the Grand Jury spoke on the telephone to seek the advice of MOISES HUMBERTO RIVERA-LUNA, an MS-13 leader incarcerated in El Salvador, regarding the behavior of Felipe Leonardo Enriquez also known as Zombie at an MS-13 clique meeting.

ddd.    On or about March 7, 2010, MOISES HUMBERTO RIVERA-LUNA, an MS-13 leader in El Salvador, directed a co-conspirator known to the Grand Jury to kill a rival gang member in order to earn the respect of his clique.

eee.    On or about March 9, 2010, in Silver Spring, Maryland, an MS-13 member possessed cocaine for the purpose of distribution.

fff.    On or about March 9, 2010, MOISES HUMBERTO RIVERA-LUNA and NOE MACHADO-ERAZO spoke over a cellular telephone to discuss  the agenda of an impending meeting.  RIVERA-LUNA then addressed the attendees of the meeting via speaker phone telling them, among other topics, the purpose of La Mara meetings and that if a member has a disrespectful attitude at a clique meeting the member should be punished.

ggg.    On or about March 10, 2010, an MS-13 leader in El Salvador ordered a co-conspirator known to the Grand Jury to find someone else within MS-13 to sell drugs for the gang because of the arrest of an MS-13 member who had been selling drugs.

hhh.    On or about March 10, 2010, WILLIAM SARAVIA-BENITEZ told another gang member he wanted to become a more active gang member and kill people.

iii.    On or about March 11, 2010, WILLIAM SARAVIA-BENITEZ attempted to raise money to post as bond for an incarcerated MS-13 member.

jjj.    On or about March 14, 2010, MARVIN GEOVANNY MONTERROSA-LARIOS and JUAN MELGAR-HERNANDEZ engaged in a telephone conversation concerning the arrest of several MS-13 members and associates, who were selling cocaine on behalf of MS-13, and MONTERROSA-LARIOS provided advice to MELGAR-HERNANDEZ about how to direct and operate a better drug distribution business.

kkk.    On or about March 14, 2010, MARVIN GEOVANNY MONTERROSA-LARIOS, while incarcerated in El Salvador, suggested to other gang members to do a robbery in order to obtain money.

lll.    On or about March 14, 2010, MARVIN GEOVANNY MONTERROSA-LARIOS, with the agreement of JUAN MELGAR-HERNANDEZ, cautioned other gang members that a certain person could not be killed until he is investigated and until the gang is certain the neighborhood is supporting them in killing the person.

mmm. On or about March 16, 2010, a co-conspirator known to the Grand Jury in Falls Church, Virginia was in possession of a gun.

nnn.    On or about March 19, 2010, at an MS-13 meeting at the home of MANUEL SARAVIA in Silver Spring, Maryland, MOISES HUMBERTO RIVERA-LUNA, an MS-13 leader in El Salvador, spoke to the membership by cell phone and appointed MANUEL SARAVIA and JOSE MARTINEZ-AMAYA as leaders of the Normandy clique.

ooo.    On or about March 19, 2010, at an MS-13 meeting at the home of MANUEL SARAVIA in Silver Spring, Maryland, RIVERA-LUNA ordered SARAVIA to investigate whether a co-conspirator known to the Grand Jury was cooperating.

ppp.    On or about March 19, 2010, at an MS-13 meeting at the home of MANUAL SARAVIA in Silver Spring, Maryland, MOISES HUMBERTO RIVERA-LUNA told the clique he had learned from an MS-13 member in Guatemala that Felipe Leonardo Enriquez, also known as Zombie, had an unauthorized tattoo, that is, he had placed a "X" over his MS-13 tattoo. RIVERA-LUNA ordered the clique to determine whether Enriquez had the unauthorized tattoo, and, if so, to kill him.

qqq.    On or about March 20, 2010, MANUEL SARAVIA sent $50 intended for an MS-13 member in El Salvador via Western Union to Julia Abarca in El Salvador.

rrr.     On or about March 23, 2010, MARVIN GEOVANNY MONTERROSA-LARIOS and JUAN MELGAR-HERNANDEZ discussed MELGAR-HERNANDEZ obtaining money to allow MONTERROSA-LARIOS access to a cellular telephone in prison in El Salvador so that MONTERROSA-LARIOS can monitor the gang's activities outside the prison.

sss.     On or about March 27, 2010, JUAN MELGAR-HERNANDEZ had a telephone conversation with a member of MS-13 known to the Grand Jury, who was selling cocaine on behalf of MS-13, concerning that cocaine trafficking.

ttt.     On or about March 27, 2010, JUAN MELGAR-HERNANDEZ did distribute cocaine to a member of MS-13 known to the Grand Jury for further distribution and sale.

uuu.     On or about March 31, 2010 in the District of Maryland MANUEL SARAVIA, NOE MACHADO-ERAZO and JOSE MARTINEZ-AMAYA, upon the authorization of MOISES HUMBERTO RIVERA-LUNA,  killed Felipe Leonardo Enriquez also known as Zombie.

vvv.     On or about April 18, 2010, MANUEL SARAVIA advised MOISES HUMBERTO RIVERA-LUNA, an MS-13 leader in El Salvador that he had killed chavalas rival gang members.

www.    On or about April 23, 2010, MANUEL SARAVIA attended an MS-13 meeting and discussed extorting a deported gang member who had recently returned to the United States.

xxx.     On or about May 30, 2010, MANUEL SARAVIA, MICHELLE NICOLE RIOS, and others attended an MS-13 meeting.

yyy.     On or about May 30, 2010, MANUEL SARAVIA and MICHELLE NICOLE RIOS searched for rival gang members to kill.

zzz.    Between on or about April 16, 2010, and June 2010, a woman in North Carolina received phone calls from MICHELLE NICOLE RIOS and an unknown male, both of whom threatened to have her harmed by MS 13 members.

aaaa.    On or about June 10, 2010 while armed with a gun, RUDI CASTRO-MARTINEZ, also known as Rudy Martinez, also known as Krypta, also known as Luis Garcia, and others known to the Grand Jury assaulted a rival gang member.

bbbb.    On or about July 10, 2010 MANUEL SARAVIA threatened a person by phone.

cccc.    On or about October 10, 2010, MANUEL SARAVIA, MICHELLE NICOLE RIOS and others attended an MS-13 meeting in Washington, D.C.

dddd.    On or about October 18, 2010, WILLIAM SARAVIA-BENITEZ participated in a disciplinary beating of another gang member.

eeee.    On or about November 6, 2010, MANUEL SARAVIA and MICHELLE NICOLE RIOS drove to an MS-13 meeting at the Econolodge in Takoma Park, Maryland.

ffff.    On or about December 31, 2010, MANUEL SARAVIA, MICHELLE NICOLE RIOS, WILLIAM SARAVIA-BENITEZ and others known and unknown assaulted and robbed an individual in Montgomery County, Maryland.

(**RICO Conspiracy**, in violation of Title 18, United States Code, Section 1962(d))

## COUNT TWO

23.    Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, and continuing through and including on or about the date of the return of this indictment, both dates being approximate and inclusive, the MS-13, as more fully described

in Paragraphs 1 through 14 of Count One, which are realleged and incorporated by reference as if fully set forth herein, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), namely the MS-13 enterprise, that is, a group of individuals associated in fact which was engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

24.     The above described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Section 1959(b)(1) and 1961(1), namely, acts involving murder in violation of 22 District of Columbia Code, Sections 2101 and 2103 and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland, acts involving robbery in violation of 22 District of Columbia  Code, Section 2801, extortion in violation of 22 District of Columbia  Code, Section 3251 Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland, acts involving extortion in violation of 22 District of Columbia  Code, § 3251, and Maryland Code, Criminal Law §§ 3-701, 3-705, and the Common Law of Maryland; and narcotics trafficking in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and obstruction of justice in violation of Title 18, United States Code, Sections 1503 and 1512.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO**

**MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, unlawfully, knowingly, and intentionally did kidnap Maria Soto-Trinidad in violation of 22 District of Columbia Code Section 2001.

>   (**Kidnapping in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2)

## COUNT THREE

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, unlawfully, knowingly, and intentionally did assault Maria Soto-Trinidad with a dangerous weapon in violation of 22 District of Columbia Code, Section 402.

>   (**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT FOUR

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, by force and violence,

against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Maria Soto-Trinidad, property of value belonging to Maria Soto-Trinidad, consisting of money and a cellphone.

(**Armed Robbery**, in violation of 22 D.C. Code, Sections 2801, 4502 (2001 ed.))

## COUNT FIVE

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife seized, confined, kidnapped, abducted, inveigled, and carried away Maria Soto-Trinidad, with intent to hold and detain Maria Soto-Trinidad, for the purpose of stealing property of another or for some other benefit.

(**Kidnapping While Armed**, in violation of 22 D.C. Code, Sections 2001, 4502 (2001 ed.))

## COUNT SIX

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO**

**MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did kidnap Mary Colon in violation of 22 District of Columbia Code Section 2001.

(**Kidnapping in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2.)

## COUNT SEVEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did assault Mary Colon with a dangerous weapon in violation of 22 District of Columbia Code, Section 402.

(**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting,** in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT EIGHT

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, by force and violence,

against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Mary Colon, property of value belonging to Mary Colon, consisting of a purse and its contents.

(**Armed Robbery**, in violation of 22 D.C. Code, Sections 2801, 4502 (2001 ed.))

## COUNT NINE

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife seized, confined, kidnapped, abducted, inveigled, and carried away Mary Colon, with intent to hold and detain Mary Colon, for the purpose of stealing property of another or for some other benefit.

(**Kidnapping While Armed**, in violation of 22 D.C. Code, Sections 2001, 4502 (2001 ed.))

## COUNT TEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO**

**MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did kidnap Jesus Velascquez in violation of 22 District of Columbia Code Section 2001.

(**Kidnapping in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2)

## COUNT ELEVEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did assault Jesus Velascquez with a dangerous weapon in violation of 22 District of Columbia Code, Section 402.

(**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT TWELVE

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, by force and violence,

28

against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Jesus Velascquez, property of value belonging to Jesus Velascquez, consisting of money.

(**Armed Robbery**, in violation of 22 D.C. Code, Sections 2801, 4502 (2001 ed.))

## COUNT THIRTEEN

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife seized, confined, kidnapped, abducted, inveigled, and carried away Jesus Velascquez, with intent to hold and detain Jesus Velascquez, for the purpose of stealing property of another or for some other benefit.

(**Kidnapping While Armed**, in violation of 22 D.C. Code, Sections 2001, 4502 (2001 ed.))

## COUNT FOURTEEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO**

29

**MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury  unlawfully, knowingly, and intentionally did kidnap Mauricio Garcia in violation of 22 District of Columbia Code Section 2001.

(**Kidnapping in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2)

## COUNT FIFTEEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did assault Mauricio Garcia with a dangerous weapon in violation of 22 District of Columbia Code, Section 402.

(**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT SIXTEEN

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, by force and violence,

30

against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Mauricio Garcia, property of value belonging to Mauricio Garcia, consisting of money.

(**Armed Robbery**, in violation of 22 D.C. Code, Sections 2801, 4502 (2001 ed.))

### COUNT SEVENTEEN

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife seized, confined, kidnapped, abducted, inveigled, and carried away Mauricio Garcia, with intent to hold and detain Mauricio Garcia, for the purpose of stealing property of another or for some other benefit.

(**Kidnapping While Armed**, in violation of 22 D.C. Code, Sections 2001, 4502 (2001 ed.))

### COUNT EIGHTEEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO**

**MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury unlawfully, knowingly, and intentionally did kidnap Helen Cavallos in violation of 22 District of Columbia Code, Section 2001.

(**Kidnapping in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(1) and 2)

## COUNT NINETEEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about December 11, 2009, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury  unlawfully, knowingly, and intentionally did assault with a dangerous weapon Helen Cavallos in violation of 22 District of Columbia Code, Section 402.

(**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT TWENTY

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, by force and violence,

against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of Helen Cavallos, property of value belonging to Helen Cavallos, consisting of money and a cellphone.

(**Armed Robbery**, in violation of 22 D.C. Code, Sections 2801, 4502 (2001 ed.))

### COUNT TWENTY-ONE

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife seized, confined, kidnapped, abducted, inveigled, and carried away Helen Cavallos, with intent to hold and detain Helen Cavallos, for the purpose of stealing property of another or for some other benefit.

(**Kidnapping While Armed**, in violation of 22 D.C. Code, Sections 2001, 4502 (2001 ed.))

### COUNT TWENTY-TWO

On or about December 11, 2009, within the District of Columbia, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic, and other individuals whose identity is known to the Grand Jury, while armed with a pistol and a knife, entered the dwelling of another individual, while Maria Soto-Trinidad, Mary Colon, Jesus Velascquez, Mauricio Garcia, and Helen Cavallos were inside that dwelling, with intent to steal property of another.

(**First Degree Burglary While Armed,** in violation of 22 D.C. Code, Sections 801(a), 4502 (2001 ed.))

## COUNT TWENTY-THREE

On or about December 11, 2009, in the District of Columbia, the defendants, **OMAR R. AGUILAR**, also known as Omar Rivera-Aguilar, also known as Flaco, also known as Flaco from Fulton, **WILFREDO MEJIA**, also known as Freddie, also known as Majestic and other individuals whose identity is known to the Grand Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Kidnapping in Aid of Racketeering as alleged in Counts Two, Six, Ten, Fourteen, and Eighteen, and Assault with a Deadly Weapon in Aid of Racketeering as alleged in Counts Three, Seven, Eleven, Fifteen, and Nineteen and did possess a firearm in furtherance of the offenses charged in Counts One through Twenty-Four of this Indictment, and did brandish a firearm in furtherance of the offenses charged in Counts One through Twenty-Four of this Indictment.

> (**Possession of a Firearm During and in Relation to a Crime of Violence**, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2)

## COUNT TWENTY-FOUR

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about April 7, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **DENNIS L. GIL-BERNARDEZ,** also

known as Pando, also known as Dopre, and **TOKIRO RODAS-RAMIREZ,** also known as Johnny

also known as Perverso, unlawfully, knowingly, and intentionally did assault with a dangerous

weapon Dimas Perez in violation of 22 D.C. Code Section 402.

> (**Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1959(a)(3) and (2))

## COUNT TWENTY-FIVE

On or about April 7, 2008, in the District of Columbia, the defendants, **DENNIS L. GIL-**

**BERNARDEZ,** also known as Pando, also known as Dopre, and **TOKIRO RODAS-RAMIREZ,**

also known as Johnny also known as Perverso, unlawfully, willfully, and knowingly did use and

carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a

court in the United States, namely Assault with a Dangerous Weapon in Aid of Racketeering as

alleged in Count Twenty-Four, and did possess, brandish and discharge the firearm in furtherance

of the offense charged in Count Twenty-Four.

> (**Possession of a Firearm During and in Relation to a Crime of Violence**, in violation of Title 18 United States Code, Sections 924(c)(1)(A) and (2))

## COUNT TWENTY-SIX

The allegations in paragraphs 23 and 24 of Count Two  of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

On or about July 29, 2008, in the District of Maryland, as consideration for the receipt of, and

as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and

for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an

enterprise engaged in racketeering activity, the defendant, **DENNIS L. GIL-BERNARDEZ,** also known as Pando, also known as Dopre, unlawfully and knowingly did murder Luis Chavez-Ponce, in violation of Maryland Code Criminal Law § 2-201 and the Common Law of Maryland.

(**Murder in Aid of Racketeering**, in violation of Title 18, United States Code, Section 1959(a)(1))

### COUNT TWENTY-SEVEN

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about the summer through November 6, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **DENNIS L. GIL-BERNARDEZ,** also known as Pando, also known as Dopre, unlawfully and knowingly aided and abetted the murder of Louis Alberto Membreno-Zelaya, also known as "El Brujo," in violation of 22 District of Columbia Code, Section 2101, that is order the murder of Louis Alberto Membreno-Zelaya, also known as "El Brujo" who was murdered on November 6, 2008, in the District of Columbia, by individuals known to the Grand Jury.

(**Murder in Aid of Racketeering**, in violation of Title 18, United States Code, Sections 1959(a)(1) and (2))

### COUNT TWENTY-EIGHT

**DENNIS L. GIL-BERNARDEZ,** also known as Pando, also known as Dopre, **HENRY DIAZ-ANTUNUEZ**, also known as Stewie, also known as Stuvi, and other individuals whose identity is known to the Grand Jury, within the District of Columbia, while armed with a dangerous

weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Louis Alberto Membreno-Zelaya, also known as "El Brujo", by stabbing him with a knife or other sharp object on or about November 6, 2008, thereby causing injuries from which Louis Alberto Membreno-Zelaya, also known as "El Brujo" died on or about November 6, 2008.

**(First Degree Murder While Armed (Premeditated)**, in violation of 22 D.C. Code, Sections 2101, 4502 (2007 ed.))

### COUNT TWENTY-NINE

The allegations in paragraphs 23 and 24 of Count Two  of this Indictment are realleged and incorporated by reference as though fully set forth herein.

 On or about December 12, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, **HECTOR DIAZ-FLORES**, also known as Littleman, and another individual whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Giovanni Sanchez in violation of 22 D.C. Code, Sections 2101 and 4502.

(**Murder in Aid of Racketeering**, in violation of Title 18, United States Code, Section 1959(a)(1))

### COUNT THIRTY

**HECTOR DIAZ-FLORES**, also known as "Littleman," and another individual whose identity is known to the Grand Jury within the District of Columbia, while armed with a dangerous weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice,

killed Giovanni Sanchez by stabbing him with a knife or other sharp object on or about

December 12, 2008, thereby causing injuries from which Giovanni Sanchez died on or about

December 12, 2008.

**(First Degree Murder While Armed (Premeditated)**, in violation of 22 D.C. Code, Sections 2101, 4502 (2007 ed.))

## COUNT THIRTY-ONE

The allegations in paragraphs 23 and 24 of Count Two of this Indictment are realleged and

incorporated by reference as though fully set forth herein.

On or about June 10, 2010, in the District of Columbia, as consideration for the receipt of,

and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13,

and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an

enterprise engaged in racketeering activity, the defendant, **RUDIS CASTRO-MARTINEZ**, also

known as Krypta, other individuals whose identity are known to the Grand Jury, unlawfully and

knowingly, did assault with a dangerous weapon, to wit: a gun, Ludwin Rubio in violation of 22

District of Columbia Code, Section 402.

**(Assault with a Dangerous Weapon in Aid of Racketeering**, in violation of Title 18, United States Code, Sections 1959(a)(3) and 2)

## COUNT THIRTY-TWO

On or about June 10, 2010, in the District of Columbia, the defendant, **RUDIS CASTRO-**

**MARTINEZ,** also known as Krypta and other individuals whose identity is known to the Grand

Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a

crime of violence for which they may be prosecuted in a court of the United States, namely, Assault with a Dangerous Weapon in Aid of Racketeering as alleged in Count Thirty, and did brandish a firearm in furtherance of the offense charged in Count Twenty-Nine of this Indictment.

(**Possession of a Firearm During and in Relation to a Crime of Violence**, in violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2)

## NOTICE OF SPECIAL SENTENCING FACTORS

1.      On or about July 29, 2008, **DENNIS L. GIL-BERNARDEZ** and **TOKIRO RODAS-RAMIREZ**, feloniously, willfully and with deliberately premeditated malice aforethought killed and murdered Luis Miguel Chavez-Ponce in violation of Maryland Code Criminal Law §2-201 and the Common Law of Maryland.

2.      On or about between the summer of 2008 and November 6, 2008, **DENNIS L. GIL-BERNARDEZ** purposely and with deliberate and premeditated malice participated in the killing of Louis Alberto Membreno-Zelaya, also known as "El Brujo" in violation of 22 District of Columbia Code, Section 2101.

3.      On or about December 12, 2008, **HECTOR DIAZ-FLORES**, also known as "Littleman" participated in the purposeful, deliberate and premeditated killing of Giovanni Sanchez, in violation of 22 District of Columbia Code, Section 2101.

4.      On or about December 12, 2008, **HECTOR DIAZ-FLORES**, also known as "Littleman" with the intent to kill another and to inflict serious bodily injury on another an with a conscious disregard of an extreme risk of death or serious bodily injury to another caused the death of Giovanni Sanchez in violation of 22 District of Columbia Code, Section 2103.

5.      On or about March 31, 2010, **MANUEL SARAVIA, NOE MACHADO-ERAZO,** and **JOSE MARTINEZ-AMAYA,** aided and abetted by the authorization of **MOISES HUMBERTO RIVERA-LUNA,** feloniously, willfully, and of their deliberately premeditated malice aforethought did kill and murder Felipe Leonardo Enriquez also known as Zombie, in violation of Maryland Code Criminal §2-201 and the Common Law of Maryland.

<u>NOTICE OF SPECIAL FINDINGS:  DENNIS L. GIL-BERNARDEZ</u>

<u>As to Count Twenty-Six (the murder of Luis Miguel Chavez-Ponce):</u>

1.      The defendant, **DENNIS L. GIL-BERNARDEZ,** was 18 years or older at the time of the offense.

(Title 18, United States Code, Section 3591(a))

2.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally killed the victim.

(Title 18, United States Code, Section 3591(a)(2)(A))

3.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally inflicted serious bodily injury that resulted in the death of the victim.

(Title 18, United States Code, Section 3591(a)(2)(B))

4.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.

(Title 18, United States Code, Section 3591(a)(2)(C))

40

5.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

(Title 18, United States Code, Section 3591(a)(2)(D))

6.      The defendant, **DENNIS L. GIL-BERNARDEZ,** has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm against another person.

(Title 18, United States Code, Section 3592(c)(2))

**As to Count Twenty-Seven (the murder of Louis Alberto Membreno-Zelaya):**

1.      The defendant, **DENNIS L. GIL-BERNARDEZ,** was 18 years or older at the time of the offense.

(Title 18, United States Code, Section 3591(a))

2.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally killed the victim.

(Title 18, United States Code, Section 3591(a)(2)(A))

3.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally inflicted serious bodily injury that resulted in the death of the victim.

(Title 18, United States Code, Section 3591(a)(2)(B))

4.      The defendant, **DENNIS L. GIL-BERNARDEZ,** intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim died as a direct result of the act.

(Title 18, United States Code, Section 3591(a)(2)(C))

41

5.    The defendant, **DENNIS L. GIL-BERNARDEZ**, intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act.

(Title 18, United States Code, Section 3591(a)(2)(D))

6.    The defendant, **DENNIS L. GIL-BERNARDEZ,** has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than one year, involving the use or attempted or threatened use of a firearm against another person.

(Title 18, United States Code, Section 3592(c)(2))

7.    The defendant, **DENNIS L. GIL-BERNARDEZ,** committed the offense after substantial planning and premeditation to cause the death of a person.

(Title 18, United States Code, Section 3592(c)(9))

A TRUE BILL:


FOREPERSON.


Attorney for the United States in
and for the District of Columbia