## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          *

v.                                *          Criminal No.: 10-256 (RMC)

DENNIS L. GIL-BERNARDEZ          *

*     *     *     *     *     *     *     *     *     *     *     *     *

## MOTION TO COMPEL PROVISION OF
## GOVERNMENT WITNESS' REAL NAME TO DEFENSE COUNSEL

COMES NOW Dennis Gil-Bernardez, by and through undersigned counsel, and respectfully requests that this Court compel the Government to provide counsel with the real name of their expert witness, to whom the Government has assigned the pseudonym "Juan Diaz." In support of this Motion, counsel states:

1.      On February 1, 2012, the Government filed a Motion for a "protective order," [hereinafter "Gov at. __"], which would preclude the disclosure of the "identity and personal information" of one of their expert witnesses to the defendant or his counsel.   According to the Government, "Juan Diaz," a Central American police officer, will testify to the operation of MS-13 in El-Salvador, his knowledge of particular individuals in the hierarchy of the organization, and will express his opinion that MS-13 leadership in El-Salvador may need to be consulted before a fellow MS-13 member can be murdered.

2.      The Government contends that Diaz' safety and that of his family will be compromised if counsel is permitted to investigate and cross-examine him on his background, qualifications, and areas of bias - all of which require counsel to have access to his identity.   The Government contends that this Court should so limit counsel because MS-13 (not involved in

this particular prosecution) have threatened witnesses in other MS-13 prosecutions. The Government further contends it will provide evidence of a particular threat to Mr. Diaz in the form a single affidavit, which it will provide to this Court ex parte.

3.      Mr. Gil-Bernardez requests that the Government be compelled to provide it with the real name of the expert witness it seeks to use. Counsel is willing to abide by a protective order that considers both the witness' safety, and Mr. Gil-Bernardez' right to prepare and present a defense and cross-examine the witnesses against him as protected by the Fifth and Sixth Amendments to the United States Constitution.

4.      The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to confront his accusers. U.S. Const. Amend. VI. It is axiomatic that the right of confrontation is realized by the right of a criminal defendant to cross-examine the witnesses against him. *See, e.g., Douglas v. Alabama*, 380 U. S. 415 (1965) *Pointer v. Texas*, 380 U.S. 400 (1965). The Constitution makes no empty promise - a criminal defendant cannot be precluded from the opportunity to conduct "effective" cross-examination, *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985), which anticipates a meaningful ability to assess the witness and his credibility. "The opponent demands confrontation not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." *Davis v. Alaska*, 415 U.S. 308, 316 (1974) (citing 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed.1940)).

5.      One of the cornerstones of effective cross-examination is the right to impeach the witness' credibility. The Supreme Court explained in *Davis*,

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

****

> A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev.1970). We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of *cross-examination*.

*Id*. at 316.    Thus, a defendant's right to cross-examination simply cannot be discharged without access to critical information, such as the witnesses' name, allowing an investigation into the witness' background.  As the Supreme Court said in *Smith v. Illinois*, 390 U.S. 129, 131-32 (1968) when it spoke on the issue of anonymous witnesses,

> In the present case, there was not, to be sure, a complete denial of all right of cross-examination. But the petitioner was denied the right to ask the principal prosecution witness either his name or where he lived, although the witness admitted that the name he had first given was false. Yet, when the credibility of a witness is in issue, *the very starting point in* "*exposing falsehood and bringing out the truth*" *through cross-examination must necessarily be to ask the witness who he is* and *where he lives*. The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself.

*Id* (emphasis added).

6.    The Government makes the bold assertion that disclosure of Mr. Diaz' identity will "not aid defense counsel in impeaching his testimony."  Gov. at 6.   Mr. Gil-Bernardez is

under no obligation, however, to forfeit his Sixth Amendment rights to confrontation or counsel

based on the Government's representations.   In *Crawford v. Washington*, 541 U.S. 36 (2004),

for example, the Court said that lower courts are not permitted to avoid application of the

Confrontation Clause simply by making an independent judgment that evidence is reliable or any

other collateral determination that cross-examination is not necessary for the evidentiary

integrity of the case.

> Where testimonial statements are involved, we do not think the Framers meant to
> leave the Sixth Amendment's protection to the vagaries of the rules of evidence,
> much less to amorphous notions of "reliability." Certainly none of the authorities
> discussed above acknowledges any general reliability exception to the common-
> law rule. Admitting statements deemed reliable by a judge is fundamentally at
> odds with the right of confrontation. To be sure, the Clause's ultimate goal is to
> ensure reliability of evidence, but it is a procedural rather than a substantive
> guarantee. It commands, not that evidence be reliable, but that reliability be
> assessed in a particular manner: by testing in the crucible of cross-examination.
> The Clause thus reflects a judgment, not only about the desirability of reliable
> evidence (a point on which there could be little dissent), but about how reliability
> can best be determined. Cf. 3 Blackstone, Commentaries, at 373 ("This open
> examination of witnesses . . . is much more conducive to the clearing up of
> truth"); M. Hale, History and Analysis of the Common Law of England 258
> (1713) (adversarial testing "beats and bolts out the Truth much better").

*Id*. at 61-62.  *See also, Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2536 (2009)  ("We do

not have license to suspend the Confrontation Clause when a preferable trial strategy is

available."). The Eastern District of Pennsylvania addressed a similar situation, in which the

Government sought to conceal the true identity of an undercover DEA agent.  The Government

handed over prior transcripts and other materials, which in its opinion were plenty for the

defendant to cross-examine the witness.  The court disagreed:

> Their proposal forecloses any possibility of defendants' meaningful investigation
> into Lozano's background, and it requires the defendants to rely exclusively on the
> Government for information about Lozano. It also leaves the defense with no way
> of testing the veracity or completeness of the Government's disclosures. This
> complete reliance on the prosecution is, in our view, inimical to our adversary

process and to the checks on government prosecution embedded in our constitutional framework. This complete reliance also implicates one of Smith 's guiding principles, i.e., that the Confrontation Clause requires that the defendants have the opportunity to put the witness' credibility to a fair test. The Government's refusal to disclose the identity of the witness effectively forecloses that opportunity.

*Fuentes*, 988 F.Supp. at 864 -65 (E.D.Pa. 1997).

The Government contends that this information is a sufficient surrogate to revealing the identity of the informant, and that it provides the basis for meaningful cross-examination consistent with the Confrontation Clause. We disagree. While these disclosures certainly assist the defense because they provide impeachment evidence, the failure to reveal Lozano's true name still forecloses "countless avenues of in-court examination and out-of-court investigation." *Smith*, 390 U.S. at 131, 88 S.Ct. at 750. These disclosures also do not alter the Government's sole control over the informational flow and the defendants' inability to test the veracity or completeness of the Government's disclosures. Furthermore, the defense also has no way of testing Lozano's reputation for truthfulness (or lack thereof) in his community. See Fed.R.Evid. 608. Also foreclosed is the defendants' ability to investigate possible prior bad acts here and in Colombia, which would impugn his veracity. See id. In sum, even with these disclosures Lozano remains only who the Government says he is, and as for his life of at least thirty years before 1981, he remains largely a phantom.

*Id*. at 866-87.   Similarly, Mr. Gil-Bernardez should retain the right not to entrust the assessment of the need for cross-examination of his accusers to the prosecution.

7.      It bears noting as well, that it is not only the inability to cross-examine the witness that prejudices Mr. Gil-Bernardez.   Counsel's inability to mount an effective cross-examination will not only preclude the jury from knowing any impeaching information, but will make it appear that there *is no* impeaching information, which lends an improper air to the credibility of the Government's case as a whole.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 688 (1986) (Marshall, J., dissenting) ("The jury was essentially misled, by the empty gesture of cross-examination, to believe that the defense attorney had been permitted to use all the tools at his disposal to expose weaknesses in [the witness'] testimony.").

The Government makes much of the fact that allowing the defendant to know the identity of his accuser and therefore fully exercise his Sixth Amendment right to confrontation will "deprive the Government of its witness." Gov at 6.[2]  The Supreme Court has made clear, however, that if Government cannot put on its case without violating the rights of the criminal defendant, then the Government must bear that burden.  As the Court pointed out in *Giles*,

> The dissent also implies that we should not adhere to Crawford because the confrontation guarantee limits the evidence a State may introduce without limiting the evidence a defendant may introduce. See post, at 9. That is true. Just as it is true that the State cannot decline to provide testimony harmful to its case or complain of the lack of a speedy trial. The asymmetrical nature of the Constitution's criminal-trial guarantees is not an anomaly, but the intentional conferring of privileges designed to prevent criminal conviction of the innocent. The State is at no risk of that.

*Giles*, 128 S.Ct. 2878 at 2692 n. 7.[3]  *See also Melendez Diaz*, 129 S.Ct. at 2540 ("The Confrontation Clause may make the prosecution of criminals more burdensome, but that is equally true of the right to trial by jury and the privilege against self-incrimination. The Confrontation Clause--like those other constitutional provisions--is binding, and we may not disregard it at our convenience."); s*ee also, Crawford*, 541 U.S. at 54 (Confrontation Clause "does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.").

8.      The Government correctly notes that the leading case on this issue in this Circuit

---

[2]The Government's suggestion that this Court's decision to refuse to permit "Juan Diaz" to testify under a pseudonym will deprive "the jury" of an important witness, Gov. at 7,  borders on offensive.  Even if it is the Government's job to speak for the jury - which it is not - the jury is in no way honored by being asked to consider and determine the value of the testimony that has secretly been shielded from cross-examination.

[3] It also bears noting that while the Government insists it must not be frustrated in its ability to present this "important" and "pertinent," witness, Gov. at 1, the Government simultaneously asserts that the witness' testimony will be "generalized" and "limited."

is *United States v. Celis*, 608 F.3d 818 (D.D.C. 2010). *Celis* does not, however, support the sweeping order that the Government seeks.[4] In *Celis*, the Government sought a protective order much like the one sought by the Government here - that would completely preclude the defense from learning the identity of its witnesses ever, under any circumstances. The court found the Government's request to be too intrusive on the defendants' rights and crafted a flexible order that would require release of the names, six days prior to trial, to counsel and one other member of the defense team located in the United States. The witness' identities were not to be shared with anyone outside the U.S. without prior permission of the court. *Id*. at 829. This kind of order, allowing for release of the names to counsel, hews closer to the vast majority of decisions on this issue which limit the use of pseudonyms to situations in which the defendant is familiar with the defendant or his rights are otherwise protected. *See United States v. Mato*, 2007 WL 3121986 (11th Cir. 2007) (testimony under pseudonym acceptable where defense knew witness' real name); *United States v. Jacobson*, 785 F.Supp. 563, 568-69 (E.D.Va.1992) (use of pseudonym at trial by parents of artificially inseminated children to protect them from embarrassment acceptable because defendant knew the parents' true names and use of pseudonym would not interfere with preparation for trial or cross-examination); *Siegfriet v. Fair*, 982 F.2d 14 (1st Cir. 1992) (testimony under pseudonym acceptable where witness had "gone by" pseudonym and where defendant knew his real name); *Clark v. Ricketts*, 958 F.2d 851, 855 (9th Cir. 1991). Many cases also concede the right of the defense to know the name of the witness, but limit access to other identifying information, such as his address. *See, e.g, United States v.*

---

[4]The Government also cites *United States v. Warren*, 713 F.Supp. 2d 1, n.1 (D.D.C. 2010) in support of its contention that it is practice in this Circuit to allow witness' identities to be withheld from the defense. *Warren,* however, is simply a reference to the concealed identities of sexual assault victims and provides no indication that these victims' identities were either withheld from or otherwise unknown to the defendant or his counsel.

*Fuentes*, 988 F.Supp. 861, 866 (E.D.Pa. 1997) (citing cases).  As indicated above, Mr. Gil-Bernardez is amenable to such a procedure.   Although the Government requests that this Court retreat from the procedure authorized by *Celis* and grant complete anonymity, its request is based only on the requirements of "Mr. Diaz's" supervisors, see Gov. at 6, and not the demonstration of a greater magnitude of threat than was at issue in *Celis*.  *See Celis*, 608 F.3d at 829 (threats to witnesses described in "vivid detail.")

9.      Finally, Mr. Gil-Bernardez requests that, if this Court is inclined to entertain the Government's request to completely restrict defense counsel from knowing the identity of a witness against him, this Court attach the highest burdens of proof and persuasion to its decision in order not to deprive him of fundamental constitutional protections without due process of law. To wit:  Mr. Gil-Bernardez requests that the Government be required to demonstrate the threat to this witness by sworn testimony and by clear and convincing evidence.  Moreover, Mr. Gil-Bernardez requests that the Government be required to demonstrate that there is no other expert witness it could offer to provide substantially similar testimony that would not be required to testify anonymously.   Given the Government's representations that the testimony will be "limited" and "generalized," it seems highly unlikely that "Mr. Diaz" is the only expert qualified to provide similar evidence.  In short, Mr. Gil-Bernardez' fundamental rights to confront the witnesses against him should not be curtailed by an allegation or rumor that tends to show there might be a threat to a witness whose particular testimony is only marginally necessary in the first place.  To do otherwise would turn this Court's ruling into a template for what the Government seems ultimately to be seeking:  a blanket rule affording complete anonymity to all Government witnesses in MS-13 prosecutions based on its generalized assertions that MS-13 engages in witness retaliation.

WHEREFORE, it is respectfully requested that this Honorable Court require the

Government to provide the expert witness' real name to defense counsel.


Respectfully submitted,


_____/s/_____

THE LAW OFFICE OF PURPURA & PURPURA

William B. Purpura
8 E. Mulberry St.
Baltimore, MD 21202
410-727-8550