**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 10-cr-256-06 (RMC)** |
| | **:** | |
| **HECTOR DIAZ FLORES, et al.** | **:** | |
| | **:** | |

**HECTOR DIAZ FLORES' MOTION TO EXCLUDE**
**IRRELEVANT AND PREJUDICIAL GANG EVIDENCE**

**COMES NOW** the Defendant, Hector Diaz Flores, by counsel, and respectfully moves this honorable Court for an order excluding all evidence that Mr. Diaz Flores is a member of *La Mara Salvatrucha* ("MS-13"), or that his affiliation with this gang played any role in his alleged offenses. Alternatively, to the extent that the government is able to demonstrates to this Court's satisfaction that his membership in or affiliation with MS-13, is relevant to the proceedings against him, and that its probative value is not substantially outweighed by the danger of unfair prejudice, or other factors, Mr. Diaz Flores requests that the Court compel the prosecution to enter a stipulation limited to the bare information necessary to establish an element of proof or probative fact.

Mr. Diaz Flores files this motion in conjunction with his motion to sever, which he incorporates by this reference, and relies upon the Fourth, Fifth, Sixth, and Eighth Amendments to the United States Constitution, and Rules 8 and 14 of the Federal Rules of Criminal Procedure. As grounds for his motion, Mr. Diaz Flores cites the following points and authorities.

*Background*

On November 11, 2011, Mr. Diaz Flores was charged, pursuant to a second superseding indictment, with two crimes: (1) Murder in Aid of Racketeering, in violation of 18 U.S.C. § 1959(a)(1); and (2) First Degree Murder While Armed (Premeditated), in violation of 22 D.C. Code §§ 2101 & 4505. These charges arise out of an incident on or about December 12, 2008, in which Mr. Diaz Flores and several associates – presumed members of *La Mara Salvatrucha* ("MS-13") – attacked a group of rival gang members resulting in the stabbing death of Giovanni Sanchez. None of Mr. Diaz Flores' codefendants charged in this superseding indictment have been charged or implicated in the death of Mr. Sanchez.

Shortly after his arrest, Mr. Diaz Flores met with law enforcement authorities on two occasions and provided detailed videotaped statements regarding his role in the assault on Mr. Sanchez. Importantly, although Mr. Diaz Flores acknowledged participating in the assault, he was consistent and clear that he neither stabbed Mr. Sanchez nor caused his death. The Defense is unaware of any evidence demonstrating that Mr. Diaz Flores intended for Mr. Sanchez to die. Although there is evidence corroborating Mr. Diaz Flores' presence and participation in the assault on Mr. Sanchez, based on our review of the discovery provided by the government, the Defense is unaware of any evidence contradicting the Mr. Ayala's admission that he alone caused Mr. Sanchez's death.

Based on his alleged involvement in this single criminal incident, Mr. Diaz Flores has been charged in a thirty-two counts charging seventeen defendants with dozens of crimes, ranging from conspiracy, extortion, kidnapping and robbery to murder. The lead

count in the indictment alleges a far-ranging RICO conspiracy, in violation of 18 U.S.C. § 1962(d), naming most of the codefendants identified in the indictment and spanning thirty-one months.  Notably, Mr. Diaz Flores is not charged in the RICO conspiracy count, there is no evidence he engaged in a "pattern of racketeering activity," 18 U.S.C. § 1961(5), and virtually all the crimes and predicate acts alleged in the indictment occurred long after he was arrested and incarcerated for his role in Mr. Sanchez's death.

On information and belief, and regardless of whether Mr. Diaz Flores' trial is severed from that of his codefendants, the government intends to introduce significant evidence, through lay and expert witnesses, to establish elements of the RICO offenses and/or to create a prejudicial backdrop for the crime(s) that were committed. MS-13 is an "enterprise," within the meaning of 18 U.S.C. § 1961(4), that functioned as a continuing unit with a common purpose of achieving the objectives of the enterprise.  All or virtually all of the  evidence that the government might seek to introduce to establish the existence of a RICO conspiracy or to prove that the death of Mr. Sanchez was "gang-related" is irrelevant, inadmissible and prejudicial to Mr. Diaz Flores' right to a fair trial and should be excluded. For these reasons, and those discussed herein, this Court should grant this motion and exclude all evidence that Mr. Diaz Flores is a member of MS-1, or that this affiliation played any role in his alleged offenses.

*Legal Argument*

Pursuant to Rule 403 of the Federal Rules of Evidence, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by … needless presentation of cumulative evidence."  Fed. R. Evid. 403.  Evidence is unfairly

3

prejudicial if it "invites the jury to render a verdict on an improper emotional basis," *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000), or "triggers the mainsprings of human action in such a way as to cause a jury to base its decision on something other than the established proposition in the case." *United States v. Currier*, 836 F.2d 11, 18 (1st Cir. 1987).

Because "the trial court is in the best position to perform" the "subjective balancing" required under Rule 403, it is afforded broad discretion in fashioning a remedy when potentially prejudicial evidence – and in particular, gang evidence – is sought to be introduced. *United States v. Washington*, 969 F.2d 1073, 1081 (D.C. Cir. 1992); *see United States v. Butler*, 71 F.3d 243, 250 (7th Cir. 1995) (recognizing that gang evidence presents special risk of unfair prejudice). Due to the substantial risk of unfair prejudice attached to gang affiliation evidence – i.e., the strong likelihood that such evidence will "be damaging to a defendant in the eyes of the jury" because gangs suffer from public perception – careful consideration in determining admissibility of gang membership and gang activity evidence is required. *Dawson v. Delaware*, 503 U.S. 159, 166-68 (1991); *United States v. Lewis*, 910 F.2d 1367, 1372 (7th Cir. 1990); *see Campos-Alvarez v. United States*, 16 A.3d 954, 960 (D.C. 2011) (recognizing that defendants "may be prejudiced in the eyes of the jury by evidence of … gang involvement."). In essence, because there is a very real risk that the admission of gang evidence will lead to a defendant being found "guilty by association," courts must be particularly circumspect of its admission and the asserted grounds for relevance. *United States v. Thomas*, 86 F.3d 647, 653 (7th Cir. 1996). *See Campos-Alvarez,* 16 A.3d at 960 (cautioning "trial judges to consider carefully before admitting evidence of gang retaliation, and then only after

4

ensuring that the government's evidence is relevant, necessary and supported by competent evidence.")

Because Mr. Diaz Flores' is not charged with RICO conspiracy, no independent basis exists for admitting "gang evidence" generally, much less his specific affiliation with MS-13. Moreover, since he is only charged with two substantive homicide crimes, and gang membership or participation is not an element of either offense, any asserted basis of relevance must be based on a collateral issue. Mr. Diaz Flores' trial, however, will present four fundamental factual issues, of which gang affiliation is not probative: (1) whether he was present when the crime occurred; (2) if so, whether he participated; (3) his role in the offense; and (4) his mental state or intent. Because gang evidence is not probative of any of these facts and would be unfairly prejudicial to the jury's determination of each, they should be excluded. In particular, subjecting a jury to extensive evidence of the inner workings of MS-13, gang insignia, gang communications and evidence of other violent crimes is only likely to cause the jury to convict Mr. Diaz Flores based on criminal propensity. But not just Mr. Diaz Flores' propensity, but that of and entire gang.

*United States v. Irvin*, 87 F.3d 860 (7th Cir. 1996), illustrates well the great risks involved when gang evidence is admitted in a criminal trial against an individual who is not charged as part of a larger conspiracy. In *Irvin*, the defendant was arrested following a traffic stop when a police search of his vehicle revealed two loaded weapons and eight bundles of methamphetamine. Following his arrest, Irvin was interrogated and made several admissions related to his affiliation and involvement with a motorcycle gang called the "Diablos". *Id.* at 862. Subsequently, during his trial, the prosecution

introduced significant evidence of his gang involvement including Irvin's admissions, photographs and a detailed description of a tattoo on his codefendant's back and arm, a police officer's testimony about the meaning of the tattoo, and numerous artifacts and gang insignia associated with the Diablos taken in the search of the truck. *Id.* at 862-63.

On appeal the court held that the admission of the gang evidence constituted an abuse of discretion, rejecting numerous arguments from the prosecution as to its relevancy. *Irvin*, 87 F.3d at 863-64, 866. In particular, the court noted that since Irvin was not charged with any offenses where his gang membership was an element of proof, including an illusory conspiracy charge that the trial court had referenced, *id.* at 864, the evidence lacked "any meaningful connection between the Diablos and the drug activity that the government alleged was a joint effort." *Id.* at 865. Thus, the court reasoned, "the probative value of the common gang membership in proving such a joint venture was minimal at best" while "the danger of unfair prejudice was substantial." *Id.* at 865-66. Although the court found the admission of this evidence constituted harmless error, in light of Irvin's defense, its reasons for holding that the district court abused its discretion in admitting the evidence are apt in this case:

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a genuine concern whenever gang evidence is admitted. This potential for prejudice was heightened in this case because the gang evidence presented consisted of tattoos and clothing containing devil's heads and demonic insignia. In addition, the government's evidence highlighted the name of the gang, the Diablos, which means "devils" in spanish. The introduction of gang membership linked to satanic imagery is clearly inflammatory. The possible prejudicial effect of the gang testimony was further aggravated by the fact that the government had no direct evidence that the defendants were jointly transporting the drugs or were jointly intending to sell them.

> The highly charged gang-affiliation evidence served as a substitute for such direct evidence, increasing the chance of guilt purely by association.

*Irvin*, 87 F.3d at 865-66. Based on this, the court held the "considerable danger of unfair prejudice more than substantially outweighed the minimal probative value of the motorcycle gang evidence admitted. *Id.* at 866. *See also Christmas v. City of Chicago*, 691 F.Supp.2d 811, 813 (E.D. Ill. 2010) (granting plaintiffs motion to excluding evidence of gang evidence in civil rights suit); *Charles v. Cotter*, 867 F.Supp. 648, 658 (N.D. Ill. 1994) (identifying a § 1983 plaintiff "as a gang member is unfairly prejudicial insofar as it encourages the inference that Charles is an evil and menacing person.").

Regardless of whether Mr. Diaz Flores is tried jointly with his codefendants, or separately, gang evidence will obscure the issues related to his alleged involvement in the death of Mr. Sanchez, and in particular, his mental state if the jury determines that he was involved. Indeed, because of the great likelihood that a jury will give the benefit of the doubt on any disputed issue to the government based solely on propensity arising from gang affiliation and not proof beyond a reasonable doubt, the risk of unfair prejudice is significant. More importantly, because the government has different non-gang evidence to support any other fact it would like to argue, any claim that gang evidence is essential is erroneous, and undermines any claim that the probative value of this proof is high. For these reasons this Court should exclude any evidence that shows Mr. Diaz Flores is a member of MS-13, evidence of tattoos or gang insignia, and any other gang evidence, including his videotaped statements related to his affiliation.[1]

---

[1] Counsel has reviewed Mr. Diaz Flores's videotaped statements and submits to the Court that the portions related to gang affiliation can be redacted in a manner that in no way undermines the portions relating to his role in Mr. Sanchez's death.

*Stipulation*

In the event the Court denies Mr. Diaz Flores' motion to exclude gang evidence from his trial, and without waiving any objections previously asserted, Mr. Diaz Flores moves that the government be compelled to stipulate to those essential facts that it claims are necessary to establish through the introduction of gang evidence in its case-in-chief. In the seminal case of *Old Chief v. United States*, 519 U.S. 172, 174-76 (1997), the United States Supreme Court considered whether a trial court's refusal to accept a defendant's offer to stipulate to an element of a particular crime – i.e., the defendant's prior conviction for assault causing serious bodily injury - deprived him of a fair trial. While acknowledging that the federal rules of evidence accorded trial courts significant discretion, the Court ruled the lower court's refusal to allow the defendant to stipulate to the element of his prior crime constituted an abuse of that discretion, requiring reversal.

The defendant in *Old Chief* was charged with a federal offense making it unlawful for anyone, having been convicted of a felony, to posses a firearm.  519 U.S. at 174.  *See* 18 U.S.C. § 922(g)(1).  Due to his prior assault conviction, Old Chief moved to exclude evidence of his prior crime, under Rule 403 of the Federal Rules of Evidence, and offered to stipulate to this element of the federal charge, arguing that knowledge of the prior conviction would prejudice his right to a fair trial.  *Id.* at 175.  The government "refused to join in a stipulation, insisting on his right o prove his case his own way, and the District Court agreed, ruling orally that, 'If he doesn't want to stipulate, *he doesn't have to*.'"  *Id.* at 177 (emphasis added).

The Supreme Court held the trial court erred in refusing the offer to stipulate to the element because the admission of the underlying evidence posed an unnecessary and

8

undue risk of prejudice.  The Court reasoned that prejudice must be evaluated according to how likely it is "to lure the factfinder into declaring guilt on a ground different from some proof specific to the offense charged."  While recognizing that several grounds could support this result, the Court cited one specific example, where a jury infers the defendant's bad character from his prior bad act and then "tak[es] that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventative conviction even if he should happen to be innocent momentarily)."  *Id*. at 180-81.  Even where a defendant's prior bad act is relevant to show character, it is generally inadmissible because "it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."  *Id*. at 181 (quoting *Michelson v. United States*, 355 U.S. 469, 475-76 (1948)).

As part of the evaluation of the evidence's potential to create unfair prejudice, the Court reasoned, a trial court must consider potential alternatives to the offered evidence. Rather than using estimates of the evidence's probative value and unfairly prejudicial risk as the "sole reference points," under *Old Chief*, a trial court must consider *alternatives* to the evidence objected to, thereby "tak[ing] account of the full evidentiary context of the case as the court understands it when the ruling is made."  *Id*. at 182-83.  In other words, a judge presented with potentially unfairly prejudicial evidence should

> evaluate the degrees of probative value and unfair prejudice not only for the item in question but for any actually available substitutes as well.  If an alternative were found to have substantially the same or greater probative value but a lower danger of unfair prejudice, sound judicial discretion would discount the value of the item first offered and exclude it if its discounted probative value were substantially outweighed by unfairly prejudicial risk. *Id*.

9

Applying these standards to the case before it, the Court held the trial court abused its discretion by rigidly applying the rules of evidence and not considering legitimate alternatives, such as the defendant's proffered stipulation.  Because it was "the fact of the qualifying conviction is alone what matters under the statute," the Court reasoned that the nature of the crime that made the defendant into a felon was superfluous.  *Old Chief*, 519 U.S. at 190.  Indeed, according to the Court, "[t]he most the jury needs to know is that the conviction admitted … falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." *Id*. at 190-91.  Hence, because Old Chief's offer to stipulate constituted "alternative, relevant, admissible evidence of the prior conviction," the stipulation should have been accepted in lieu of evidence.  *Id*. at 186.

Importantly, in rendering this decision, the Court rejected two arguments that the prosecution will likely make here.  First, the Court found no merit to the contention that the admission of the collateral facts underlying the prior conviction serve an important function at the pending trial.  In this regard, the Court reasoned that "the choice of evidence" to prove the defendant's status is not

> between eventful narrative and abstract proposition, but between propositions of slightly varying abstraction, either a record saying that conviction for some crime occurred at a certain time or statement admitting the same thing without naming the particular offense. The issue of substituting one statement for the other normally arises only when the record of conviction would not be admissible for any purpose beyond proving status, so excluding it would not deprive the prosecution of evidence with multiple utility….  Nor can it be argued that the events behind the prior conviction are proper nourishment for the juror' sense of obligation to vindicate the public interest.

*Old Chief*, 519 U.S. at 190. Similarly, the Court also rejected, as a basis for the prior crime's introduction, "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence." Noting that this rule has "virtually no application when the point at issue is a defendant's legal status, dependant on some judgment rendered wholly independently of the concrete events of later criminal behavior charged against him," the Court reasoned that "proof of the defendant's [legal] status goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." *Id*. at 190-91.

By requesting alternative relief if his motion is denied, Mr. Diaz Flores is not attempting to exclude proof of an element, but rather, the type of evidence used to prove that element. This is necessary because the "negative factors" that would accompany the introduction of gang evidence is very high. In addition to prejudicing Mr. Diaz Flores, by allowing the jury to infer his guilt based on his affiliation with members of MS-13, and to punish him for other people's crimes, the admission of gang evidence will confuse and likely mislead the jury, seriously risks distracting it from the major issues in the case, and will be unnecessarily time consuming.

Pursuant to *Old Chief*, this Court must consider the alternatives to this evidence – namely the provision of a stipulation – as well Mr. Diaz Flore's membership in MS-13 is not genuinely in dispute. Indeed, proof of gang affiliation is functionally analogous to the defendant's "status" in *Old Chief* , which prompted the Supreme Court to hold that the "most the jury needs to know is" that the defendant had previously been convicted. Likewise, because of the very low probative value of any proffered gang evidence, what the jury will need to know to fairly deliberate is extremely limited. Ultimately, because

11

the prosecution has no other interest in establishing these facts by evidence instead of a stipulation, *Old Chief*, 519 U.S. at 189-91, other than to prejudice Mr. Diaz Flores, to confuse the issue or mislead the jury, there is simply no contravening argument to support their admission instead of a stipulation.  Certainly, utilizing a stipulation will save significant time and resources by limiting the number of witnesses to be called, the scope of the proof, and the issues that the jury must consider during its deliberations.

*Conclusion*

**WHEREFORE**, Mr. Diaz Flores, by counsel, respectfully requests that the Court grant this motion and exclude all gang evidence from his trial.  Alternatively, Mr. Diaz Flores requests that the Court require the government to proffer the gang-related facts it deems probative and to enter a stipulation related to those facts.

Respectfully submitted,

HECTOR DIAZ FLORES
By Counsel

_____/s/_____
JOSEPH T. FLOOD
Sheldon & Flood, P.L.C.
10621 Jones Street, Suite 301-A
Fairfax, Virginia  22030
(703) 691-8410
jflood@csfdefense.com

_____/s/_____
Mark J. Carroll
9520 Reach Road
Potomac, Maryland  20854
(301) 762-6453
markjcarroll@hotmail.com

12

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing to the other parties in this matter.

_____/s/_____
JOSEPH T. FLOOD

13