UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Crim. No. 10-256-02 RMC** |
| | ) | **Trial: January 7, 2013** |
| | ) | |
| OMAR AGUILAR | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**DEFENDANT AGUILAR'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY**

Defendant Omar Aguilar, through undersigned counsel, hereby moves this Court, pursuant to the Fifth Amendment to the United States Constitution, to suppress the use as evidence of all testimony relating to any out-of-court identification of Mr. Aguilar, any in-court identification derived from the out-of-court identification and any other evidence obtained as a result of the impermissible out-of-court identification. Alternatively, Mr. Aguilar requests a hearing to determine the nature and circumstances of any alleged identification(s). *In Re F.G.*, 576 A. 2d 1724 (D.C. Cir. 1990). In support of this Motion, Mr. Aguilar states as follows:

## I.   FACTUAL BACKGROUND

The latest superseding indictment in this case names sixteen (16) defendants and encompasses thirty-two (32) counts of alleged violations of nine (9) federal and District of Columbia statutes. *Superseding Indictment* (Docket No.101). The specific charges against Defendant Aguilar include violations of the following statutes:

- 18 U.S.C. § 1959(a)(1) and (2) – Kidnapping in Aid of Racketeering and Aiding and Abetting (Counts 2, 6, 10, 14, & 18);

- 18 U.S.C. § 1959(a)(3) and (2) – Assault with a Dangerous Weapon in Aid of Racketeering and Aiding and Abetting (Counts 3, 7, 11, 15, & 19);

- 22 D.C. Code §§ 2801, 4502 – Armed Robbery (Counts 4, 8, 12, 16, & 20);

- 22 D.C. Code §§ 2001, 4502 – Kidnapping While Armed (Counts 5, 9, 13, 17, & 21);

- 22 D.C. Code §§ 801(a), 4502 – First Degree Burglary While Armed (Count 22); and

- 18 U.S.C. §§ 924(c)(1)(A) and (2) – Possession of a Firearm During and in Relation to a Crime of Violence (Count 23).

In support of the VICAR conspiracy charges under 18 U.S.C. § 1959, the Government alleges that each defendant is affiliated with an alleged criminal street gang known as Mara Salvatrucha ("MS-13"). *Superseding Indictment* at ¶¶ 1-4, Count 3. The counts against Mr. Aguilar all arise out of an incident that allegedly occurred on December 11, 2009 at a house of prostitution located at 301 Taylor Street, N.W., Washington, D.C. ("December 2009 incident").[1] *Superseding Indictment* at ¶¶ 2-23. The Superseding Indictment alleges that Mr. Aguilar committed the subject offenses "for the purpose of gaining entrance to and maintaining and increasing position in MS-13." *See, e.g.*, *Superseding Indictment* at ¶ 23. The Superseding Indictment does not set forth any information that indicates that Mr. Aguilar was in fact, at the time of the subject offenses, a "paisa" (new recruit), an associate or a member of MS-13 or was seeking to gain entry to MS-13 by his actions, other than his alleged participation in the December 2009 incident itself. *Superseding Indictment* at ¶¶ 2-23. Moreover, while the Government has produced thousands of intercepted telephone calls that purportedly establish the existence of a criminal conspiracy and/or acts in furtherance of MS-13, none of the calls appears to have any relation to Mr. Aguilar. Indeed, none of the calls was initiated or received by Mr. Aguilar and none appear to even reference him.[2]

---

[1] Mr. Aguilar was not arrested in connection with this incident until April 2010.

[2] Undersigned counsel are still in the process of reviewing the voluminous intercepted calls.

According to discovery information provided by the Government, there was one alleged photo identification procedure relating to Mr. Aguilar that occurred on March 11, 2010. The identification was based on a single photo of Mr. Aguilar shown to a witness. *See* Exhibit A, Photo of Mr. Aguilar (the copy of the photo provided by Government is of poor quality). On the back of the copy of the photo is a transcription of the words allegedly uttered during the identification procedure:

Q: Can you tell me who is the person it [sic] the picture?

A: Yes. Flaco.

Q: Is he's [sic] the same Flaco that participated in the burglary?

yes.

Q: [sic]

While the words used in the identification procedure are written in English, it is very likely the photo identification procedure was conducted in Spanish, as most, if not all, of the alleged witnesses and participants to December 2009 incident speak Spanish as a first language. There is no indication of who conducted the photo identification procedure or whether such individual is a Spanish language qualified interpreter, as defined by D.C. Code § 2-1901(6), or is otherwise qualified to conduct an identification procedure in Spanish and then translate and transcribe it into English. Nor was a Photograph Identification Instruction Viewing Sheet (MPD Form-122-A) used in connection with this identification procedure. The Government has not provided any information on where the photo identification occurred or on any of the circumstances surrounding the identification procedure.[3]

---

[3] In response to inquiries from undersigned counsel, the Government did provide a packet of materials containing many photos and various MPD-122-A forms that seem to reference a "Flaco" or "Flaco from Fulton" (the alias allegedly used by Mr. Aguilar). However, many of

Mr. Aguilar is currently set to go to trial on January 7, 2013 with co-defendants Wilfredo Mejia, Hector Diaz-Flores and Rudy Martinez.

## II.      ARGUMENT

### 1. THE OUT-OF-COURT IDENTIFICATION AND ANY SUBSEQUENT IN-COURT IDENTIFICATIONS OF MR. AGUILAR SHOULD BE SUPPRESSED AS UNDULY SUGGESTIVE AND INHERENTLY UNRELIABLE.

The alleged identification procedure was conducted in violation of the Due Process Clause of the Fifth Amendment as showing a single photo of Mr. Aguilar to a witness "was unnecessarily suggestive and conducive to irreparable misidentification." *Henderson v. United States*, 527 A.2d 1262, 1267 (*quoting Stewart v. United States*, 490 A.2d 619, 622 (D.C. 1985) (internal quotations omitted).   Showing a single photo is highly suggestive, and the suggestivity is unnecessary absent compelling circumstances. *See Manson v. Braithwaite*, 432 U.S. 98 (1977); *Mason v. United States*, 414 F.2d 1176 (D.C. Cir. 1969). The Government has not provided any information regarding the context of the identification procedure that would justify this highly suggestive identification.

As studies have repeatedly shown, eyewitness identification is fraught with errors of perception and memory.  *See* Elizabeth F. Loftus and James M. Doyle, *Eyewitness Testimony*: *Civil and Criminal* (2d Ed. 1992).  The Supreme Court decisions establishing restrictions on the use of eyewitness testimony arose from the Court's own "concern with the problems of eyewitness identification."  *Manson*, 432 U.S. at 112.   Both case law and scientific studies acknowledge that civilian witnesses will typically defer to the judgment and conclusions of

---

these forms are not completely filled out, are very poor quality photocopies and are illegible.  In addition, several forms that reference a "Flaco" or "Flaco from Fulton" appear to correlate to arrays that do not contain photos of Mr. Aguilar.  Mr. Aguilar reserves the right to renew or amend this Motion if any such photo identifications are later determined to relate to Mr. Aguilar.

police officers regarding identifications of suspects. *See United States v. Shepherd*, 388 U.S. 218, 228-29 (1967); *People v. Anderson*, 205 N.W.2d 461, 468-71 (Mich. 1973); Levine & Trapp, *The Psychology of Criminal Identification: the Gap from Shepherd to Kirby*, 121 U. Pa. L. Rev. 1079 (1973); P. Wall, *Eyewitness Identification in Criminal Cases*, 26-40 (1965).

Where an identification is shown to be suggestive, it must be examined for reliability. *Manson*, 432 U.S. at 114. Relevant factors include the opportunity of the witness to view the defendant at the time of the crime, the accuracy of any prior description, the level of certainty of the witness and the length of time between the crime and the identification. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Here, the Government has not provided any information regarding the opportunity of the witness to view Mr. Aguilar at the time of the alleged crime or details regarding the accuracy of any prior description provided by the witness. Moreover, the length of time between the alleged crime and identification was evidently about three months. As for the witness' level of certainty, it is unclear from the words transcribed on the back of the photo if the witness at any point positively identified Mr. Aguilar during the identification procedure, specifically whether the witness replied "yes" to the officer's question or the officer queried "yes?" at the end of his question. *See* Exhibit A. Finally, as noted *supra*, the fact that the identification procedure was done in Spanish and then translated into English also renders it unreliable, especially if the officer who conducted the procedure was not a Spanish language qualified interpreter as defined by D.C. Code § 2-1901(6). At the very minimum, the Court should conduct a hearing to explore further the circumstances that led to the alleged photo identification of Mr. Aguilar and to determine the suggestivity and reliability of the identification procedure. *See In re F. G.*, 576 A.2d 724, 726 (D.C. 1990).

If an out-of-court identification by a witness is deemed not sufficiently reliable to be admitted in evidence, any in-court identification by such witness should also be excluded unless it is based upon some "independent recollection ... uninfluenced by the pretrial identification." *United States v. Crews*, 445 U.S. 463, 472-473 (1980). This serves to prevent prejudicial in-court identifications that are biased or tainted by police misconduct. *Id*. at 4 73. In this case, if the Court determines that the use of a single photo was not sufficiently reliable, any subsequent in-court identification should only be allowed if the Court finds it was not affected by the witness' prior identification of the defendant. *Id*.

Lastly, the Court should only admit the out-of-court photo identification of Mr. Aguilar at trial if the identification proves reliable and the defense has the opportunity to cross-examine the identifying parties. *Beatty v. United States*, 544 A.2d 699, 701-02 (D.C. 1988). The circumstances in this case indicate that the out-of-court identification lacks the necessary probative value to be admitted in evidence. *Id*. at 701-032. Similarly, the suggestivity and unreliability surrounding the out-of-court identification renders questionable the probative value of any subsequent in-court identification. Therefore, on evidentiary grounds, the Court should suppress all testimony relating to out-of-court identification and any in-court identifications derived from the out-of-court identification.

**WHEREFORE**, Mr. Aguilar moves this court for an order suppressing the out-of-court identification(s), any in-court identifications of Mr. Aguilar and any evidence obtained as a result of the out-of-court identification(s).  In the alternative, Mr. Aguilar requests a hearing on this motion so that the Court may assess the nature and circumstances of the alleged identification(s).

Respectfully submitted,

/s/

_____

Paul Y. Kiyonaga
D.C. Bar No. 428-624
KIYONAGA & SOLTIS, P.C.
910 Seventeenth St. N.W.
Suite 800
Washington, D.C. 20006
Tel. No. (202) 363-2776
pkiyonaga@kiyosol.com

/s/

_____

John James Carney
D.C. Bar No. 241-745
CARNEY & CARNEY
601 Pennsylvania Avenue, NW
Suite 900 South Building
Washington, DC 20004
Tel. No. (202) 434-8234
vetajohn@msn.com

Date: May 11, 2012

7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of May, 2012, a true and correct copy of the foregoing Defendant Omar Aguilar's Motion to Suppress Identification Testimony was served via the ECF system on the other defense counsel in this case and on the attorneys for the Government:

William John O'Malley , Jr.
U.S. ATTORNEY'S OFFICE
Judiciary Center Building
555 Fourth Street, NW
Washington, DC 20001
(202) 252-1734
Email: bill.j.o'malley@usdoj.gov

Laura Jean Gwinn
U.S. DEPARTMENT OF JUSTICE
Criminal Division/Gang Unit
1301 New York Avenue
7th Floor
Washington, DC 20005
(202) 353-9178
Email: laura.gwinn3@usdoj.gov

Seth Adam Meinero
ASSISTANT UNITED STATES ATTORNEY
Violent Crimes & Narcotics Trafficking Section
555 Fourth Street, NW
Room 4215
Washington, DC 20530
(202) 252-7409
Email: seth.meinero@usdoj.gov

Laura R. Bach
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Room 9421
Washington, DC 20530
(202) 252-7089
Email: laura.bach@usdoj.gov

/s/

_____
Paul Y. Kiyonaga

8