# JOINT PRETRIAL STATEMENT

May 21, 2013

***United States v. Noe Machado-Erazo***
Criminal Action No. 10-256 (08) (RMC)

***United States v. Jose Martinez-Amaya***
Criminal Action No. 10-256 (09) (RMC)

***United States v. Yester Ayala***
Criminal Action No. 10-256 (20) (RMC)

Nihar Mohanty
Assistant U.S. Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-7700 (NM)

Laura Gwinn
U.S. Department of Justice
1301 New York Ave. NW
Washington, DC 20530
202-262-6763

Kira West, Esquire
1325 G Street NW Suite 500
Washington D.C. 20005
202-906-9971
Attorney for Noe Machado-Erazo

Joseph Virgilio, Esquire
1629 K Street NW, Suite 300
Washington, DC 20006
202-686-6914
Attorney for Jose Martinez-Amaya

Billy Ponds, Esquire
The Ponds Law Firm
1250 24th Street, NW Suite 300
Washington, D.C. 20037
202-333-2922
Attorney for Yester Ayala

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 10-256 (RMC)** |
| v. | : | |
| | : | |
| **NOE MACHADO-ERAZO,** | : | |
| **JOSE MARTINEZ-AMAYA,** | : | |
| **YESTER AYALA** | : | |
| | : | |
| Defendants. | : | |
| | : | |

### JOINT PRETRIAL STATEMENT[1]

The United States, by and through its attorney, the United States attorney for the District of Columbia, and the defendants, Noe Machado-Erazo, Jose Martinez-Amaya, Henry Diaz-Antunez, and Yester Ayala, by and through their attorneys, Kira West (Machado-Erazo), Joseph Virgilio (Martinez-Amaya), and Billy Ponds (Ayala) respectfully submit this Joint Pretrial Statement pursuant to the Court's April 24, 2013 Order.

A.      **Statement of the Case**

This is a criminal case in which the government alleges that MS-13 is a racketeering enterprise engaged in certain criminal activities, and that the defendants are members of MS-13. Defendants Noe Machado Erazo, Jose Martinez-Amaya, and Yester Ayala, are each charged with RICO conspiracy, that is, agreeing to participate in the activities of an enterprise through a pattern of racketeering activity, between approximately 2008 and continuing through at least February 2011. In addition, Machado-Erazo and Martinez-Amaya are charged with the murder

---

[1]      The defendants' objections are noted after the particular section, and are bolded for convenience.

in aid of racketeering of Felipe Enriquez, which occurred on or about March 28, 2010 at Rocky Gorge in Montgomery County, Maryland. They are also charged with using a handgun to commit that murder.

Ayala is charged with the murder in aid of racketeering of Louis Membrano-Zelaya, who was killed by stabbing on November 6, 2008, in the vicinity of 11th Street and Otis Place, Washington, D.C. Henry Diaz-Antunez is also charged with participating in this murder, but is charged pursuant to D.C. Code with First Degree Premeditated Murder While Armed. Ayala is additionally charged with the murder in aid of racketeering of Giovanny Sanchez, which occurred on December 12, 2008 in the 3400 block of 14th Street NW, Washington, D.C. Sanchez died as a result of multiple stab wounds.

**B.** **Proposed Voir Dire Questions**

<u>Court's Standard Voir Dire Questions</u>

The United States does not object to any of the Court's standard voir dire questions, but suggests that the Court include agents from the Department of Homeland Security, formerly Immigration and Customs Enforcement in its list of examples of law enforcement officers (Court's Standard Voir Dire Question 13). The defendants do not object to the Court's standard voir dire questions.

<u>Proposed Additional Voir Dire Questions (Agreed to by Parties)</u>

Additionally, the parties have agreed to the following voir dire questions:

1.      Some of the events to be described during the trial are alleged to have occurred at the following locations. Do you, a member of your family, or close personal friend have a significant connection to any of these locations:

        ____      11th Street and Otis Place, N.W., Washington, D.C.

4

      ____     the 3400 block of 14th Street, N.W. Washington, D.C.
      ____     the 1300 block of Taylor Street, N.W., Washington, D.C.
      ____     the 5400 block of Riverdale Road, Riverdale, Maryland
      ____     the 2200 block of Ednor Road, Silver Spring, Maryland
      _____    the 2300 block of Freetown Court, Reston, Virginia

Do any members of the jury panel live near, work near, or have anything other than a general familiarity with any of these locations?

     2.      Is any member of the panel or any close friend or relative currently employed -- or has been previously employed or has applied for employment -- by a probation or parole office, the D.C. Department of Corrections, or a jail, prison, or other type of penal institution?

     3.     Have you, any member of your family or any of your close friends ever been employed by the United States Department of Justice?

     4.     Have you, any member of your family or any of your close friends ever been a witness for the prosecution or the defense in a criminal case?

     5.     Does any one in the jury speak, write or understand Spanish? Please respond even if you do not believe you are fluent (proficient) in the language.

     6.     Has any one on the jury ever studied the Spanish language?

     7.     Is any member of the panel bilingual in Spanish and English?

     8.     Are you employed in any field where you speak or write Spanish in order to perform any of your duties and responsibilities?

     9.     Are you employed in any field where you have any significant interaction with individuals who speak Spanish as the primary language?

     10.     Was any member of the panel born in, or did you grow up in, or spend any significant period of time in, a country where Spanish is the primary language?

     11.     Has any member of the panel ever traveled to El Salvador?

12.     Do you have any relevant life experience that I haven't asked you about in the preceding questions regarding the Spanish language that might be relevant to your service as a juror in this case?

13.     The defendants and several of the witnesses in this case speak Spanish.  Also, some of the evidence will include recordings of telephone calls and meetings conducted in Spanish. As a result, we will use interpreters and/or translations of the recorded conversations.  As a juror, the Court will instruct you that you must accept the interpreter's translation as true and correct. Do you believe you would have a difficult time accepting the translation of an interpreter if the translation was different than you understood the Spanish words to mean?

13a.     An interpreter is employed to assure the most thorough understanding by the witnesses as well as the jury, of the words spoken in the trial. The defendant and some, if not most, of the witnesses using an interpreter have some understanding of English and may register comprehension of a question before it is translated. This should not be taken to suggest any desire to mislead the jury by the use of an interpreter.  Does any member of the panel believe that he or she would not accept this proposition?

14.     Does any member of the panel have strong feelings about the government's use of court-approved electronic surveillance such as court-approved telephone "wiretaps" to record the conversations of people alleged to be involved in illegal activities?

15.     Has any member of the jury panel ever learned that he or she, or any close family member or friend, has been the subject of covert recording by the government or any third party? If you answered yes to either question, please advise on whether your experience or opinion would prevent you from rendering a fair and impartial verdict in this case?

6

16.    During the course of the trial, you will hear testimony from witnesses who allegedly participated in some of the crimes charged in this indictment and who are testifying in accordance with written plea agreements with the government.  Such witnesses are often referred to as "cooperating witnesses."  Their agreements generally provide that they will plead guilty to crimes they have committed and, in exchange, the government will bring the nature and extent of their assistance to the attention of the judge at the time they are sentenced.  Is there anyone who would find it difficult to credit or believe the testimony of a cooperating witness solely because that person is testifying pursuant to a cooperation agreement?  Is there any other reason you feel you cannot fairly judge the testimony of a cooperating witness?

17.    Without mentioning names, do you know anyone who has acted as a cooperating witness or informant for any state or federal prosecutor's office or any police agency? Is there anything about that relationship that would affect your ability to be fair and impartial in this case.

18.    Do you know anyone who has belonged to a gang or been a target of or victim of gang violence?

19.    This case involves allegations against alleged members of a gang known as Mara Salvatrucha or MS-13.  Some of the witnesses will be members of this gang.  Do any of you have such strong feelings about MS-13 or gangs in general that would prevent you from keeping an open mind and being fair to both sides?

20.    Some of the people in this case, including witnesses for both the government and the defense have tattoos or body art to a varying degree.  Would the presence of one or more tattoos on a person prevent you from trusting the testimony of the individual or cause you to believe him or her to be more or less likely to commit a crime or be part of a criminal organization?

7

21.     Some of the witnesses in this case have received benefits from ICE that allows them to stay in the country legally and to work.  Do any of you have such strong feelings about immigrants who have initially entered this country without permission that it would interfere with your ability to fairly and impartially evaluate their testimony?

22.     Has any member of the panel studied or read about gangs or gang behavior?

23.     Have you read or heard any publicity or news report concerning gangs or gang violence, or reports of any law enforcement policies affecting gangs that would affect your ability to be fair and impartial in this case?

24.     Do you have any opinions concerning the immigration laws and policies of the United States, or the enforcement of those laws and policies, particularly regarding legal or illegal immigrants from Hispanic countries such as El Salvador, that would prevent you from rendering a fair and impartial verdict in this case?

25.     Would anyone have difficulty sitting in judgment of another person accused of a crime because of religious, moral, political or philosophical reasons?

26.     Would any of you be inclined to believe or not believe any witness simply because of that witness' appearance, ethnic or national origin, nature of employment, race, or religion?

27.     Television shows such as CSI or Law & Order are fictional, and any knowledge of investigative techniques from those television shows or other media cannot be utilized to make a decision in the instant matter. Would any of you not be able to set aside any information you might think you learned from those sources?

28.     It is estimated that the trial of this case will take approximately four to six weeks to complete, during which the court will be in session approximately six hours per day. We are conducting jury selection this week, and the trial will begin next Monday, June 17th, and is

expected to be completed by July 26, 2013. You were given an opportunity in a written questionnaire to tell us of any circumstances that would make jury service a particular hardship for you. Please let us know if anything has changed in the information you already provided and are there any personal, family or other considerations which would make it difficult for you to serve as a juror in this case?

29.    Are you presently taking any medication which might make you unable to give your full attention to the evidence presented?

**(The government has no objection to this series of questions concerning juror's physical health, but suggests these be added to the Bench Questions)**

30.    Do you suffer from any physical condition which would prevent you from sitting as a juror for a long period of time, or which would make it uncomfortable or painful for you to do so?

31.    Do you have any impairment of your vision or hearing which may make it difficult for you to see and hear the witnesses during the trial?

32.    Do you have any reservations concerning the administration of criminal justice in the courts that would prevent you from rendering a fair and impartial verdict in this case?

**Defendants Machado-Erazo and Martinez-Amaya request the following voir dire; the government's objections are noted.**

1.        Have you, any member of your family or any of your close friends ever been involved in

          any

legal dispute with the Federal, State or Local Government or any agency thereof, including the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms and Explosives, Immigration and Customs Enforcement, the Metropolitan Police Department? What was the nature of the dispute? Would this affect your ability to render a fair and impartial decision in this case?

9

**(The government objects to this question, as it is fairly covered by the Court's standard voir dire question Bench Questions B)**

2.      Do you have an opinion, favorable or unfavorable, concerning the veracity or credibility of

police officers who are members of the ATF, FBI, Immigration and Customs Enforcement (ICE), the Montgomery County Police Department, Prince George's County Police Department, The Metropolitan Police Department, the Virginia State Police, the Fairfax County Police, or any other police department or law enforcement agency?

**(The government objects to this question, as it is fairly covered by the Court's standard voir dire question Bench Question A)**

3.      The government is permitted to call witnesses to testify who have entered into agreements

with the government in the hope of receiving a lesser sentence as a result of their cooperation with the government. Does any member of the jury panel believe that such agreements are unlawful or improper?

**(The government does not object to this question if the Court advises the jury that such cooperation agreements are legal and proper)**

4.      Some of the evidence presented during the trial may come from searches for evidence

performed by law enforcement officers, some pursuant to search warrants. Do you have any experiences or opinions concerning searches by law enforcement personnel that would affect your ability to render a fair and impartial verdict in this case?

**(The government objects to this question unless the Court also advises the jury that the Court has or will determine the legality of all searches conducted. In no instance will evidence be presented to the jury unless it was legally obtained).**

5.     The government covertly or secretly recorded several conversations during the course of the

investigation and is permitted to play those recordings in court.  Does any member of the jury panel believe that this technique should be unlawful or that it is improper?

**(The government objects to this question as it is fairly covered by government's proposed question #5, and in a less inflammatory manner)**

6.     Do any of you, or any of your family members or close friends, belong to any group that advocates a change in our criminal justice system or our criminal sentencing guidelines including any group which advocates a position on immigration issues, handgun control, or other criminal justice issues?

**(The government objects to this question, as it is fairly covered by the Court's standard voir dire question #18)**

7.     This case will involve the introduction into evidence of Spanish documents and recordings.

The documents and recordings have been translated into English by court certified interpreters. In addition, many witnesses will testify in Spanish and a court certified interpreter will provide simultaneous translation.

**(The government objects to this series of questions as the pertinent information and question is covered by government's requested voir dire #3, and is not objected to by the defense)**

8.     Although a witness may testify in Spanish, you must only consider the English interpretation of

the witness' testimony. Would you have any problem accepting the English translation as the witness' testimony?

**(The government objects to this question, as it is fairly covered by government's proposed voir dire #3)**

9.      Have you read or heard any publicity or news reports about MS-13 otherwise known as Mara Salvatrucha?

**(The government objects to this question, as it is fairly covered by the Court's standard voir dire question #13)**

10.      Have you, any member of your family or any close friends ever had any connection with a gang, to include MS-13, either as a member, associate, victim or witness of conduct by gang members?

**(The government objects to this question as it is fairly covered by government's proposed voir dire #6)**

11.      The defendant will be enjoying the services of an interpreter because he is of Hispanic extraction and Spanish is his native language. Does anyone have any negative or unfavorable impression or belief or any concern whatsoever about people born in Central America?

[Jurors responding in the affirmative, should be asked to expound. Those that deny or minimize their concern or belief should be asked if they believe:]

1.      People born in Central America and in the United States are likely here illegally?

2.      People born in Central America deserve a lesser standard of justice or greater scrutiny because they are probably not really supposed to be here in the first place?

3.      People born in Central America are less trustworthy?

12

4.      People born in Central America are more inclined to drink to excess, take drugs, or generally behave irresponsibly?

5.      People born in Central America are more inclined to be violent?

6.      People born in Central America deserve harsher punishment if they commit a crime because they are already accustomed to being uncomfortable or deprived.

e.) Do any of you have strong opinions on immigration or believe that our immigration laws or the manner of their enforcement need to be changed?

**(The government objects to this series of questions: The follow-up questions improperly and unfairly suggest attributes of persons who may be called as witnesses.  If the Court asks question #40, to which the government does not object, the government submits the juror be permitted to express his belief or concern in his own words rather than the Court suggesting "stereotypical" attitudes)**

## C.  LIST OF PROPOSED JURY INSTRUCTIONS

Unless other wise indicated, these instructions are taken in their entirety from the Criminal Jury Instructions for the District of Columbia, the "Red Book."  Those proposed instructions or portions of instructions which are modified are listed in italics below and the modifications in the attachment are designated by italics for additions or strikeovers for deletions.[2]

### Proposed Jury Instructions

1.  *1.102--Preliminary Instruction Before Trial* ---- 17[3]

2.   1.05--Cautionary Instruction Prior to First Recess ---- 35

3. 1.108--A Juror's Recognition of a Witness or Other Party Connected to the Case ---- 37

4.   2.101--Function of the Court ---- 38

5. 2.102--Function of the Jury ---- 39

6. 2.103--Jury's Recollection Controls ---- 40

7. 2.104--Evidence in the Case ---- 41
        [Definitions of terms from Instruction 1.04 are included]

8. 1.104--Question Not Evidence ---- 43

9. 2.105--Statements of Counsel ---- 44

10. 2.106--Indictment Not Evidence ---- 45

---

[2]   This is not true where the modification involves the selection or omission of a bracketed portion of the Redbook instruction

[3]   This proposed instruction includes several other instructions which the Redbook suggests should be given at the beginning of a trial and which are repeated in the final instructions we are proposing, including Instructions 3.10 and 3.11, Wire Taps or Wire Interceptions and Consensual Tape Recording, respectively.

11. 2.112--Inadmissible and Stricken Evidence ---- 46

12. 2.215--Expert Testimony ---- 47

13. 2.107--Burden of Proof--Presumption of Innocence ---- 49

14. 2.108--Reasonable Doubt ---- 50

15. 2.109--Direct and Circumstantial Evidence ---- 51

16. 2.200--*Credibility of Witnesses* ---- 52

17. 2.216—Evaluation of Prior Inconsistent Statement----55

18. 9.210    – Identification ------- 56

19. 2.111--Number of Witnesses ---- 58

20. 2.110--Nature of Charges Not to be Considered ---- 60

21. 2.207--*Police Officer's Testimony* ---- 61

22. 2.208--Failure of Defendant to Testify (if applicable) ---- 62

23. 2.209--Defendant as a Witness (if applicable) ---- 63

24. 3.10--*Wire Taps and Wire Intercepts* ---- 64

25. 3.11- -*Consensual Tape recordings*  - - - - 65

26. 2.310–*Transcripts of Tape Recordings* ----66

27. 3.200- - *Vicarious Guilt* ---- 68

28.     - - RICO Conspiracy - - - 70

29.     - - VICAR Murder - - - 84

30. 4.201 -- Murder While Armed (D.C.)---- 91

31.     -- Murder  (Md.)---- 95

32.     --- Possession Of A Firearm During Or In Furtherance
        Of The Commission Of A Crime Violence ----  97

15

33.  3.101--Proof of State of Mind ---- 102

34.  3.103–On or About, Proof of ---- 103

35.  –Disregarding Unproven Allegations----104

36.  2.402--Multiple Counts - One Defendant ---- 105

37.  2.502--Election of a Foreperson ----106

38.  2.405--Unanimity ---- 107

39.  2.505--Possible Punishment Not Relevant ---- 109

40. 2.600--Communications Between Court and Jury During
Deliberations ---- 110

41.  2.100--Furnishing Jury with Copy of the Instructions -111

42.  2.511-- Alternate Jurors  ----112

## D.  TEXT OF PROPOSED JURY INSTRUCTIONS

In accordance with the Court's Order, the first instruction will begin on the next page, and each subsequent instruction will begin on a new page.

**Instruction 1.102**

**PRELIMINARY INSTRUCTION BEFORE TRIAL**

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions which I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. It is my practice to allow jurors to take notes during the trial if they want to, and to have their notes with them during the jury's deliberations. I want to emphasize that none of you are required to take notes. Indeed, you should not do so if you think that notetaking will distract your attention from the evidence or the testimony of the witnesses. On the other hand, if you think that taking notes might help you remember the testimony of the witnesses and the other evidence in the case, or might make you pay more attention during the trial, you are free to take notes. You should remember that your notes are only an aid to help your memory. They should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Whenever there is a recess in the trial, you should leave your notebooks and pencils on your seats. They will be collected by the clerk and given to me to keep. No one, including myself, will ever look at any of your notes. At the end of the trial, when you come back to the courtroom to deliver your verdict, your notes will be destroyed. Again, neither I nor anyone else will look at any notes you have taken.

17

You have probably noticed that there are sixteen (16) of you sitting in the jury box. Only twelve (12) of you will retire to deliberate in this matter. In some courtrooms, jurors in seats 13, 14, 15, and 16 are automatically the alternates, but that is not how it works in this courtroom. Instead, we randomly select the alternates' seats at the beginning of each trial from among all the jury seats so that any four seats – 1, 4, 7 and 8; 6, 9, 10 and 5; 2, 3, 11 and 13; or any other combination -- might turn out to be the seats of the alternates.

I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. Therefore, it is important that all of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention.

At the beginning of the jury selection process, you were introduced to some witnesses in person. Others were identified to you only by name. If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately. You should not tell any other member of the jury about your discovery. If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case. This is a criminal case which began when the grand jury returned an Indictment. An Assistant United States Attorney and a trial attorney from the Department of Justice will present the evidence in support of the charges in the Indictment.

18

The defendants in this matter, Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, have been charged in an Indictment with one count of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).  Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, are also charged with Murder in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(1).  Yester Ayala is additionally charged with First Degree Murder While Armed (Premeditated), in violation of 22 D.C. Code, Sections 2101, 4502.  Noe Machado-Erazo and Jose Martinez-Amaya are also charged in the Indictment with Possession of a Firearm During and in Relation to a Crime of Violence, in violation of Title 18 United States Code, Sections 924(c)(1)(A). It might be helpful at this point to explain to you that RICO is an acronym that lawyers and the courts use to refer to charges concerning a Racketeer Influenced Corrupt Organization.  At the close of this trial, in my final instructions to you before you deliberate I will more fully explain the details of such charges but let me remind you again, at this point these are just charges.  Count One of that Indictment, charging Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, with  Possession of a Firearm During and in Relation to a Crime of Violence, and designates the corruption organization or enterprise as:

MS-13, including its leadership, members and associates, in the District of Columbia, Maryland,  El Salvador, and elsewhere, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4) [hereinafter "the enterprise"] that is, a group of individuals associated in fact.  The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

19

Count One of the Indictment, charging Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala also charges that:

Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, Noe Machado-Erazo, also known as Gallo; Jose Martinez, also known as Crimen; Yester Ayala, also known as Freeway, also known as Daddy Yankee, together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under provisions of District of Columbia and Maryland law.

Manner and Means of the Conspiracy

It was part of the manner and means of the conspiracy that the defendants, as gang members of MS-13, were required to have and did have regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the

20

identities of gang members and gang associates suspected of cooperating with law enforcement and the proposed actions to be taken against such members and associates; plans and agreements regarding the commission of future crimes, including murder, extortion, narcotics distribution, robbery, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate a collection of firearms for use in criminal activity by MS-13 members.

It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including murder, attempted murder, and assault, would be committed by members and associates of MS-13 against rival gang members and others when it suited the enterprise's purposes.  MS-13 members also used violence to impose discipline within the gang.

It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to distribute narcotics, to use the telephone to facilitate narcotics distribution, to commit robbery, extortion, and other crimes, and to conceal their criminal activities by obstructing justice, threatening or intimidating witnesses, and other means.

Count Four of the Indictment charges Yester Ayala, with Murder in Aid of Racketeering and reads;

> On or about November 6, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Louis Alberto Membreno-Zelaya, in violation of D.C. Code, Sections 22-2101 and 4502 .

Count Five of the Indictment, is what lawyers sometimes refer to as a companion count and it charges Henry Diaz-Antunuez and Yester Ayala, with First Degree Murder While Armed (Premeditated), in violation of provisions of the District of Columbia Code, and it reads;

> Henry Diaz-Antunuez, also known as Stewie, also known as Stuvi, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Louis Alberto Membreno-Zelaya by stabbing him with a knife or other sharp object on or about November 6, 2008, thereby causing injuries from which died on or about November 6, 2008.

22

Counts Six and Seven are similar to Counts Four and Five in that they too are companion counts. Count Six of the Indictment charges Yester Ayala, with Murder in Aid of Racketeering and reads;

On or about December 12, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, unlawfully and knowingly, did murder Giovanni Sanchez in violation of D.C. Code, Sections 22-2101 and 4502.

Count Seven of the Indictment charges Yester Ayala, with First Degree Murder While Armed (Premeditated), in violation of provisions of the District of Columbia Code, and it reads;

Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is, a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Giovanni Sanchez by stabbing him with a knife or other sharp object on or about December 12, 2008, thereby causing injuries from which Giovanni Sanchez died on or about December 12, 2008.

23

Because the homicide charged in Count Eight occurred in Maryland there is no companion count to that charge. Count Eight of the Indictment charges Noe Machado-Erazo and Jose Martinez-Amaya with Murder in Aid of Racketeering and reads:

> On or about March 28, 2010, in the District of Maryland, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, Noe Machado-Erazo, also known as Gallo and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Felipe Enriquez, in violation of Maryland Code Criminal Law, Sections 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland.

Count Nine of the Indictment charges Noe Machado-Erazo and Jose Martinez-Amaya with Possession of a Firearm During and in Relation to a Crime of Violence and reads:

> On or about March 28, 2010, in the District of Columbia, the defendants, Noe Machado-Erazo, also known as Gallo; and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering and did discharge a firearm in furtherance of the offense charged in Count Eight of this Indictment.

You should understand clearly that the Indictment that I just read is not evidence. The Indictment is just a formal way of charging a person with a crime in order to bring him to trial. You must not think of the Indictment as any evidence of the guilt of the defendants, or draw any conclusion about the guilt of the defendants just because they have been indicted.

At the end of the trial, you will have to decide whether or not the evidence presented has convinced you beyond a reasonable doubt that the defendants committed the offenses with which they have been charged. To help you understand the evidence you will hear I will now give you some of the legal principles you will be applying to that evidence during your deliberations. At the close of the evidence I will give you your final instructions which will be more complete and more detailed.

Three of the defendants have been charged with RICO Conspiracy. In order to satisfy its burden of proof as to Count One, the government must prove the following four elements beyond a reasonable doubt:

FIRST:    That an enterprise existed as charged in the Indictment;

SECOND:    That the enterprise affected interstate or foreign commerce;

THIRD:    That the defendant was associated with or employed by the enterprise; and

FOURTH:    That the defendant knowingly and willfully became a member of the conspiracy. The conspiracy charged in the indictment is to participate in the conduct of the affairs of the enterprise, and that the

25

enterprise engaged in a pattern of racketeering activity.

An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit. This group of people does not have to be a legally cognizable entity, such as a partnership or a corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. In order to prove a conspiratorial agreement, the government must establish that at least two or more persons entered the unlawful agreement charged in the Indictment, that is an agreement to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity; and that the defendant knowingly and willfully became a member of the conspiracy. The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit individual criminal acts. The government must prove that the defendant participated in some manner, however slight, in the overall objective of the conspiracy, and that the conspiracy itself involved, or would have involved, the commission of two racketeering acts. The phrase "Pattern of Racketeering Activity" requires at least two acts of racketeering activity that are related to the enterprise and to each other and that pose a threat of continued criminal activity. It is not sufficient for the government to prove only that two of the racketeering acts were committed or intended to be committed. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

26

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events. To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that the acts are part of a long-term association that exists for criminal purposes.

In the Counts Four, Six, and Eight one or more of the defendants is charged with Murder in Aid of Racketeering, sometimes referred to as VICAR Murder, another of those lawyer's acronyms. The elements of the offense of Murder in Aid of Racketeering, each of which the government must prove beyond a reasonable doubt, are:

FIRST:       That an enterprise affecting interstate or foreign commerce existed;

SECOND:   That the enterprise was engaged in racketeering activity;

THIRD:      That the defendant had a position in the enterprise;

FOURTH:   That the defendant committed or aided and abetted in the commission of the alleged murder; and

FIFTH:       That the defendant's general purpose in committing the murder was to maintain or increase his position in the enterprise.

The last element of that offense requires that the government must establish that the defendant's general purpose in committing or aiding and abetting the commission of the charged crime of violence was to maintain or increase his position in the enterprise. The government is required to prove that the defendant's general purpose was to maintain or increase his position in

27

the enterprise.  The government is not required to prove that it was the defendant's sole or principal motive. In determining whether a defendant's purpose in committing the crime of violence was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings.

Count Five of the Indictment charges Yester Ayala,with First Degree Murder While Armed (Premeditated) under the District of Columbia Code of Louis Alberto Membreno-Zelaya and Count Seven charges Yester Ayala, with First Degree Murder While Armed (Premeditated) under  the District of Columbia Code of Giovanni Sanchez.  The elements of First Degree Murder While Armed (Premeditated) which the government must prove beyond a reasonable doubt are:

FIRST        The defendant caused the death of the decedent;

SECOND        The defendant intended to kill the decedent;

THIRD        The defendant did so after premeditation; and

FOURTH        The defendant did so after deliberation.

Premeditation means forming an intent to kill. To premeditate is to give thought, before acting, to taking a human life, and then to reach a definite decision to kill. Deliberation means considering and reflecting on the intent to kill, turning it over in the mind, giving it second thought.  Premeditation--the formation of an intent to kill--may be instantaneous, as quick as thought itself. Deliberation, however, requires some time to have elapsed between formation of this intent and the fatal act, within which one pauses and actually gives second thought and consideration to the intended act. The law does not require that deliberation take any particular amount of time. It can be days, hours or minutes, or it can be as brief as a few seconds. It varies according to the circumstances of

28

each case. It is the fact of deliberation that the government must prove, not the length of time it may have gone on.

Finally, in Count Nine of the Indictment the defendants Noe Machado-Erazo and Jose Martinez-Amaya are charged with using, carrying, and discharging a firearm during and in relation to a crime of violence, the VICAR murder in Count Eight of this Indictment.  The elements of that offense, each of which the government must prove beyond a reasonable doubt, are:

As I explain how the trial will proceed, I will refer to the "government" and to the "defendants" *or the "defense."*  When I mention the "government," I am referring to the two attorneys who are presenting the evidence in support of the charges contained in the Indictment. In this case, it is Assistant United States Attorney Nihar Mohanty and Laura Gwinn, a Trial Attorney with the United States Department of Justice.  When I mention the defendant or the defense, I am referring either to Mr. Machado-Erazo, Mr. Martinez-Amaya, and Mr.  Ayala, or to their attorneys, Ms. West, Mr. Virgilio, or Mr. Ponds.

As the first step in this trial, the government and the defendant will have an opportunity to make opening statements.  ~~If the government makes an opening statement it must do so at the beginning of its case~~.  *The government must make an opening statement at the beginning of its case.  Each of the defendants then has an option.*  The defendants may make an opening statement immediately after the government's opening statement, or they may wait until the beginning of the defendants' cases.  The defendants do not have to make any opening statement. The opening statements are only intended to help you understand the evidence which will be introduced.  The opening statements are not evidence.

After the opening statement or statements, the government will introduce evidence to

29

prove the charges in the Indictment. After the government presents its evidence, the defendant may present evidence, but he is not required to do so. The law does not require a defendant to prove his innocence or to produce any evidence.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the charged offenses beyond a reasonable doubt, you must find the defendant not guilty.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case. The lawyers' closing arguments, just like their opening statements, are not evidence in this case. They are only intended to help you understand the evidence *and the contentions of the parties*.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your verdicts shall be. Your verdicts must be unanimous; that is, all twelve jurors must agree on the verdicts.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair and efficient manner, to rule on legal questions which come up in the course of the trial, and to instruct you about the law which

applies to this case.  It is your sworn duty as jurors to accept and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case.  You -- and only you -- are the judges of the facts.  You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses.  You must consider and weigh the testimony of all witnesses who appear before you.  You alone must decide whether to believe any witness, and to what extent to believe any witness.

And remember, you must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations.  You will have to rely entirely on your memory and your notes if you choose to take any.

During this trial, I may rule on motions and objections by the lawyers, comment to lawyers, question the witnesses, and instruct you on the law.  You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts.  If you think that somehow I have expressed or even hinted at any opinion as to the facts in this case, you should disregard it.  The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case.  That evidence includes the sworn testimony of witnesses and exhibits.  If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

31

The lawyers in the case may object when the other side asks a question, makes an argument, or offers evidence which that lawyer believes is not properly admissible.  You must not be prejudiced against the lawyer who makes the objection or the party he represents.  Indeed, it is the lawyer's responsibility to object to evidence which he or she believes is not properly admissible.

If I sustain an objection to a question asked by a lawyer, you should forget about the question because the question is not evidence.  You must not guess or speculate what the answer to the question would have been.  If a question is asked and answered, and I then rule that the answer should be stricken from the record, you must forget about both the question and the answer that was stricken.  You should follow this same rule if any of the exhibits is stricken.

During the course of this trial, you may hear certain tape recorded conversations which were obtained through the use of wire interceptions, commonly referred to as "wire taps." The term "intercept" means to obtain the contents of any wire or oral communication by using an intercepting device. The wire interceptions, or wiretaps, in this case were court-ordered, that is, they were approved by a judge, and the government's use of these interceptions was lawful.

During the course of this trial, you may also hear the phrase "consensual tape recording." This term should not be confused with the phrase "wire interception" or "wiretap." A wire interception or wiretap is a court-ordered interception of communications which does not require the consent of the parties to the conversation. A consensual tape recording, on the other hand, is a recording where one party to the conversation consents to the conversation being tape recorded. It is lawful to conduct consensual tape recordings, and the other party or parties to the conversation do not have to consent to the taping. Consensual tape recorded conversations may occur over the telephone or face to face.

You must not be influenced by the nature of the charges in arriving at your verdict.  Your responsibility is to decide this case solely on the evidence presented in the courtroom.  As a result, you must not conduct any independent investigation of your own of the case -- like going to visit the scene.

In addition, you should disregard any statements made about the case by anyone outside the courtroom.  You must not talk about the case with the lawyers, the defendant, witnesses, or anyone else connected with the case.  If you see someone involved in this case, other than a fellow juror, outside the courtroom, you should not speak with that person about anything.  If, at any time during the trial, anyone tries to discuss the case with you or if you hear anyone talking about the case, you should refuse to participate in or listen to the discussion.  If you speak with someone involved in the case outside the courtroom while the trial is still going on, we may have to stop the trial, pick a new jury and start all over again.  You must also completely disregard any press coverage, including newspaper, television or radio reports which you may read, see or hear. If you are exposed to any news reports inadvertently, you should immediately disregard them and direct your attention elsewhere.

If you have heard any statements about the case, if anyone has tried to discuss the case with you or if you have been exposed to press coverage about the case, you must tell me about it immediately by informing the marshal or the courtroom clerk.  You should not tell any of your fellow jurors or anyone else.  *It is very important that you do not discuss it with your fellow jurors or with anyone else until I have spoken to you.*  You should tell only me, the marshal, or the *Deputy* Clerk, *Ms. White*.

You must not discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions.  Until the case is submitted to you, you must not talk

about it with your fellow jurors.  You must not talk about the case to your friends or relatives, or even your spouse or partner, until it is over and you have completed your deliberations.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors.  It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

**Instruction 1.05**

**CAUTIONARY INSTRUCTION
PRIOR TO FIRST RECESS**

We are about to take our first break during the trial and it is important that you follow certain instructions whenever the court is in recess.

First, until I submit this case to you at the end of my final instructions, you must not discuss it with anyone -- not with the parties, witnesses, attorneys or anyone else connected with the case. You must not even discuss it with your fellow jurors, friends or family members. To be fair to both the government and the defendant, you should keep an open mind throughout the trial. You should reach your conclusion only during the final deliberations after all the evidence is in and you have heard the attorneys' closing arguments and my instructions to you on the law.

Second, do not permit any other person to discuss the case in your presence. This applies to anyone, including members of your family, friends or relatives, courtroom spectators, witnesses, reporters and parties to this case. If anyone attempts to discuss the case with you, tell them not to talk to you. If anyone attempts to discuss the case with you or you overhear any discussion of the case, you must report that fact to me as soon as you can. However, you should not discuss with any of your fellow jurors the fact that someone tried to discuss the case with you or that you overheard a discussion, nor should you discuss with them any other fact that you feel necessary to bring to the court's attention. If you need to advise me of such matters, please do so through the marshal or clerk.

Finally, although it is a natural human tendency to talk with people with whom you may be thrown into contact, you must not talk to any of the parties or their attorneys or any witness in this case during the time you serve on this jury. If you encounter anyone connected with the case

35

outside the courtroom, you should avoid having a conversation with them, overhearing their conversation or having any contact with them at all.  For example, if you inadvertently find yourself in a courthouse corridor, elevator, the cafeteria or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions.  If you do overhear a discussion about the case, you should report that to me as soon as you can.  Finally, if you see an attorney or witness involved in the case and they turn and walk away from you, they are not being rude.  They are merely trying to avoid any contact with you as I have instructed them.

**Instruction 1.108**

**A JUROR'S RECOGNITION OF A WITNESS**
**OR OTHER PARTY CONNECTED TO THE CASE**

At the beginning of the jury selection process, you were introduced to some witnesses in person.  Others were identified to you only by name.  If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone referred to in the testimony or evidence, or anyone else connected with this case in any way, you should tell the court immediately.  You should not tell any other member of the jury about your discovery. If you realize you are acquainted with someone connected with this case while a witness is testifying, you should raise your hand immediately and ask to speak privately to the marshal or with me at the bench.

**Instruction 2.101**

**FUNCTION OF THE COURT**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law which applies in this case.

It is your duty to accept the law as I state it to you.  You should consider all the instructions as a whole.  You may not ignore any instruction, or question the wisdom of any rule of law.

**Instruction 2.102**

**FUNCTION OF THE JURY**

Your function, as the jury, is to determine what the facts are in this case.  You are the sole judges of the facts.  You alone decide what weight to give to the evidence presented during the trial.  You decide the value of the evidence and the believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy or favoritism.  You should not be improperly influenced by anyone's race, ethnic origin or gender.  Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case.  For instance, if I have asked questions of a witness it was only intended for clarification or to expedite matters.  You should draw no inference from the fact that I asked a question or questions of a particular witness, nor from the content of the question. If you believe that I have expressed or indicated any opinion as to the facts, you should ignore it.  It is your sole and exclusive duty to decide the verdict in this case.

**Instruction 2.103**

**JURY'S RECOLLECTION CONTROLS**

If any reference by the court or the attorneys to evidence does not coincide with your own recollection of the evidence, it is your recollection which should control during your deliberations.

**Instruction 2.104**

**EVIDENCE IN THE CASE --**
**JUDICIAL NOTICE, STIPULATIONS, DEPOSITIONS**

During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case was the sworn testimony of the witnesses, the exhibits which were admitted into evidence, and the facts and testimony stipulated to by the parties.

During the trial, you were told that the parties had stipulated -- that is, agreed to -- certain facts.  Any stipulation of fact is undisputed evidence, and you may consider it undisputed evidence.

When you consider the evidence, you are permitted to draw, from the facts which you find have been proven, such reasonable inferences as you feel are justified in the light of your experience.

**Instruction 1.104**

**DEFINITIONS**

A.    <u>STIPULATION OF FACT</u>

The government and the defendant may stipulate -- that is, agree -- to certain facts.  Any stipulation of fact is undisputed evidence, and you may consider it proven.

B.    <u>STIPULATION OF TESTIMONY</u>

The government and the defendant may stipulate -- that is, agree -- to what testimony a particular witness would have given if he or she had testified in this case.  You may consider stipulated testimony as exactly what this witness would have said had he or she testified.

C.    <u>JUDICIAL NOTICE</u>

The court may take judicial notice of public acts, places, facts and events which are matters of common knowledge or which are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  When the court takes judicial notice of a particular fact, you may regard that fact as proven evidence.  However, you are not required to accept as conclusive any fact judicially noted because you are the sole judges of the facts.

**Instruction 1.104**

**QUESTION NOT EVIDENCE**

Sometimes a lawyer's question suggests that something is a fact.   Whether or not something is a fact depends on the witness's answer -- not the lawyer's question.   A lawyer's question is not evidence.

**Instruction 2.105**


**STATEMENTS OF COUNSEL**


The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence.

**Instruction 2.106**

**INDICTMENT OR INFORMATION NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime to bring him to trial.  You must not consider the indictment as evidence of any kind -- you may not consider it as any evidence of the defendant's guilt or draw any inference of guilt from it.

**Instruction 2.112**

**INADMISSIBLE AND STRICKEN EVIDENCE**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence which the objecting lawyer believed was not proper. You must not be prejudiced against the lawyer who made the objections. It is the lawyers' responsibility to object to evidence which they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should disregard the question and you must not speculate as to what the answer would have been.

If, after a witness answered a lawyer's question, I ruled that the answer should be stricken, you should disregard both the question and the answer in your deliberations.

Likewise, exhibits, as to which I have sustained an objection, or which I ordered stricken, are not evidence and you must not consider them in your deliberations.

**Instruction 2.215**

**EXPERT TESTIMONY**

Ordinarily, the rules of evidence do not permit witnesses to testify as to opinions or conclusions.  But there is an exception to this rule for expert witnesses.  Experts are allowed to give opinions or conclusions because they have become expert in some art, science, profession or calling.  They may give their opinions or conclusions, and reasons for their opinions.

In this case, the court has permitted several experts to testify on behalf of the government.

      a.  Juan Diaz testified as an expert witness on MS-13 in El Salvador.

      b.  Sgt. George Norris testified as an expert witness on MS-13 in the United States.

      c.  Dr. Wayne Williams performed the autopsy of Louis Membrano-Zelaya and testified to the cause and manner of death.

      d.  Dr. Zabiullah Ali performed the autopsy of Luis Chavez-Ponce and testified to the cause and manner of death.

      e.  Dr. Laron Locke performed the autopsy of Felipe Enriquez and will testified to the cause and manner of death.

      f.  Dr. Carolyn Revercomb performed the autopsy of Giovanny Sanchez and will testified to the cause and manner of death.

      g.  Jennifer Zeffer testified as a DNA expert concerning the blood on the jacket of Hector Diaz-Flores and the Giovanni Sanchez murder.

h.  Mark Williford was the Montgomery County firearms examiner who testified concerning the casings and bullets recovered in the Felipe Enriquez homicide.

i.  Julian Mason was the Virginia firearms examiner who testified concerning the bullets fired in the Reston shooting and the Riverdale murder.

j.  FBI Special Agent David Magnuson testified concerning cellular technology and the analysis of historical cellular telephone and cell site records.

You are not bound by an expert's opinion.  If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion.  In other words, give the opinion the weight you think it deserves after you consider it along with all the other evidence.

**Instruction 2.107**

**BURDEN OF PROOF -- PRESUMPTION OF INNOCENCE**

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt.

The burden is on the government to prove the defendant guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, it is your duty to find him/her guilty. On the other hand, if you find the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty.

**Instruction 2.108**

**REASONABLE DOUBT**

Reasonable doubt, as the name implies, is a doubt based on reason, a doubt for which you can give a reason.  It is such a doubt as would cause a juror, after careful and candid and impartial consideration of all the evidence, to be so undecided that he or she cannot say that he or she has an abiding conviction of the defendant's guilt.  It is such a doubt as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life.  However, it is not a fanciful doubt, nor a whimsical doubt, nor a doubt based on conjecture.  It is a doubt which is based on reason.  The government is not required to establish guilt beyond all doubt, or to a mathematical certainty or a scientific certainty.  Its burden is to establish guilt beyond a reasonable doubt.

**Instruction 2.109**

**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence from which you may find the truth as to the facts of a case -- direct evidence and circumstantial evidence. When a witness asserts actual knowledge of a fact, such as an eyewitness, that witness's testimony is direct evidence. A chain of facts and circumstances indicating the guilt or innocence of a defendant is circumstantial evidence. The law makes no distinction between the weight you should give to either kind of evidence, nor does circumstantial evidence require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should weigh all of the evidence presented, both direct and circumstantial.

**Instruction 2.200**

**CREDIBILITY OF WITNESSES**

In determining whether the government has established the charges against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have appeared before you.

You are the sole judge of the credibility of the witnesses.  In other words, you alone are to determine whether to believe any witness and the extent to which any witness should be believed.

In reaching a conclusion as to the credibility of any witness, you may consider any matter that may have a bearing on the subject.  You may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent misrecollection, like a failure of recollection, is not an uncommon experience.  In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from

innocent error or intentional falsehood.

You have heard from witnesses who testified that they were actually involved in criminal conduct charged in the indictment and some who pled guilty to charges arising out of some of the same facts as in this case. You are to draw no conclusions or inferences of any kind about the guilt of the defendant on trial from the fact that any prosecution witness pled guilty to similar charges. The witnesses' decisions to plead guilty were personal decisions about their own guilt. Those decisions may not be used by you in any way as evidence against or unfavorable to the defendant on trial here.

The government is permitted to present this testimony and to enter into agreements with the witnesses to bring the witnesses' cooperation to the attention of the sentencing court and/or to consider seeking a reduction in the sentencing range for that witness. The testimony of a cooperating witness may be enough in itself for conviction, if you, the jury, find that the testimony establishes guilt beyond a reasonable doubt. However, this testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe. You should ask yourselves whether the witness would benefit more by lying, or by telling the truth. Was this testimony made up in any way because the witness believed or hoped that he or she would somehow receive favorable treatment by testifying falsely? Or did he or she believe that his or her interests would be best served by testifying truthfully? If you believe that the witness was motivated by hopes of personal gain, was the motivation one which would cause the witness to lie, or was it one which would cause the witness to tell the truth? Did this motivation color the witness' testimony? In the end, mindful of these special circumstances you should evaluate the testimony of cooperating

53

*witnesses just as you would the testimony of any witness.*  **[The defendants object to this last sentence]**

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of *any* witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or corroborated by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

**INSTRUCTION 2.216**

**EVALUATION OF PRIOR INCONSISTENT STATEMENT OF A WITNESS**

A.    (statement not under oath)

You have heard evidence that a witness made a statement on an earlier occasion and that this statement may be inconsistent with his testimony here at trial.  It is for you to decide whether the witness made such a statement and whether in fact it was inconsistent with the witness's testimony here.  If you find such an inconsistency, you may consider the earlier statement in judging the credibility of the witness but you may not consider it as evidence that what was said in the earlier statement was true.

B.    (statement under oath)

You also heard evidence that a witness made an earlier statement under oath, subject to the penalty of perjury at the grand jury and that this statement may be inconsistent with the his testimony here at trial.  If you find that the earlier statement is inconsistent with the witness's testimony here in court, you may consider this inconsistency in judging the credibility of the witness.  Unlike statement not made under oath, you also may consider this earlier statement as evidence that what was said in the earlier sworn statement was true.

**JURY INSTRUCTION NO. 9.210**

**IDENTIFICATION TESTIMONY**

The burden is on the government to prove beyond a reasonable doubt, not only that an offense was committed as alleged in the indictment, but that the defendant charged with the offense was the person who committed it.  In considering whether the government has proven beyond a reasonable doubt that the defendant is the person who committed the offense, you may consider any one or more of the following:

1.  The witness's opportunity to observe the criminal acts and the person committing them, including the length of the encounter, the distance between the various parties, the lighting conditions at the time, the witness's state of mind at the time of the offense, and other circumstances that you deem relevant affecting the witness's opportunity to observe the person committing the offense;

2.  Any subsequent identification, failure to identify or misidentification by the witness, the state of mind of the witness at the time of any subsequent identification, the length of time that elapsed between the crime and any subsequent identification and any other circumstances that you deem relevant bearing on the reliability of the witness's identification, including whether the witness knew or had seen the person who committed the offense on an earlier occasion and the circumstances of the identification procedure used by the police; and

3.  Any other direct or circumstantial evidence that may identify the person who committed the offense charged or either support or not support the identification by the witness.

56

You must be satisfied beyond a reasonable doubt of the accuracy of the identification of a defendant before you may convict him.   If the circumstances of the identification of the defendant are not convincing beyond a reasonable doubt, you must find the defendant not guilty.

**Instruction 2.111**

**NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You may find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side.

**Defendants object to the Red Book instruction above and request the Court give the following instruction. The government submits the above instruction is a proper statement of the law without being overly verbose.**

**The fact that one party called more witnesses and introduced more evidence than the otherdoes not mean that you should necessarily find the facts in favor of the side offering the most witnesses. By the same token, you do not have to accept the testimony of any witness who has not been contradicted or impeached, if you find the witness not to be credible. You also have to decide which witnesses to believe and which facts are true. To do this you must look at all the evidence, drawing upon your own common sense and personal experience. (After examining all the evidence, you may decide that the party calling the most witnesses has not persuaded you because you do not believe its witnesses, or because you do believe the fewer witnesses called by the other side.)**
**In a moment, I will discuss the criteria for evaluating credibility; for the moment, however, you should keep in mind that the burden of proof is always on the government and the**

defendant is not required to call any witnesses or offer any evidence, since his is presumed to be innocent.

L. Sand, et al., Modern Federal Instructions, No. 2-20

**Instruction 2.110**

**NATURE OF CHARGES NOT TO BE CONSIDERED**

One of the questions you were asked when we were selecting this jury was whether the nature of the charge would affect your ability to render a fair and impartial verdict. There was a reason for that question. You must not allow the nature of the charge itself to affect your verdict. You must consider only the evidence that has been presented in this case in rendering a fair and impartial verdict.

**The defense requests the following language be added. The government objects as there will be no evidence of other crimes, i.e., 404b. Furthermore, the defense has not specified what other crimes they are referring to and for what limited purpose it was admitted.**

**Consider Only the Charges**

**The defendant is not charged with committing any crime other than the offenses contained in the indictment. You have heard evidence of other acts allegedly committed by the defendant. When that evidence was introduced, I instructed you that it was to be considered by you solely for a limited purpose on \*\*\*\*\*. I will explain that limited purpose again in a moment. \*\*\*\***
**L. Sand, et al., Modern Federal Instructions, No. 3-3 (modified)**

60

**Instruction 2.207**

**POLICE OFFICER'S TESTIMONY**

A ~~police officer's~~ law enforcement officer's or agent's testimony should be considered by you just as any other evidence in the case.  In evaluating the ~~law enforcement officer's~~ credibility *of a law enforcement witness* you should use the same guidelines which you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a ~~police~~ *law enforcement agent or* officer.

**The defense requests the following language, to which the government does not object, except for the stricken portion:**

**At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness on the grounds that his testimony may be colored by a personal or professional interest in the outcome of the case.  It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness and to give to that testimony whatever weight, ~~if any,~~ you find it deserves.**

**L. Sand, et al., Modern Federal Instructions, No. 7-16.**

61

**Instruction 2.208**

**FAILURE OF DEFENDANT TO TESTIFY**

Every defendant in a criminal case has an absolute right not to testify.  Under our Constitution, he has no obligation to testify or to present any other evidence because it is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt.  You may not attach any significance to the fact that the defendant did not testify.  You must not draw any inference of guilt against the defendant because he did not testify.

Red Book & L. Sand, et al., Modern Federal Instructions, No. 5-21(modified)

**The Defendants request the following instruction:**

**The defendant did not testify in this case. Under our Constitution, he has no obligation to testify or to present any other evidence because it is the prosecution's burden to prove the defendant guilty beyond a reasonable doubt. That burden remains with the prosecution throughout the entire trial and never shifts to the defendant. The defendant is never required to prove that he is innocent.  You may not attach any significance to the fact that the defendant did not testify.   No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.**

**L. Sand, et al., Modern Federal Instructions, No. 5-21**

**Instruction 2.209**

**DEFENDANT AS WITNESS**

The defendant has a right to become a witness in his own behalf.  Under our Constitution, he is not required to do so. His testimony should not be disbelieved merely because he is the defendant.  In weighing his testimony, however, you may consider the fact that the defendant has a vital interest in the outcome of this trial.  As with the testimony of any other witness, you should give the defendant's testimony such weight as in your judgment it is fairly entitled to receive.

**Instruction 3.10**

**WIRE TAPS OR WIRE INTERCEPTIONS**

During the course of this trial, you ~~may hear~~ *heard* certain tape recorded conversations which were obtained through the use of wire interceptions, commonly referred to as "wire taps." The term "intercept" means to obtain the contents of any wire or oral communication by using an intercepting device. The wire interceptions, or wiretaps, in this case were court-ordered, that is, they were approved by a judge, and the government's use of these interceptions was lawful.

**Instruction 3.11**

**CONSENSUAL TAPE RECORDINGS**

During the course of this trial, you ~~may also hear~~ *heard* the phrase "consensual tape recording." *As I told you at the beginning of the trial* this term should not be confused with the phrase "wire interception" or "wiretap." A wire interception or wiretap is a court-ordered interception of communications which does not require the consent of the parties to the conversation. A consensual tape recording, on the other hand, is a recording where one party to the conversation consents to the conversation being tape recorded. It is lawful to conduct consensual tape recordings, and the other party or parties to the conversation do not have to consent to the taping. Consensual tape recorded conversations may occur over the telephone or face to face.

65

**Instruction 2.310**

**TRANSCRIPTS OF TAPE RECORDINGS**

Tape recordings of *telephone conversations in Spanish* identified by witnesses have been received in evidence.  Ordinarily, where conversations are in English, transcripts of these tape recorded *English* conversations are furnished for the convenience and guidance of the jury

*But the tapes in this case present a different situation.  As you noted, the conversations on these tapes are in Spanish.  Those transcripts which present a translation of words spoken in Spanish are admitted as evidence and you should treat those transcripts as you would any other evidence in this trial, according those portions such weight and credibility as you believe they merit.  Even if you speak or read Spanish, you must accept the translations as presented in the transcripts; you may not substitute your understanding of the meaning of the Spanish for that of the translater.*

With respect to those conversations, you have heard testimony that many of those conversations were intercepted and recorded pursuant to the authorization of a judge of this court.  You are specifically instructed that the interception and recording of telephone conversations pursuant to court authorization and the use of those recordings in a trial such as this one is legal.  You must not concern yourself with the legality or propriety of such interceptions.  **[The defendants object to this paragraph]**

**Defendants request the following instruction:**

**You have heard recorded conversations. These recorded conversations are proper**

**evidence and you may consider them, just as any other evidence.  When the recordings were played during the trial, you were furnished transcripts of the recorded conversations [prepared by government agents].  The recordings are the evidence, and the transcripts were provided to you only as a guide to help you follow as you listen to the recordings. The**

transcripts are not evidence of what was actually said or who said it. It is up to you to decide whether the transcripts correctly reflect what was said and who said it. If you noticed any difference between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. And if after careful listening, you could not hear or understand certain parts of the recordings, you must ignore the transcripts as far as those parts are concerned. [[You mayconsider the actions of a person, facial expressions and lip movements that you can observe on videotapes to help you to determine what was actually said and who said it.]]

[I am providing you with the recordings and a player. You are not required to play the tapes, in part or in whole. You may rely, instead, on your recollections of these recordings as you heard them at trial. If you do decide to listen to [[or watch]] a tape recording and wish to have the transcript corresponding to that recording, ask the Marshal in writing and the transcript will be given to you. You may choose to listen to [[or watch]] the cassette without the transcript.]

Among the exhibits admitted during the trial were recordings that contained conversations in the _____ language. You were also provided with English transcripts of those conversations. The transcripts were provided to you [by the government] so that you could consider the content of the conversations on the recordings.

Whether a transcript is an accurate translation, in whole or in part, is for you to decide. In considering whether a transcript accurately describes the meaning of a conversation, you should consider the testimony presented to you regarding how, and by whom, the transcript was made. You may consider the knowledge, training, and experience of the translator, as well as the nature of the conversation and the reasonableness of the translation in light of all the evidence in the case. You should not rely in any way on any knowledge you may have of the language spoken on the recording; your consideration of the transcripts should be based on the evidence introduced in the trial.

These are from 7th Circuit pattern jury instructions

*The government objects to the proposed instruction in its entirety. The first portion of the instruction is irrelevant to this trial, as no English language recordings will be introduced. It would be confusing to the jury to tell them the recording is the evidence, not the transcript.*

*The government believes there will be a stipulation to the accuracy of the transcripts, therefore the second portion of this instruction will also be confusing. Furthermore, the instruction seems contradictory, on the one hand telling the jury they should decide if it is an accurate translation, and on the other not to rely on knowledge they may have of the language.*

**JURY INSTRUCTION NO. 3.200 (MODIFIED)**

**<u>VICARIOUS GUILT</u>[4]**

<u>Willfully Causing an Act to be Done</u>

A defendant is responsible for an act that he willfully causes to be done if the act would be criminal if performed by him directly or by another. To cause an act to be done means to bring it about. You may convict the defendant of the offense charged if you find that the government has proven beyond a reasonable doubt each essential element of the offense and that the defendant willfully caused such an act to be done by another, with the intent to commit the crime.

<u>Aiding and Abetting</u>

Any person who in some way intentionally participates in the commission of a crime aids and abets the principal offender. The law regards him as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime. To find a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the person or persons who committed the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed.

Some affirmative conduct by the defendant is necessary. Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt, unless his presence is intended to help the principal offender and, in fact, does help him. It

---

[4] This instruction is adopted from the instructions given by this Court in *United States v. Pray*, Criminal No. 10-051 (RMC).

is not necessary that you find that the defendant was actually present when the crime was committed.

The government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The government is not required to prove that the crime was committed in the particular way planned or agreed upon. Nor does the government need to prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other. And it is not necessary that all the people who committed the crime be caught or identified.

**[The defendants request this Court give the instruction it used in U.S. v. Pray, at page 46 of those instructions. Defendants did not submit the proposed language for submission in this pre-trial statement.]**

An aider and abettor is legally responsible for the acts of other persons that are the natural and probable consequence of the crime in which he intentionally participates. For example, an aider and abettor is legally responsible for the principal's use of a weapon during an offense if the aider and abettor had actual knowledge that some type of weapon would be used or if it was reasonably foreseeable to the aider and abettor that some type of weapon was required to commit the offense. It is sufficient to find a defendant guilty if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted the principal offender or offenders in committing the crime.

# RICO CONSPIRACY[5]

## (Title 18, United States Code, Section 1962(d))

Count One of the Indictment charges the defendants with a specific form of conspiracy, that is a conspiracy to violate the law prohibiting racketeer influenced and corrupt organizations. This is popularly known as RICO conspiracy and I will refer to it as such in these instructions.

## <u>COUNT ONE</u>

Count One of the Indictment reads as follows:

Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, NOE MACHADO-ERAZO, also known as Gallo; JOSE MARTINEZ, also known as Crimen; MOISES HUMBERTO RIVERA-LUNA, also known as Santos, also known as Viejo Santos; TOKIRO RODAS-RAMIREZ, also known as Johnny, also known as Perverso; MARVIN GEOVANNY MONTERROSA-LARIOS, also known as Enano; YESTER AYALA, also known as Freeway, also known as Daddy Yankee, together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to

---

[5] This instruction is adopted from the instruction given by this Court in *United States v. Pray*, Criminal No. XX-XXX (RMC) and those given by Judge Deborah Chasanow in the trial of the *United States v. Argueta*, Criminal No. 05-393 (D.Md.). The defendant Argueta's conviction was affirmed by the Fourth Circuit Court of Appeals without criticism of the instructions, which were not challenged by the defendant. 470 Fed. Appx. 176 (4th Cir. 2012).

conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under the following provisions of District of Columbia and Maryland law:

      a.      Murder, in violation of District of Columbia Code, §§ 22-2101 and 2103, and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland;

      b.      Robbery, in violation of District of Columbia Code, § 22-2801 and in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland;

      c.      Extortion, in violation of District of Columbia Code, § 22-3251, and Maryland Code, Criminal Law §§ 3-701, 3-705, and the Common Law of Maryland;

and multiple acts involving the following provisions of federal narcotics law:

      d.      Sections 841(a)(1) and 846 of Title 21, United States Code;

and multiple acts indictable under the following provisions of federal law:

      e.      18 U.S.C. § 1512 (Witnesses Retaliation/Tampering);

      f.      18 U.S.C. § 1503 (Obstruction of Justice);

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

The defendants are charged with violating 18 U.S.C. section 1962(d), a portion of the law on Racketeer Influenced and Corrupt Organizations.  That section reads as follows:

It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [the RICO Act].

Section 1962(c) of the RICO Act provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The word "racketeering" has certain implications in our society.  Use of that term in this statute and in this courtroom should not be regarded as having anything to do with your determination of whether the guilt of this defendant has been proven.  The term is only a term used by Congress to describe the statute.

In order to satisfy its burden of proof as to Count One, the government must prove the following four elements beyond a reasonable doubt:

FIRST:     That an enterprise existed as charged in the Indictment;

72

SECOND:      That the enterprise affected interstate or foreign commerce;

THIRD:       That the defendant was associated with or employed by the enterprise; and

FOURTH:      That the defendant knowingly and willfully became a member of the conspiracy.   The conspiracy charged in the indictment is to participate in the conduct of the affairs of the enterprise, and that the enterprise engaged in a pattern of racketeering activity.

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as charged in the Indictment.

An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time.  This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit, although the identities of the persons may change from time to time. This group of people does not have to be a legally cognizable entity, such as a partnership or a corporation.  This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.

The government has charged that the enterprise in this case is "La Mara Salvatrucha" or "MS-13", including its leadership, members and associates, and that the "common purposes" include:

73

a.      Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

b.      Promoting and enhancing the enterprise and the activities of its members and associates by committing crimes, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, extortion, human smuggling, and other criminal activities;

c.      Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

d.      Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador; and

e.      Providing assistance to other MS-13 members who committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders.

If you find that the government has proven that there was a group of people characterized by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) by personnel who function as a continuing unit, then you may find that an enterprise existed.

If you find that this enterprise existed, you must also determine whether this enterprise continued in an essentially unchanged form during substantially the entire period charged in the

Indictment. This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.

The second element that the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect upon interstate or foreign commerce.

Interstate commerce includes the movement of goods, services, money, and individuals between states, or between states and the District of Columbia or a U.S. Territory or possession, or between the United States and a foreign state or nation.

The government must prove that the enterprise engaged in interstate or foreign commerce or that its activities affected interstate or foreign commerce in any way, no matter how minimal. It does not have to prove that the racketeering activity affected interstate or foreign commerce, although proof that racketeering acts did affect interstate or foreign commerce is sufficient to satisfy this element. It is not necessary to prove that the acts of the defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect. Additionally, the government is not required to prove that the defendant knew he was affecting interstate or foreign commerce. Finally, there is no requirement that the activity affecting interstate commerce be legal.

The third element that the government must prove beyond a reasonable doubt is that the defendant was associated with the enterprise.

It is not required that the defendant be associated with the enterprise for the entire time that the enterprise existed or that the defendant knew everyone who was associated with the enterprise at some time. It is required, however, that the government prove, beyond a reasonable doubt, that at some time during the period indicated in the Indictment, the defendant himself was associated with the enterprise.

A person cannot be associated with an enterprise if he does not know of the enterprise's existence or the nature of its activities.  Thus, in order to prove this element, the government must prove beyond a reasonable doubt that the defendant was connected to the enterprise in some meaningful way, and that he knew of the existence of the enterprise and of the general nature of its activities.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the conspiracy.  A "Conspiracy" is a kind of criminal partnership -- a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

In order to prove a conspiratorial agreement, the government must establish that at least two or more persons entered the unlawful agreement charged in the Indictment, that is an agreement to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity; and that the defendant knowingly and willfully became a member of the conspiracy.

You need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement.  Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.  What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit individual criminal acts.  The government must prove that the defendant

76

participated in some manner, however slight, in the overall objective of the conspiracy, and that the conspiracy itself involved, or would have involved, the commission of two racketeering acts. The extent of the defendant's participation has no bearing on the defendant's guilt.    A conspirator's liability is not measured by the extent or duration of his participation.  Indeed, each member may perform separate and distinct acts and may perform them at different times.  Some conspirators play major roles, while others play minor parts.  An equal role is not what the law requires.

The term "Racketeering Activity" as charged in the Indictment means a.)  Murder, in violation of District of Columbia  Code, sections 22-2101 and 2103, and in violation of Maryland Code Criminal Law sections 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland; b.)   Robbery, in violation of District of Columbia Code, section 22-2801 and in violation of Maryland Code, Criminal Law sections 3-402 and 3-403 and the Common Law of Maryland; c.)   Extortion, in violation of District of Columbia Code, section 22-3251, and Maryland Code, Criminal Law sections 3-701, 3-705, and the Common Law of Maryland; and multiple acts involving the following provisions of federal narcotics law: d.)  Sections 841(a)(1) and 846 of Title 21, United States Code; and multiple acts indictable under the following provisions of federal law: e.)  18 U.S.C. § 1512 (Witnesses Retaliation/Tampering); f.) 18 U.S.C. section 1503 (Obstruction of Justice).  I will define those crimes a little later.

The phrase "Pattern of Racketeering Activity" requires at least two acts of racketeering activity that are related to the enterprise and to each other and that pose a threat of continued criminal activity.   It is not sufficient for the government to prove only that two of the racketeering acts were committed or intended to be committed.  A series of disconnected acts

does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that the acts are part of a long-term association that exists for criminal purposes.

The government is not required to prove that the defendant personally committed two such acts, although you may conclude that the defendant agreed to participate in the conduct of the enterprise from proof that he agreed to commit or actually committed such acts. You are further instructed that the government is not required to prove that the defendant knew all of the other conspirators or that he agreed with each of them to violate the law. Instead, the focus of this count is on the defendant's own agreement to join or remain in the conspiracy charged. What is important is that the government prove that the defendant knowingly adopted the goal of furthering or facilitating the criminal endeavor or, in other words, the defendant knew generally about the pattern of racketeering activity and agreed to facilitate the racketeering scheme in some manner and not that the defendant himself committed the crimes encompassing the pattern of racketeering activity.

The government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity, or knew all his fellow conspirators or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only

78

required that the defendant know the general nature and common purpose of the conspiracy and that the conspiracy extends beyond his individual role. Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy, may be inferred from circumstantial evidence.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of the defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy, does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, before you may find the conspiracy element of count one, the government must have proven beyond a reasonable doubt that the defendant, with an understanding of the unlawful character of the conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of furthering the illegal undertaking. The defendant thereby became a knowing and willing participant in the unlawful agreement -- that is to say, a conspirator.

It is for you to determine whether the racketeering acts alleged in the Indictment were proven to be intended as part of the conspiracy.

Murder:  First degree murder is the intentional killing of another person with willfulness, deliberation, and premeditation.  Willful means that the person actually intended to kill the victim.  Deliberate means that the person was conscious of the intent to kill.  Premeditated means that the person thought about the killing and that there was enough time before the killing, though it may only have been brief, for the assailant to consider the decision whether or not to kill and enough time to weigh the reasons for and against the choice.  The premeditated intent to kill must be formed before the killing.  Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result.  Second degree murder does not require premeditation or deliberation. Attempted murder is a substantial step, beyond mere preparation, toward the commission of murder in the first or second degree. In order to prove attempt, the government must show that the assailant had the apparent ability, at that time, to commit the crime of murder and the requisite intent.

Robbery:  Robbery is the taking and carrying away of property from another, by force or threat of force, with the intent to permanently deprive the victim of the property.  Property means anything of value.

Extortion: Under Maryland and District of Columbia law, extortion occurs when a defendant or defendants obtain property from a complainant with the complainant's consent where that consent was obtained by use of actual or threatened  force or violence or by threat of economic injury.

Federal Narcotics Law:   According to federal law, 21 United States Code, §841(a), possession with intent to distribute a controlled substance means that a defendant possessed a controlled substance knowingly and intentionally with the specific intent to distribute that controlled substance.   Distribute means to transfer or attempt to transfer a  controlled substance to another person but no payment is required for that exchange.   The government charges that the controlled substances involved here were cocaine and cocaine base which are by law controlled substances.   Conspiracy to possess with intent to distribute or to distribute a controlled substance pursuant to 21 United States Code, §846,  means that there was an agreement  between two or more people, to commit the crimes of possession with intent to distribute or distribution of a controlled substance  and that the defendant intentionally joined in that agreement.

Witness Tampering:   Section 1512 of Title 18 of the United States Code requires two elements.  First, the conduct must involve the use of physical force or the threat of physical force against another, or attempt to do so, or intimidation, threats, or attempt to do so.   Second, the conduct must be done with the intent to cause another to withhold testimony from an official proceeding, or hinder, delay or prevent the communication to a law enforcement officer of the United States any information relating to the commission or possible commission of a federal offense.

Obstruction of Justice:  The federal obstruction of justice statute is codified at 18 U.S.C. Section 1503. It provides that, whoever (1) corruptly or by threats or force endeavors to influence, intimidate, or impede any grand or petit juror or officer in or of any court of the United States or (2) corruptly or by threats of force, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice, is guilty of a crime.

81

This law is aimed at a variety of means by which the orderly and due process of the administration of justice may be impeded, thwarted or corrupted.  The due administration of justice includes but is not limited to a grand jury proceeding or investigation.  The sweep of the statute extends to any corrupt endeavor or effort to interfere with a juror's function in the discharge of his duties.  The key word in the statute is "endeavor".  As used in the statute, "endeavor" means any effort or any act, however contrived, to obstruct, impede, or interfere with the grand jury or trial proceeding.  It is the endeavor which is the gist of the crime.  Success of the endeavor is not an element of the crime.  Any effort, whether successful or not, that is made for the purpose of corrupting, obstructing or impeding the proceeding is condemned.  The word "corruptly" as used in the statute means simply having the improper motive or purpose of obstructing justice.

The law does not require that the federal proceeding be pending at the time of the use of force or threat or that the individual know whether any proceeding is federal or local, as long as the proceeding itself was reasonably foreseeable and the intent of the force or threat was to obstruct the proceeding, and the actions were likely to affect such a proceeding.

In order to convict the defendant of the RICO conspiracy offense charged in Count One, all twelve of you must agree as to which type or types of predicate racketeering activity were intended as part of the conspiracy the defendant joined: for example, at least two acts of murder, or robbery, or obstruction of justice, or one of each, or any combination thereof. On the verdict sheet, you will first be asked whether you find the defendant guilty or not guilty of the charge in count one.  If you find the defendant guilty, you will be asked to specify what type or types of racketeering activity you find to have been the objective(s) of the conspiracy he joined.  You will

be asked separately about 1st degree Murder, 2nd degree Murder, Attempted Murder, Robbery, Obstruction of Justice, and Witness Tampering.[6]

---

[6] At 3:15PM, on May 21, 2013, the date this joint statement is due, defense counsel sent the government a transcript of instructions from the Pray case requesting they be incorporated into this submission.  There being insufficient time before filing, the government declined to do so, but has included the transcript as an attachment.

## COUNTS FOUR, SIX, AND EIGHT[7]

### MURDER IN AID OF RACKETEERING
### (VICAR MURDER)
(Title 18, United States Code, Section 1959)

In Counts Four, Six and Eight, one or more of the defendants is charged with violating Title 18, United States Code, Section 1959 by either committing or conspiring to commit a violent crime with reference to a racketeering enterprise.  Section 1959 reads as follows:

> Whoever, for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so [is guilty of a crime].

Specifically, each of these three counts realleges and incorporates the allegations concerning the existence and purposes of the enterprise in paragraphs 1 through 14 of Count One of the Indictment and then reads as follows:

### COUNT FOUR

On or about November 6, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the

---

[7]   This instruction is also adopted from those given by this Court in *Pray* and Judge Chasanow's instructions in *Argueta.*

84

purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Louis Alberto Membreno-Zelaya, in violation of D.C. Code, Sections 22-2101 and 4502 .

## COUNT SIX

On or about December 12, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, unlawfully and knowingly, did murder Giovanni Sanchez in violation of  D.C. Code, Sections 22-2101 and 4502.

## COUNT EIGHT

85

On or about March 28, 2010, in the District of Maryland, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, Noe Machado-Erazo, also known as Gallo and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Felipe Enriquez, in violation of Maryland Code Criminal Law sections 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland.

In order to prove a violation of section 1959, the government must establish beyond a reasonable doubt each one of the following five elements of the offense:

FIRST:      That an enterprise affecting interstate or foreign commerce existed;

SECOND:     That the enterprise was engaged in racketeering activity;

THIRD:      That the defendant had a position in the enterprise;

86

FOURTH:    That the defendant committed or aided and abetted in the commission of the alleged crime of violence; and

FIFTH:    That the defendant's general purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise.

The first element the government must prove beyond a reasonable doubt is that an "enterprise" existed, which was engaged in or had an effect upon, interstate or foreign commerce. The government has charged the same enterprise for these Counts as in Count One, the RICO Conspiracy count, that is, MS-13, including its leadership, members and associates. I have already instructed you on what is necessary for the government to prove that MS-13 is an enterprise that engaged in or had an effect upon, interstate or foreign commerce.

The second element the government must establish beyond a reasonable doubt is that the enterprise was engaged in racketeering activity. I discussed the various racketeering activity charged in connection with this case earlier. As I stated, "racketeering activity" includes such offenses as murder in violation of the District of Columbia and Maryland, robbery, extortion, narcotics trafficking, witnesses tampering, and obstruction of justice. It is for you to determine whether the enterprise "engaged in" these activities as charged. You should give the words "engaged in" their ordinary, everyday meaning. For an enterprise to be engaged in racketeering activity, it is enough to show that the enterprise committed or was planning to commit some

racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity.

The third element the government must establish beyond a reasonable doubt is that the defendant was seeking or had a position in the enterprise.

To establish this element, the government must prove that the defendant was actively engaged in promoting the illegal activities of the enterprise, or, by his acts, was attempting to become a member of the enterprise. It is not enough to prove that the defendant was doing business with the enterprise; the government must prove that he was actually a member of the enterprise, or actively seeking membership in the enterprise.

The fourth element the government must establish beyond a reasonable doubt is that the defendant committed or aided and abetted in the commission of the alleged crime of violence as charged in the Indictment. Under the aiding and abetting statute, it is not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof. A person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find that the defendant aided and abetted in the commission of an offense if you find beyond a reasonable doubt that the government has proven that another person actually committed the offense, and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first requirement is that you find that another person has committed the crime of violence. Obviously, no one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find

that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that a defendant knowingly associated himself with the crime, the government must establish that the defendant knew of the criminal venture. To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime is not sufficient to establish aiding and abetting. One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor. An aider and abettor must know that the crime is being committed and act in a way which is intended to bring about the success of the criminal venture. To determine whether a defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

89

If he did, then the defendant is an aider and abettor in the commission of the crime of violence. If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty.

The fifth element the government must establish is that the defendant's general purpose in committing or aiding and abetting the commission of the charged crime of violence was to gain entrance to or to maintain or increase his position in the enterprise. The government is not required to prove that it was the defendant's sole or principal motive.

In determining whether a defendant's purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise, you should give the words "gain entrance", "maintain" and "increase" their ordinary meanings. You should consider all of the facts and circumstances in making that determination.

For example, you may consider evidence that the crime, if proved, was committed in order to maintain discipline within the enterprise and served to maintain the defendant's position in the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary to maintain the position he already held, this element would be established.

Instruction 4-201

## **<u>COUNTS FIVE AND SEVEN</u>**

## **MURDER WHILE ARMED (PREMEDITATED)**
(22 D.C. Code, Sections 2101, 4502 (2007 ed.))

In Count Five of the Indictment Yester Ayala are charged with murder in the homicide death of Louis Alberto Membreno-Zelaya. In Count Seven of the Indictment Yester Ayala is charged with murder in the homicide death of Giovanni Sanchez. I am going to instruct you on both first degree murder and also on the lesser included offense of second degree murder.

Count Five of the Indictment reads:

Henry Diaz-Antunuez, also known as Stewie, also known as Stuvi, Yester

Ayala, also known as Freeway, also known as Daddy Yankee, and other

individuals whose identity is known to the Grand Jury, within the District

of Columbia, while armed with a dangerous weapon, that is a knife or

other sharp object, purposely and with deliberate and premeditated malice,

killed Louis Alberto Membreno-Zelaya by stabbing him with a knife or

other sharp object on or about November 6, 2008, thereby causing injuries

from which died on or about November 6, 2008.

91

Count Seven of the Indictment reads:

> Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is, a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Giovanni Sanchez by stabbing him with a knife or other sharp object on or about December 12, 2008, thereby causing injuries from which Giovanni Sanchez died on or about December 12, 2008.

## A. First Degree Murder

The elements of first degree premeditated murder, each of which the government must prove beyond a reasonable doubt, are that:

1.     The defendant caused the death of the decedent;

2.     The defendant intended to kill the decedent;

3.     The defendant did so after premeditation;

4.     The defendant did so after deliberation; and

5.     There were no mitigating circumstances.

Premeditation means forming an intent to kill. To premeditate is to give thought, before acting, to taking a human life, and then to reach a definite decision to kill. Deliberation means considering and reflecting on the intent to kill, turning it over in the mind, giving it second thought.

Premeditation--the formation of an intent to kill--may be instantaneous, as quick as thought itself. Deliberation, however, requires some time to have elapsed between formation of

this intent and the fatal act, within which one pauses and actually gives second thought and consideration to the intended act. The law does not require that deliberation take any particular amount of time. It can be days, hours or minutes, or it can be as brief as a few seconds. It varies according to the circumstances of each case. It is the fact of deliberation that the government must prove, not the length of time it may have gone on.

*B. Second Degree Murder*

The elements of second degree murder, each of which the government must prove beyond a reasonable doubt, are that:

1.     The defendant caused the death of the decedent;

2.     At the time, he did so, the defendant intended to kill or seriously injure the decedent, or he acted in conscious disregard of an extreme risk of death or serious bodily injury to the decedent; and

3.     There were no mitigating circumstances.

Second degree murder differs from first degree premeditated murder in that it does not require premeditation, deliberation or an intent to kill.

*Inference on Use of a Weapon*

You have heard evidence that the defendant may have used a weapon. If you decide that s/he did use a weapon, you may consider the nature of the weapon, the way the defendant used it, and other circumstances surrounding its use. If use of the weapon under all the circumstances would naturally and probably have resulted in death, you may conclude that the defendant intended to kill the decedent. Or, you may conclude that s/he intended to inflict serious bodily injury or s/he acted in conscious disregard of an extreme risk of death or serious bodily injury.

But you are not required to reach any of these conclusions. Consider all the evidence in deciding whether the defendant had the required state of mind.

If you find the Defendants committed either First Degree or Second Degree murder, that element of VICAR murder is satisfied.

## COUNT EIGHT

### MURDER

(Maryland Code Criminal Law sections 2-201, 2-204, 2-205, 2-206)

Count Eight of the Indictment reads:

> On or about March 28, 2010, in the District of Maryland, as consideration
> for the receipt of, and as consideration for a promise and agreement to
> pay, anything of pecuniary value from MS-13, and for the purpose of
> gaining entrance to and maintaining and increasing position in MS-13, an
> enterprise engaged in racketeering activity, the defendants, Noe Machado-
> Erazo, also known as Gallo and Jose Martinez-Amaya, also known as
> Crimen, also known as Mecri, and another individual whose identity is
> known to the Grand Jury, unlawfully and knowingly, did murder Felipe
> Enriquez, in violation of Maryland Code Criminal Law sections 2-201, 2-
> 204, 2-205, 2-206 and the Common Law of Maryland.

Since the Indictment charges that the VICAR Murder charged in Count Eight against Noe
Machado-Erazo and Jose Martinez-Amaya was committed in Maryland in violation of Maryland
law, I will now instruct you concerning the law of that state regarding Murder.  First degree
murder is the intentional killing of another person with willfullness, deliberation, and
premeditation.  Willful means that the defendant actually intended to kill the victim.  Deliberate
means that the defendant was conscious of the intent to kill.  Premeditated means that the
defendant thought about the killing and that there was enough time before the killing, though it
may only have been brief, for the defendant to consider the decision whether or not to kill and

enough time to weigh the reasons for and against the choice.  The premeditated intent to kill must be formed before the killing.  Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation.  If you find the defendants committed either First Degree or Second Degree Murder, this element of VICAR murder is satisfied.

## COUNT NINE

**Possession Of A Firearm During Or In Furtherance
Of The Commission Of A Crime Violence**
(Title 18, United States Code, Section 924(c)(1)(A) and 2)

Count Nine charges the defendants Noe Machado-Erazo and Jose Martinez-Amaya with the crime of using a firearm to commit, or carrying a firearm during the commission of, or discharging a firearm during the commission of, or possessing a firearm in furtherance of, a crime of violence.  The indictment reads as follows:

On or about March 28, 2010, in the District of Columbia, the defendants, Noe Machado-Erazo, also known as Gallo; and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering and did discharge a firearm in furtherance of the offense charged in Count Eight of this Indictment.

You will recall that Count Eight of the Indictment, on which I just instructed you, charges defendants Noe Machado-Erazo and Jose Martinez-Amaya with the VICAR Murder of Felipe Enriquez in Maryland.  Under this count, the defendants are charged with using, carrying, discharging, or possessing a firearm during or in furtherance of the commission of the crime of VICAR Murder of Felipe Enriquez in that count, or with aiding and abetting another person to do so.

97

If upon all of the evidence you find that the government has failed to prove Count Eight beyond a reasonable doubt, with regard to either defendant Machado or Amaya then you will proceed no further as to Count Nine for the defendant whom you found not guilty. Count Nine is to be considered only if you first find either or both defendants guilty of the crime of violence charged in Count Eight. Specifically, you may deliberate on Count Nine as to a particular defendant only if you find that defendant guilty of Count Eight.

In reaching your verdict on Count Nine, you may consider the evidence of Count Eight only for the purpose of determining whether the elements of Count Nine have been satisfied as to the defendant.

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty:

>    First: The defendant used or possessed a firearm, or aided and
>
>    abetted one who did so;
>
>    Second: The defendant did so knowingly and intentionally, and
>
>    Third: The defendant did so during and in relation to a crime of
>
>    violence.

The first element the government must prove beyond a reasonable doubt is that the defendant committed or aided and abetted the commission of a crime of violence for which he might be prosecuted in a court of the United States. The defendant is charged in Count Eight with murder in aid of racketeering, which is a crime of violence. However, it is for you to determine that the government has proven beyond a reasonable doubt that either or both defendants committed that crime of violence.

98

The second element the government must prove beyond a reasonable doubt is that the defendant knowingly used or carried a firearm during and in relation to, or that the defendant knowingly possessed or that the defendant knowingly discharged a firearm in furtherance of, the commission of the crime charged in the referenced count, or that he aided and abetted another person to do so.

A "firearm" is any weapon which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

"Use" of a firearm means proof beyond a reasonable doubt of active employment of the firearm by a person during and in relation to the commission of the crime of violence. This does not mean that the person must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying, or even referring to the weapon so that others present knew that the person had the firearm available if needed all constitute use of the firearm. However, the mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute a use of the firearm.

"Carrying" a firearm means proof beyond a reasonable doubt that the person had the weapon within his control in such a way that it furthered the commission of the crime of violence or was an integral part of the commission of the crime.   A person did not necessarily have to hold the firearm physically, that is, have actual possession of it on his person. If you find that the person had dominion and control over the place where the firearm was located, and had the power and intention to exercise control over the firearm in such a way that it furthered the commission of the crime of violence, you may find that the government has proven that the person carried the weapon. It is not sufficient to prove carrying if all the government has proven

is that the firearm was transported in a vehicle in which the person was riding. There must be proof that the person knew of the weapon's presence and had the power and intention to exercise control of the weapon so that it was available for his use in the commission of the crime if the need arose.

"Possession" of a firearm in furtherance of the crime means proof beyond a reasonable doubt that the person had possession of the firearm and that such possession was in furtherance of that crime. Possession means that the person either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm. Possession may be sole or joint. If one person alone possesses something, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the firearm. This is called joint possession. If you find the defendant had such power and intention, then he possessed the firearm even if he possessed it jointly with another. Possession cannot be found solely because the defendant associated with another person who did possess the firearm, or solely because he was near to the firearm, or solely because he knew that the firearm was present. These factors may be considered by you, however, in connection with all of the evidence, in making your decision whether the defendant possessed the firearm.

To possess a firearm in furtherance of the crime means that the firearm helped forward, advance or promote the commission of the crime. The mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied. To satisfy this element, you must also find that the person carried or used the firearm knowingly. This means that he carried the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew

100

that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the person knew that he was breaking the law.

**Instruction 3.101**

**PROOF OF STATE OF MIND**

Someone's intent ordinarily cannot be proved directly, because there is no way of directly looking into the workings of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made or acts done by the defendant, and all other facts and circumstances received in evidence which indicate the defendant's intent.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts knowingly done. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.

**Instruction 3.103**

**"ON OR ABOUT" -- PROOF OF**

You will note that the indictment charges that the offenses were committed "on or about" a particular date or dates. The proof need not establish with certainty the exact date of the alleged offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date alleged.

**Defendants request the following instruction to which the government objects:**

**Disregarding Unproven Allegations**

**You will put out of your minds any reference or evidence concerning [insert count and brief description] because I have ruled that the government has failed to proved (e.g., all of the necessary elements of that charge). You must decide the remaining counts as if a charge was not made and as if no evidence was submitted in support of that charge. You must limit your consideration to (\*\*\*) and you must determine if the government has sustained its burden of proof beyond a reasonable doubt, excluding all references to or evidence concerning \*\*\*.**

**L. Sand, et al., Modern Federal Instructions, No. 2-20**

*Government objects: this instruction assumes the Court will grant a Rule 29 motion at the close of the government's evidence. Even if such a motion was granted, the jury should not be instructed to disregard particular evidence, as the evidence in this case is applicable to both the RICO conspiracy and VICAR counts. As to defendant Ayala, the evidence is relevant to both the VICAR murder charges and the DC Code murder charges. Because the elements are different, it is possible that the Court could direct a verdict for the defendant on one count, but the related count would still go before the jury. Therefore, it would be improper to instruct the jury to disregard the evidence.*

**Instruction 2.402**

**MULTIPLE COUNTS -- ONE DEFENDANT**

A separate offense is charged in each of the counts of the indictment which you are to consider. Each offense, and the evidence which applies to it, should be considered separately, and you should return separate verdicts as to each count. The fact that you may find the defendant guilty or not guilty on any one count of the indictment should not control your verdict with respect to any other count or counts of the indictment.

**Instruction 2.502**

**ELECTION OF FOREPERSON**

When you return to the jury room, you should first select one of your members to be the foreperson. The foreperson should preside over your deliberations and will be your spokesperson here in court.

## Instruction 2.405

## UNANIMITY

The verdicts must represent the considered judgment of each juror.  In order to return verdicts, each juror must agree to the verdicts.  Your verdicts must be unanimous.

*To assist you in returning your verdicts I have provided you with a verdict form to record your verdict once you have reached a unanimous verdict on any count or counts of the Indictment.  The verdict form is intended only to assist you and I caution you  that nothing in the verdict form is intended to suggest or convey any opinion by me  regarding what the verdict should be.  When you examine the form you will notice that it merely lists each count of the indictment and for each count of the indictment it contains a blank to record a verdict of either guilty or not guilty.  Once you have reached a unanimous verdict on any count or counts, record that verdict by placing a check or an "X" in the appropriate blank or blanks.  Before the jury returns to the courtroom to announce your verdicts, your foreperson should sign the verdict form on the line provided for his or her signature and fill in his or her jury seat number.*

*Let me describe briefly the procedure by which we will receive your verdicts.  When you advise me through a note that you have reached a unanimous verdict on any count or counts, I will assemble all the parties and the courtroom staff.  Once the parties and staff  are all here, the jury will return to the courtroom.  Your foreperson will be asked if you have reached a unanimous verdict.  The clerk will ask for your verdict form and once I have examined the form, it will be returned to your foreperson and the foreperson will be asked to announce the verdict or verdicts.  You will then be asked if the verdict as announced by your foreperson is your unanimous verdict.    Either party is then entitled to a poll of the jury  if they wish in order to be sure that the jury's verdict is unanimous.  If a party requests a poll, the clerk will read your*

107

*verdict as recorded. Each juror will then be called by his or her seat number and asked individually if this is his or her verdict. You should remain seated and you need only respond yes or no when your seat number is called.*

**Instruction 2.505**


**POSSIBLE PUNISHMENT NOT RELEVANT**


The question of possible punishment of the defendant in the event of conviction is no concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of conviction rests exclusively with me. You should weigh the evidence in the case and determine the guilt or innocence of the defendant solely upon the basis of such evidence, without any consideration of the matter of punishment.

**Instruction 2.600**

**COMMUNICATIONS BETWEEN COURT AND JURY
DURING JURY'S DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me by any means other than a signed note and I will never communicate with any member of the jury on any matter touching the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person -- not the clerk, the marshal or me -- how the jury stands on the question of the defendant's guilt or innocence until after you have reached a unanimous verdict. This means, for example, that you never should state to the court that the jury is divided 6 to 6, 7 to 5, 11 to 1, or in any other fashion, whether for conviction or acquittal.

**Instruction 2.100**

**FURNISHING THE JURY WITH A COPY OF
THE INSTRUCTIONS**

I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions.  While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others.  The fact that you have been provided a copy of my instructions should not discourage you from making an inquiry regarding the meaning of these instructions if necessary. Please return the instructions to me when your verdict is rendered.

## JURY INSTRUCTION NO. 2.511

### <u>ALTERNATE JURORS</u>

While you alternate jurors will not begin deliberations with the 12 regular jurors, it is possible that one or more of you could be called to deliberate at some future time. Because that possibility exists, you are instructed that you should continue to follow my instruction not to discuss this case with anyone at any time. The Court will notify you when the jury has completed its deliberations. When that occurs, your jury service will be discharged and you will be free to discuss the case.

**INSTRUCTION NO.**

**DURRESS**

The defendant, Yester Ayala, offered evidence to show that at the time the offenses were committed, he was ordered by a member(s) of MS-13 to commit the offenses in the indictment.

Under the law, Yester Ayala is not guilty of a crime if he participated in any of the offenses in the indictment only because he believed, and had good reason to believe, that he would be seriously harmed if he did not participate and had no other way of escaping serious harm. And on this issue, just as on all others, the burden is on the government to prove the defendant's guilt beyond a reasonable doubt. To find Yester Ayala guilty, therefore, you must conclude beyond a reasonable doubt that when he participated in the offenses in the indictment, he did not have a reasonable belief that such participation was the only way he could save himself from serious harm.

*Counsel for defendant Ayala requested this instruction be included in the statement at 3:45PM on May 21, 2013, approximately 15 minutes before the time the government stated it would file this statement.  While the government believes this is a complete misstatement of the law on duress, there is insufficient time to state the objection with particularity, and, therefore, the government reserves the right to supplement.  The instruction is produced verbatim from the request of defense counsel.  However, the government would direct the Court's attention to U.S. v. Nwoye, 663 F.3d 460 (D.C. Cir. 2011).*

**E. List of Expert Witnesses**

**Government**

1.  Gang Experts

    a.  Juan Diaz

The government expects to call Juan Diaz as an expert witness on MS-13 in El Salvador. It is anticipated that he will testify concerning the structure, hierarchy, organization, general operation, and rules of MS-13, its relationship to cliques in the United States, and its culture. He will identify certain Salvadoran leaders of MS-13, including "Viejo Santos" and "Enano". He is expected to testify concerning methods of communication, use of slang and code words, as well as identify specific code words. He may identify some photographs of graffiti and/or tattoos and is expected to opine that these are similar to graffiti and/or tattoos of MS members in El Salvador. A more detailed notice was sent to defense counsel on or about February 1, 2012.

    b.  Sgt. George Norris

Sgt. Norris will be called as an expert witness on MS-13 in the United States and will testify concerning the history, structure, organization, rules, and general operation of MS-13. He will testify to the use of slang and code words. He will identify graffiti and/or tattoo photos from different areas of the United States, and may view particular items of evidence to opine whether they are consistent with other MS-13 evidence he has seen.

2.  Medical Experts

    a.  Dr. Wayne Williams performed the autopsy of Louis Membrano-Zelaya and will testify to the cause and manner of death. Counsel have been provided with the autopsy report.

    b.  Dr. Zabiullah Ali performed the autopsy of Luis Chavez-Ponce and will testify to the cause and manner of death. Counsel have been provided with the autopsy report.

c. Dr. Laron Locke performed the autopsy of Felipe Enriquez and will testify to the cause and manner of death.  Counsel have been provided with the autopsy report.

d. Dr. Carolyn Revercomb performed the autopsy of Giovanny Sanchez and will testify to the cause and manner of death.  Counsel have been provided with the autopsy report.

At this time, the government anticipates that each medical examiner will be available for trial, but the government reserves the right to call a designee in the event of a particular doctor's unavailability.

3.  Forensic Experts

a. Jennifer Zeffer:  DNA analyst is expected to testify that DNA from blood on a jacket was consistent with that of Hector Diaz-Flores, in accordance with her report.

b. Mark Williford:  Montgomery County firearms examiner who will testify re: Felipe Enriquez casings and bullets.

c. Julian Mason:  Virginia firearms examiner who will testify that the bullets fired in the Reston shooting and the Riverdale murder were fired from the same gun.  Counsel have received a copy of his report as well as his testimony in connection with the trial in EDVA about the Reston shooting.

4.  <u>Cellular Technology</u>

FBI Special Agent David Magnuson

David Magnuson will testify to cellular technology and the analysis of historical cellular telephone and cell site records.

**Defendant Ayala**

Gregory DeClue, Ph.d, Forensic Scientist, will testify as to the Weschler Adult Intelligence Scale, Fourth Edition test he administered to Yester Ayala.

**Defendants Machado-Erazo and Martinez-Amaya**

William Folson:  expert in the area of cell tower data, GPS data, and possible triangulation data.

The government reserves the right to object to any testimony by this witness as we have received no report, summary of report, or any information concerning his testimony.

**F. Motions in Limine**

Attached hereto is a Motion in Limine filed by the government and sent to defense counsel via e-mail on May 8, 2013.  The government's motion addresses three issues:  the order of witnesses, the admission of phone numbers and/or names found on contact lists or ledgers, and calling the case agent as a Rule 701 witness.  The defendants have not responded.

Also attached is the Defendants' Motions in Limine with the government's responses.

**G. Exhibit List**

Attached hereto is the government's exhibit list.  Exhibits are marked in accordance with the incident to which they refer or general category.  Until the Court rules on any objections to the transcripts (Exs. 906-933), the transcriber/translator has not certified them.  Accordingly, with the Court's permission, rather than filing the transcripts themselves, the government providing a disc entitles "Trial Ready Transcripts Sent May 10, 2013".  This disc was sent to defense counsel on or about May 13**.**  In addition, at this time, the government is unable to provide the court with discs containing the recordings themselves as the individual discs for each witness have not been completed. (Exs # 901, 902, 903).

Exhibit #302 is El Salvador Records of the Ministry of Justice and Public Security. Defense counsel recently advised they are unable to stipulate to the admission of these records, therefore, the government has been in contact with the United States Embassy to assist in having

116

the records certified and apostilled (see Fed. R. Crim. P. Rule 27 and Fed. R. Civ. P. Rule 44 and

The Hague Convention Abolishing the Requirement for Legalisation for Foreign Public

Documents). Upon receipt of the appropriate documents, the government will substitute them

for the current records. There will be no substantive change in the exhibit.

The defendants have not submitted an exhibit list.

**G. Stipulations**

Attached are the requested stipulations. The defense has agreed to the stipulation

regarding the weather report (request #1), but is still considering the other requests. They

indicate there will likely be a stipulation to the remaining requests.

**H. Proposed Verdict Form**

The parties were unable to agree on a proposed verdict form, therefore, the government's

requested verdict form and a verdict form requested by each of the defendants is attached.

Respectfully submitted ,


_____/s/_____
Nihar Mohanty
Assistant U.S. Attorney
555 Fourth Street, NW
Washington, DC 20530
202-252-7700


_____/s/_____
Laura Gwinn
Trial Attorney
U.S. Department of Justice
1301 New York Ave. 7th Floor
Washington, D.C.  20530
(202) 262-6763

_____/s/_____
Kira West, Esquire
1325 G Street NW Suite 500
Washington D.C. 20005
202-906-9971
Attorney for Noe Machado-Erazo


_____/s/_____
Joseph Virgilio, Esquire
1629 K Street NW, Suite 300
Washington, DC 20006
202-686-6914
Attorney for Jose Martinez-Amaya


_____/s/_____
Billy Ponds, Esquire
The Ponds Law Firm
1250 24th Street, NW Suite 300
Washington, D.C. 20037
202-333-2922
Attorney for Yester Ayala