UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>NOE MACHADO-ERAZO, )<br>JOSE MARTINEZ-AMAYA, *and* )<br>YESTER AYALA, )<br>)<br>Defendants. )<br>) | Criminal Action No. 10-256-08, -09,<br>-20 (RCL) |

# FINAL VERSION OF PRETRIAL JURY INSTRUCTIONS

Pretrial jury instructions as given by the Court in the above-captioned case on June 18, 2013.

**Signed by Royce C. Lamberth, U.S. District Judge, on July 23, 2013.**

Before we begin the trial, I want to explain some of the legal rules that will be important in this trial. I want to emphasize that these remarks are not meant to be a substitute for the detailed instructions that I will give at the end of the trial just before you start your deliberations. These preliminary instructions are intended to give you a sense of what will be going on in the courtroom and what your responsibilities as jurors will be.

When you took your seats, you probably noticed that each of you had a notebook and pencil waiting for you. That is because I permit jurors to take notes during trial if they wish. Whether you take notes or not is entirely up to you. Many people find that taking notes helps them remember testimony and evidence; others find it distracts them from listening to the witnesses.

You will be permitted to take your notebooks back with you into the jury room during deliberations. You should remember, however, that your notes are only an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who do not take notes should rely on their own memory of the evidence and should not be influenced by another juror's notes.

Other than during your deliberations, the notebooks will remain locked in the courtroom during recesses and overnight. You will not be able to take the notebooks with you as you come and go and you will not be permitted to take them home with you overnight. At the end of the trial, when you come back to the courtroom to deliver your verdict, your notebooks will be collected, and the pages torn out and destroyed. No one, including myself, will ever look at any notes you have taken, so you may feel free to write whatever you wish.

You have probably noticed that there are sixteen (16) of you sitting in the jury box. Only twelve (12) of you will retire to deliberate in this matter. Before any of you even

entered the courtroom, we randomly selected the alternates' seats. I will not disclose who the alternate jurors are until the end of my final instructions just before you begin your deliberations. As any seat might turn out to be an alternate's seat, it is important that each of you think of yourselves as regular jurors during this trial, and that all of you give this case your fullest and most serious attention.

At the beginning of the jury selection process, you were introduced to some witnesses in person. Others were identified to you only by name. If, at any time during this trial, you suddenly realize that you recognize or might know any witness, lawyer, someone who is mentioned in the testimony or evidence, or anyone else connected with this case in any way, you should raise your hand immediately and ask to speak with me.

Now let me explain briefly some of the procedures we will follow and some of the rules of law that will be important in this case. This is a criminal case that began when the grand jury returned an indictment.

<u>Summary of Indictment:</u> I will now summarize the indictment.

The defendants in this matter, Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, have been charged in an Indictment with one count of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d). Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, are also charged with Murder in Aid of Racketeering, in violation of Title 18, United States Code, Sections 1959(a)(1). Yester Ayala is additionally charged with First Degree Murder While Armed (Premeditated), in violation of 22 D.C. Code, Sections 2101, 4502. Noe Machado-Erazo and Jose Martinez-Amaya are also charged in the Indictment with Possession of a Firearm During and in Relation to a Crime of Violence, in violation of Title 18 United States Code, Sections 924(c)(1)(A). It might be helpful at this point to explain to you that

"RICO" is an acronym that lawyers and the courts use to refer to charges concerning a Racketeer Influenced Corrupt Organization. At the close of this trial, in my final instructions to you before you deliberate I will more fully explain the details of such charges but let me remind you again, at this point these are just charges.

Count One of that Indictment, charging Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala, with Possession of a Firearm During and in Relation to a Crime of Violence, and designates the corruption organization or enterprise as:

> MS-13, including its leadership, members and associates, in the District of Columbia, Maryland, El Salvador, and elsewhere, constituted an "enterprise" as defined in Title 18, United States Code, Section 1961(4) [hereinafter "the enterprise"] that is, a group of individuals associated in fact. The enterprise constituted an ongoing organization whose members functioned as a continuing unit that had a common purpose of achieving the objectives of the enterprise. This enterprise was engaged in, and its activities affected, interstate and foreign commerce.

Count One of the Indictment, charging Noe Machado-Erazo, Jose Martinez-Amaya, and Yester Ayala also charges that:

> Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including the present, in the District of Columbia, the District of Maryland, and elsewhere, Noe Machado-Erazo, also known as Gallo; Jose Martinez, also known as Crimen; Yester Ayala, also known as Freeway, also known as Daddy Yankee, together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate

Title 18, United States Code, Section 1962(c), that is to conduct and participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under provisions of District of Columbia and Maryland law.

Manner and Means of the Conspiracy

It was part of the manner and means of the conspiracy that the defendants, as gang members of MS-13, were required to have and did have regular meetings with other MS-13 gang members to discuss, among other things: the structure and organization of the gang; past criminal acts committed against rival gang members and others; MS-13 members who were arrested or incarcerated; the disciplining of MS-13 members; police interactions with MS-13 members; the identities of gang members and gang associates suspected of cooperating with law enforcement and the proposed actions to be taken against such members and associates; plans and agreements regarding the commission of future crimes, including murder, extortion, narcotics distribution, robbery, illegal possession of firearms, and assault, as well as ways to conceal these crimes; and the enforcement of gang rules.

It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to purchase, maintain, and circulate a collection of firearms for use in criminal activity by MS-13 members.

It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed that acts of violence, including murder, attempted murder, and

> assault, would be committed by members and associates of MS-13 against rival gang members and others when it suited the enterprise's purposes. MS-13 members also used violence to impose discipline within the gang.
>
> It was further part of the manner and means of the conspiracy that the defendants and other members and associates of MS-13 agreed to distribute narcotics, to use the telephone to facilitate narcotics distribution, to commit robbery, extortion, and other crimes, and to conceal their criminal activities by obstructing justice, threatening or intimidating witnesses, and other means.

Count Four of the Indictment charges Yester Ayala, with Murder in Aid of Racketeering and reads:

> On or about November 6, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Louis Alberto Membreno-Zelaya, in violation of D.C. Code, Sections 22-2101 and 4502 .

Count Five of the Indictment is what lawyers sometimes refer to as a companion count, and it charges Yester Ayala, with First Degree Murder While Armed (Premeditated), in violation of provisions of the District of Columbia Code, and it reads:

> Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals whose identity is known to the Grand Jury, within the District of Columbia, while armed with a

> dangerous weapon, that is a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Louis Alberto Membreno-Zelaya by stabbing him with a knife or other sharp object on or about November 6, 2008, thereby causing injuries from which died on or about November 6, 2008.

Counts Six and Seven are similar to Counts Four and Five in that they too are companion counts.

Count Six of the Indictment charges Yester Ayala, with Murder in Aid of Racketeering and reads:

> On or about December 12, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, unlawfully and knowingly, did murder Giovanni Sanchez in violation of D.C. Code, Sections 22-2101 and 4502.

Count Seven of the Indictment charges Yester Ayala, with First Degree Murder While Armed (Premeditated), in violation of provisions of the District of Columbia Code, and it reads:

> Yester Ayala, also known as Freeway, also known as Daddy Yankee, and other individuals both known and unknown to the Grand Jury, within the District of Columbia, while armed with a dangerous weapon, that is, a knife or other sharp object, purposely and with deliberate and premeditated malice, killed Giovanni Sanchez by stabbing him with a knife or other sharp object on or about December 12, 2008, thereby causing injuries from which Giovanni Sanchez died on or about December 12, 2008.

Because the homicide charged in Count Eight occurred in Maryland there is no companion count to that charge. <u>Count Eight</u> of the Indictment charges Noe Machado-Erazo and Jose Martinez-Amaya with Murder in Aid of Racketeering and reads:

> On or about March 28, 2010, in the District of Maryland, as consideration for the receipt of, and as consideration for a promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendants, Noe Machado-Erazo, also known as Gallo and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully and knowingly, did murder Felipe Enriquez, in violation of Maryland Code Criminal Law, Sections 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland.

<u>Count Nine</u> of the Indictment charges Noe Machado-Erazo and Jose Martinez-Amaya with Possession of a Firearm During and in Relation to a Crime of Violence and reads:

> On or about March 28, 2010, in the District of Columbia, the defendants, Noe Machado-Erazo, also known as Gallo; and Jose Martinez-Amaya, also known as Crimen, also known as Mecri, and another individual whose identity is known to the Grand Jury, unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Murder in Aid of Racketeering and did discharge a firearm in furtherance of the offense charged in Count Eight of this Indictment.

You should understand clearly that the indictment that I just summarized is not evidence. The indictment is just a formal way of charging a person with a crime in order to bring

him to trial. You must not think of the indictment as any evidence of the guilt of the defendants, or draw any conclusion about the guilt of the defendants just because they have been indicted.

At the end of the trial, you will have to decide whether or not the evidence presented has convinced you beyond a reasonable doubt that the defendants committed the offenses with which they have been charged.

Elements of Count One: Three of the defendants have been charged with RICO Conspiracy. In order to satisfy its burden of proof as to Count One, the government must prove the following four elements beyond a reasonable doubt:

> FIRST: That an enterprise existed as charged in the Indictment;
>
> SECOND: That the enterprise affected interstate or foreign commerce;
>
> THIRD: That the defendant was associated with or employed by the enterprise; and
>
> FOURTH: That the defendant knowingly and willfully became a member of the conspiracy. The conspiracy charged in the indictment is to participate in the conduct of the affairs of the enterprise, and that the enterprise engaged in a pattern of racketeering activity.

An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and it must have personnel who function as a continuing unit. This group of people does not have to be a legally cognizable entity, such as a partnership or a corporation. This group

may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose. In order to prove a conspiratorial agreement, the government must establish that at least two or more persons entered the unlawful agreement charged in the Indictment, that is an agreement to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity; and that the defendant knowingly and willfully became a member of the conspiracy. The focus of this element is on the defendant's agreement to participate in the objective of the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit individual criminal acts. The government must prove that the defendant participated in some manner, however slight, in the overall objective of the conspiracy, and that the conspiracy itself involved, or would have involved, the commission of two racketeering acts. The phrase "Pattern of Racketeering Activity" requires at least two acts of racketeering activity that are related to the enterprise and to each other and that pose a threat of continued criminal activity. It is not sufficient for the government to prove only that two of the racketeering acts were committed or intended to be committed. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not constitute a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity. To prove that the acts of racketeering are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events. To prove that the racketeering acts pose a threat of continued racketeering activity, the government must establish that the acts are part of a long-term association that exists for criminal purposes.

<u>Elements of Counts Four, Six, and Eight</u>: In Counts Four, Six, and Eight, defendants are charged with Murder in Aid of Racketeering, sometimes referred to as VICAR Murder.  Specifically, Yester Ayala is charged with Murder in Aid of Racketeering in Counts Four and Six, and Noe Machado-Erazo and Jose Martinez-Amaya are charged in Count Eight.

The elements of the offense of Murder in Aid of Racketeering, each of which the government must prove beyond a reasonable doubt, are:

> FIRST: That an enterprise affecting interstate or foreign commerce existed;
>
> SECOND: That the enterprise was engaged in racketeering activity;
>
> THIRD: That the defendant had a position in the enterprise;
>
> FOURTH: That the defendant committed or aided and abetted in the commission of the alleged murder; and
>
> FIFTH: That the defendant's general purpose in committing the murder was to maintain or increase his position in the enterprise.

The last element of that offense requires that the government must establish that the defendant's general purpose in committing or aiding and abetting the commission of the charged crime of violence was to maintain or increase his position in the enterprise. The government is required to prove that the defendant's general purpose was to maintain or increase his position in the enterprise. The government is not required to prove that it was the defendant's sole or principal motive. In determining whether a defendant's purpose in committing the crime of violence was to maintain or increase his position in the enterprise, you should give the words "maintain" and "increase" their ordinary meanings.

Elements of Count Five and Counts Seven: Count Five and Count Seven of the Indictment charge Yester Ayala, with First Degree Murder While Armed (Premeditated) under the District of Columbia Code. Count Five involves the alleged murder of Louis Alberto Membreno-Zelaya, and Count Seven involves the alleged murderof Giovanni Sanchez. The elements of First Degree Murder While Armed (Premeditated) which the government must prove beyond a reasonable doubt are:

> FIRST: The defendant caused the death of the decedent;
>
> SECOND: The defendant intended to kill the decedent;
>
> THIRD: The defendant did so after premeditation; and
>
> FOURTH: The defendant did so after deliberation.

Premeditation means forming an intent to kill. To premeditate is to give thought, before acting, to taking a human life, and then to reach a definite decision to kill. Deliberation means considering and reflecting on the intent to kill, turning it over in the mind, giving it second thought. Premeditation—the formation of an intent to kill—may be instantaneous, as quick as thought itself. Deliberation, however, requires some time to have elapsed between formation of this intent and the fatal act, within which one pauses and actually gives second thought and consideration to the intended act. The law does not require that deliberation take any particular amount of time. It can be days, hours or minutes, or it can be as brief as a few seconds. It varies according to the circumstances of each case. It is the fact of deliberation that the government must prove, not the length of time it may have gone on.

Elements of Count Nine: Finally, in Count Nine of the Indictment the defendants Noe Machado-Erazo and Jose Martinez-Amaya are charged with using, carrying, and discharging a firearm

during and in relation to a crime of violence, the VICAR murder in Count Eight of this Indictment. The elements of that offense, each of which the government must prove beyond a reasonable doubt, are:

> FIRST: the defendant committed a crime of violence for which he might be prosecuted in a court of the United States.
>
> SECOND: the defendant knowingly used or carried a firearm during and in relation to the commission of, or knowingly possessed a firearm in furtherance of, the crime charged in Count Eight.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with the defendant throughout the trial unless and until he is proven guilty beyond a reasonable doubt. The burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. If you find that the government has proven beyond a reasonable doubt every element of a particular offense with which the defendant is charged, it is your duty to find him guilty of that offense. On the other hand, if you find that the government has failed to prove any element of a particular offense beyond a reasonable doubt, you must find the defendant not guilty of that offense.

As I explain how the trial will proceed, I will refer to the "government" and to the "defense" or the "defendants."  When I mention the "government," I am referring to the two attorneys who are presenting the evidence in support of the charges contained in the Indictment. In this case, it is Assistant United States Attorney Nihar Mohanty and Laura Gwinn, a Trial Attorney with the United States Department of Justice. When I mention the defendants or the defense, I am referring either to Mr. Machado-Erazo, Mr. Martinez-Amaya, and Mr. Ayala, or to

their attorneys, Ms. West, Mr. Virgilio, or Mr. Ponds.

As the first step in this trial, the government and the defendants will have an opportunity to make opening statements. Each defendant has an option. Each defendant may make an opening statement immediately after the government's opening statement, or he may wait until the beginning of the defendants' cases, or he may choose not to make an opening statement at all. You should understand that the opening statements are not evidence. They are only intended to help you understand the evidence that the lawyers expect will be introduced.

After the opening statement or statements, the government will put on what is called its case-in-chief. This means that the government will call witnesses to the witness stand and ask them questions. This is called direct examination. When the government is finished, the defense may ask questions. This is called cross-examination. When the defense is finished, the government may have brief re-direct examination. After the government presents its evidence, the defendants may present evidence, but they are not required to do so. The law does not require a defendant to prove his innocence or to produce any evidence. If the defense does put on evidence, Ms. West, Mr. Virgilio, or Mr. Ponds will call witnesses to the stand and ask questions on direct examination, the government will cross-examine, and the defense may have brief re-direct examination. When the defense is finished, the government may offer a rebuttal case, which would operate along the same lines as its case-in-chief.

At the end of all of the evidence, each side will have an opportunity to make a closing argument in support of its case. The lawyers' closing arguments, just like their opening statements, are not evidence in this case. They are only intended to help you understand the evidence.

Finally, at the end of the evidence and after both sides have finished closing arguments, I will tell you in detail about the rules of law that you must follow when you consider what your verdicts shall be. Your verdicts must be unanimous; that is, all twelve jurors must agree on the verdicts.

I want to briefly describe my responsibilities as the judge and your responsibilities as the jury. My responsibility is to conduct this trial in an orderly, fair, and efficient manner, to rule on legal questions that come up in the course of the trial, and to instruct you about the law that applies to this case. It is your sworn duty as jurors to accept and apply the law as I state it to you.

Your responsibility as jurors is to determine the facts in the case. You—and only you—are the judges of the facts. You alone determine the weight, the effect, and the value of the evidence, as well as the credibility or believability of the witnesses. You must consider and weigh the testimony of all witnesses who appear before you. You alone must decide the extent to which you believe any witness.

You must pay very careful attention to the testimony of all of the witnesses because you will not have any transcripts or summaries of the testimony available to you during your deliberations. You will have to rely entirely on your memory and your notes if you choose to take any.

During this trial, I may rule on motions and objections by the lawyers, make comments to lawyers, question the witnesses, and instruct you on the law. You should not take any of my statements or actions as any indication of my opinion about how you should decide the facts. If you think that somehow I have expressed or even hinted at any opinion as to the facts

in this case, you should disregard it. The verdict in this case is your sole and exclusive responsibility.

You may consider only the evidence properly admitted in this case. That evidence includes the sworn testimony of witnesses and the exhibits admitted into evidence. Sometimes a lawyer's question suggests the existence of a fact, but the lawyer's question alone is not evidence. If the evidence includes anything other than testimony and exhibits, I will instruct you about these other types of evidence when they are admitted during the trial.

During the trial, if the court or a lawyer makes a statement or asks a question that refers to evidence that you remember differently, you should rely on your memory of the evidence during your deliberations.

The lawyers may object when the other side asks a question, makes an argument, or offers evidence that the objecting lawyer believes is not properly admissible. You must not hold such objections against the lawyer who makes them or the party he or she represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If I sustain an objection to a question asked by a lawyer, the question must be withdrawn, and you must not guess or speculate what the answer to the question would have been. If a question is asked and answered, and I then rule that the answer should be stricken from the record, you must disregard both the question and the answer in your deliberations. You should follow this same rule if any of the exhibits are stricken.

During the course of this trial, you may hear certain tape recorded conversations which were obtained through the use of wire interceptions, commonly referred to as "wire taps." The term "intercept" means to obtain the contents of any wire or oral communication by using an

intercepting device. The wire interceptions, or wiretaps, in this case were court-ordered, that is, they were approved by a judge, and the government's use of these interceptions was lawful.

During the course of this trial, you may also hear the phrase "consensual tape recording." This term should not be confused with the phrase "wire interception" or "wiretap." A wire interception or wiretap is a court-ordered interception of communications which does not require the consent of the parties to the conversation. A consensual tape recording, on the other hand, is a recording where one party to the conversation consents to the conversation being tape recorded. It is lawful to conduct consensual tape recordings, and the other party or parties to the conversation do not have to consent to the taping. Consensual tape recorded conversations may occur over the telephone or face to face.

You are not permitted to discuss this case with anyone until this case is submitted to you for your decision at the end of my final instructions. This means that, until the case is submitted to you, you may not talk about it even with your fellow jurors. This is because we don't want you making decisions until you've heard all the evidence and the instructions of law. In addition, you may not talk about the case with anyone else. It should go without saying that you also may not write about the case electronically through any blog, posting, or other communication, including "social networking" sites such as Facebook or Twitter until you have delivered your verdict and the case is over. This is because you must decide the case based on what happens here in the courtroom, not on what someone may or may not tell you outside the courtroom. I'm sure that, when we take our first recess, you will call home or work and tell them you have been selected for a jury. They will undoubtedly ask what kind of case you're sitting on. You may tell them it is a criminal case, but nothing else. Now, when the case is over, you may discuss any part of it with anyone you wish, but until then, you may not do so.

Although it is a natural human tendency to talk with people with whom you may come into contact, you must not talk to any of the parties, their attorneys, or any witnesses in this case during the time you serve on this jury. If you encounter anyone connected with the case outside the courtroom, you should avoid having any conversation with them, overhearing their conversation, or having any contact with them at all. For example, if you find yourself in a courthouse corridor, elevator, or any other location where the case is being discussed by attorneys, parties, witnesses, or anyone else, you should immediately leave the area to avoid hearing such discussions. If you do overhear a discussion about the case, you should report that to me as soon as you can. Finally, if you see any of the attorneys or witnesses involved in the case and they turn and walk away from you, they are not being rude; they are merely following the same instruction that I gave to them.

It is very unlikely, but if someone tries to talk to you about the case, you should refuse to do so and immediately let me know by telling the clerk or the marshal. Don't tell the other jurors; just let me know, and I'll bring you in to discuss it.

Between now and when you are discharged from jury duty, you must not provide to or receive from anyone, including friends, co-workers, and family members, any information about your jury service. You may tell those who need to know where you are, that you have been picked for a jury, and how long the case may take. However, you must not give anyone any information about the case itself or the people involved in the case. You must also warn people not to try to say anything to you or write to you about your jury service or the case. This includes face-to-face, phone, or computer communications.

In this age of electronic communication, I want to stress that you must not use electronic devices or computers to talk about this case, including tweeting, texting, blogging, e-

mailing, posting information on a website or chat room, or any other means at all. Do not send or accept messages, including email and text messages, about your jury service. You must not disclose your thoughts about your jury service or ask for advice on how to decide any case.

You must decide the facts based on the evidence presented in court and according to the legal principles about which I will instruct you. You are not permitted, during the course of the trial, to conduct any independent investigation or research about the case. That means, for example, you cannot use the Internet to do research about the facts or the law or the people involved in the case. Research includes something even as simple or seemingly harmless as using the Internet to look up a legal term or view a satellite photo of the scene of the alleged crime.

I want to explain the reasons why you should not conduct your own investigation. All parties have a right to have the case decided only on evidence and legal rules that they know about and that they have a chance to respond to. Relying on information you get outside this courtroom is unfair because the parties would not have a chance to refute, correct, or explain it. Unfortunately, information that we get over the Internet or from other sources may be incomplete or misleading or just plain wrong. It is up to you to decide whether to credit any evidence presented in court and only the evidence presented in court may be considered. If evidence or legal information has not been presented in court, you cannot rely on it.

Moreover, if any of you do your own research about the facts or the law, this may result in different jurors basing their decisions on different information. Each juror must make his or her decision based on the same evidence and under the same rules.

In some cases, there may be reports in the newspaper or on the radio, Internet, or television concerning the case while the trial is ongoing. If there should be such media coverage

in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention during trial, do not discuss it with other jurors or anyone else. Just let me or my Deputy Clerk, Ms. White, know as soon after it happens as you can, and I will then briefly discuss it with you.

After I submit the case to you, you may discuss it only when I instruct you to do so, and only in the jury room and only in the presence of all your fellow jurors. It is important that you keep an open mind and not decide any issue in the case until after I submit the entire case to you with my final instructions.

The defendants and some witnesses will use the services of a Spanish language interpreter in this trial.

The interpreter is provided by the court and is a neutral participant in this trial. You should not be biased for or against anyone who uses an interpreter. Do not permit the fact that a witness or the defendants are using the services of an interpreter to influence you in any way.