**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **NOE MACHADO ERAZO,** | **:** | **CRIMINAL NO.  10-256-8 (RCL)** |
| **also known as Gallo,** | **:** | |
| | **:** | **CRIMINAL NO.  10-256-9 (RCL)** |
| **and** | **:** | |
| | **:** | |
| **JOSE MARTINEZ-AMAYA,** | **:** | |
| **also known as Crimen,** | **:** | |
| **Defendants.** | **:** | |

**OPPOSITION TO DEFENDANTS' MOTIONS FOR NEW TRIAL**

The United States, by its undersigned counsel, hereby opposes defendant Noe Machado

Erazo's Motion for Stay, for Show Cause, and New Trial (Doc. 498) which defendant Jose

Martinez-Amaya's seeks to adopt (Doc. 500).  The defendants contend that they are entitled to a

new trial because on May 14, 2014, the government received reports that one of its cooperating

witnesses, Manuel Saravia, was found in possession of contraband while incarcerated at the

Northern Neck Regional Jail.  As demonstrated below, because the Northern Neck jail is not part

of the prosecution team and because these infractions are not material, the Court should deny the

defendants' request.

I.     **FACTUAL BACKGROUND**

As the Court knows well, after a lengthy trial, the jury found the defendants guilty of

RICO conspiracy (Count One of the superseding indictment), VICAR murder (Count Eight) and

possession of a firearm during a crime of violence (Count Nine).  *See* Memorandum Opinion

Denying Defendants' New Trial Motions (Doc. 437).   What the Court may not know is that,

because of the volume of *Giglio* and *Jencks* materials in this case, the government began to

provide *Giglio* and *Jencks* material for cooperating witnesses to defense counsel one month before trial began. *See* March 13, 2013 Order (Doc. 305) at 1-2. The government disclosed Mr. Saravia's plea agreement, plea proffer, and the related reports of investigation (ROIs) to defense counsel on May 20, 2013.[1] Mr. Saravia's trial testimony began on June 27, 2013. In response to questions in direct examination, he admitted his guilt in numerous offenses including obtaining firearms with dues from members of his clique (6/27 P.M. Tr. at 14-15) and extorting drug dealers and prostitution houses (6/27 P.M. Tr. at 16-17). He also admitted to violent crimes including assaulting someone with a stick outside Irene's restaurant (6/27 P.M. Tr. at 21) and aiding and abetting an attempted murder by a fellow MS-13 member known as "Pava." (6/27 P.M. Tr. at 24-29). Finally, he admitted assisting defendants Noe Machado Erazo and Jose Martinez Amaya in the murder of Felipe Enriquez, also known as "Zombie." *See* 6/27 A.M. Tr. 73-87.

Defense counsel vigorously cross-examined Mr. Saravia on several matters including the nature and timing of his plea agreement, his lack of memory, and suggested that Mr. Saravia was actually the person who shot Mr. Enriquez (6/27 P.M. Tr. at 82-86). On July 8, 2013, following a week long break in the trial, Ms. West began her cross-examination of Mr. Saravia. She questioned him regarding the timing and nature of his plea agreement (7/8 A.M. Tr. at 4-8). She also vigorously cross-examined Mr. Saravia on several crimes he committed for MS-13 including robberies and "shake downs" (7/8 A.M. Tr. at 15-16), his role in getting guns for the

---

[1] The government was not obligated to provide these materials that far in advance of trial. *See, e. g., United States v. Edelin*, 128 F. Supp. 2d 23, 31-33 (D.D.C. 2001) (approving of disclosure of *Jencks* and *Giglio* material on Thursday before witness expected to testify to balance needs of defendant, security risks, and trial efficiency); *United States v. Willis*, 997 F.2d 407 (8th Cir.), *cert. denied*, 510 U.S. 1050 (1993) (noting that FBI reports of conversations with cooperating witnesses are not *Jencks* of the cooperating witness unless the witness signs or adopts the report).

clique and his alleged use of a machete to intimidate victims (7/8 Tr. A.M. at 16-18).   Ms. West suggested through her questioning that Mr. Saravia, and not her client, was responsible for Enriquez' murder (7/8 A.M. Tr. 25; 32-33).  Ms. West questioned Mr. Saravia for approximately two hours.  His testimony concluded on July 8, 2013.

On May 13, 2014, a marshal responsible for transporting Mr. Saravia to the United States District court for sentencing by the Honorable Rosemary M. Collyer, contacted counsel for the government to inquire about scheduling and to ask if he should be aware of any safety risk involving Mr. Saravia.  The marshal informed undersigned counsel that Mr. Saravia had on several occasions been found in possession of contraband at the Northern Neck Regional Jail (Northern Neck).  Government counsel was unaware of these incidents and asked for copies of the reports.[2]  Government counsel sent copies of the reports to Judge Collyer, counsel for Mr. Saravia, and, on the following day, on May 15, 2014, sent them to counsel for Machado-Erazo and Martinez-Amaya.  (Government counsel had intended to send a follow up letter to defense counsel but was delayed with other matters.)  The defendants then filed the present motions.

## II.      ARGUMENT

### a.    Legal Standards

As the Court is well-aware, a motion for a new trial should only be granted if the "interest of justice so requires."  Fed. R. Crim. P. 33; *see also United States v. Walker*, 899 F. Supp. 14, 15 (D.D.C. 1995) (new trial should only be granted if the error was not harmless and affected a defendant's substantial rights).   A defendant claiming a *Brady* violation must show that (1) the government suppressed evidence, purposely or inadvertently; (2) that the evidence was favorable

---

[2] The reports are attached as Exhibit 1.  They indicate that on several occasions Mr. Saravia was found in possession of a shank or other contraband while incarcerated at the Northern Neck facility.  As the Court will note, in some of the reports, it is not clear whether Mr. Saravia or his cell mate possessed the contraband, however, there are at least two instances (March 26, 2012 and June 12, 2012) in which jail officials found a shank on Mr. Saravia.

to the defendant; and (3) that the violation resulted in prejudice. *See United States v. Emor*, 573 F.3d 778, 782 (D.C. Cir. 2009) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

      **b.**    **The government did not suppress evidence.**

It is well-settled that *Brady* does not require the government to seek exculpatory information from third parties. *See United States v. Hach*, 162 F.3d 937, 947 (7th Cir. 1998), *cert. denied*, 526 U.S. 1103 (1999). The government simply did not have the reports of Mr. Saravia's jail infractions until May 14, 2014. Prior to that date, those reports were in the sole possession of personnel at Northern Neck, a jail of the Commonwealth of Virginia, with which the United States Marshal for the District of Columbia contracts to house prisoners. Further, neither the D.C. Department of Corrections nor the Bureau of Prisons and certainly not the Northern Neck facility can be classified as the "government" for purposes of this prosecution.[3] *See, e. g., United States v. Pelullo*, 399 F.3d 197, 216-18 (3rd Cir. 2005), *cert. denied*, 546 U.S. 1137 (2006) (civil branch of Department of Labor not part of the prosecution team in prosecution of embezzlement and conspiracy offenses); *see also United States v. Avellino*, 136 F.3d 249, 255 (2nd Cir. 1998) (refusing to adopt a "monolithic view of the government"); *United States v. Battle*, 264 F.Supp. 2d 1088, 1201-02 (N.D. Ga. 2003) (BOP is not part of the prosecution team).

Moreover, the government did not "keep itself in ignorance" about Mr. Saravia's criminal history and other impeachable information. *See United States v. Young*, 20 F.3d 758, 764-65 (7th Cir. 1994). In *Young*, the government disclosed a cooperating witness' plea agreement and the results of its criminal history check of the witness to defense counsel before trial. *Id.* at 762.

---

[3] In reviewing this matter after receiving the reports, government counsel learned that Mr. Saravia had at one time told the Special Agent Jason Brumbelow, the lead agent on the case, that he (Mr. Saravia) told a jail official that he was thinking of hurting himself so that he would be placed in solitary confinement. The government recognizes that it is charged with knowledge of this statement under *Brady*, but it is at best unclear whether this statement is favorable to the defendants. In any case, as explained in this memorandum, because defense counsel impeached Mr. Saravia at length on his faulty memory and his incentive to lie, the statement is not material under *Brady*.

The jury found the defendant guilty. After trial, during the pre-sentence investigation of the witness, the probation office discovered additional criminal history of the defendant from Mississippi. *Id.* The government then disclosed this information, and the defendant moved for a new trial. The trial court denied the motion, and the Seventh Circuit affirmed. The Seventh Circuit found that the government had diligently searched for impeachment evidence against the witness and disclosed such evidence. Thus, it refused to impute the results of the probation office's later investigation to the government, and it found that the government had not suppressed evidence under *Brady. Id.* at 764-65.

Similarly, in this case, as noted above, the government provided extensive impeachment information regarding Mr. Saravia and other government witnesses well in advance of trial, and well before it was required to under this Court's precedents. Mr. Saravia's infractions at Northern Neck, of course, did not appear on an NCIC check. Further, Northern Neck officials did not share the information with the government counsel in this matter or other members of the government's prosecution team. Accordingly, it can not reasonably be charged that the government suppressed evidence in this case.[4] *Young,* 20 F.3d at 764-65.

### c. **Mr. Saravia's jail infractions are not material.**

To satisfy the prejudice element of a *Brady* violation, "the withheld evidence must be 'material;' that is, there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Johnson*, 519 F.3d 478, 488 (D.C. Cir. 2008) (quoting *Strickler v. Greene, supra*, 527 U.S. at

---

[4] It is not clear if the records from Northern Neck were available via subpoena. Even if they were, the defendants fare no better. *Brady* does not require the government to conduct an investigation for the defense. *United States v. Senn,* 129 F.3d 886, 893 (7th Cir. 1997), *abrogated on other grounds, United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); *see also Willis*, 997 F.2d at 412. The defendants knew no later than October 31, 2012 that Mr. Saravia was held at the Northern Neck facility. *See* 10/31/12 Tr. at 20 (counsel for Mr. Saravia discusses medical treatment issues at Northern Neck). Mr. Saravia himself testified that he was being held at Northern Neck on the first day he testified. *See* 6/27 A.M. Tr. at 60. If one assumes the government could have subpoenaed his jail records, the defendants could have easily done the same. *Senn,* 129 F.3d at 893.

280).  Impeachment evidence is immaterial when it is cumulative in nature and "the witness has already been impeached at trial by the same kind of evidence."  *Emor,* 573 F.3d 782 (quoting *United States v. Cuffie*, 80 F.3d 514, 517 (D.C. Cir. 1996).

Here, viewed in the context of the serious matters with which defendants impeached him at trial, Mr. Saravia's infractions at Northern Neck are plainly not material.  As noted above, at trial, he was cross-examined at length regarding crimes he committed including robberies, "shakedowns," and possessing firearms and a machete.  *See* 7/8 A.M. Tr. at 15-18.  He was also repeatedly questioned as to his own involvement in the murder of Felipe Enriquez.  *See* 7/8 A.M. Tr. 25; 32-33.  Further, the defendant admitted numerous crimes in direct examination, including obtaining firearms for the clique and extortion.  *See* 6/28 A.M. Tr. at 14-17.  Mr. Saravia testified under a cooperation plea agreement and admitted that he was guilty of attempted murder and murder.  Accordingly, his possession of a shank while incarcerated is clearly not material.[5]  *See United States v. Hemphill*, 514 F.3d 1350, 1360-61 (D.C. Cir.), *cert. denied*, 555 U.S. 1020 (2008) (witness's undisclosed arrests for theft not material when he pled guilty to stealing much more money and was impeached with his prior lies); *Emor,* 573 F.3d at 782-83 (undisclosed prior statement of witness not material when witness's credibility was attacked repeatedly based on his prior lies).

Moreover, "[w]hen the undisclosed *Brady* material consists of impeachment evidence, a court seeking to determine the probable impact of the violation must form some idea about how effectively the evidence could have been used in cross-examination."  *United States v. Bowie*,

---

[5] The defendants incorrectly characterize Mr. Saravia's jail infractions as "severe bad acts" which are "felonies under the D.C. Code."  Defs.' Mtn. (Doc. 498) at 2-3.  Mr. Saravia's infractions at Northern Neck could not be prosecuted in the District of Columbia or by this office.  *See United States v. Lauoue*, 137 F.3d 656, 661 (1st Cir. 1998) (defendant charged with illegal possession of a firearm by a felon may only be prosecuted where the defendant possessed the firearm).  Finally, in any event, the infractions would likely be misdemeanors under District of Columbia law.  *See* D.C. Code 22-4514(b) and 22-4515 (possession of a prohibited weapon with intent to use is punishable by not more than one year incarceration).

198 F.3d 905, 911 (D.C. 1999).  Mr. Saravia testified that other members of the gang had put a "green light" on him for refusing to kill Michelle Rios.  *See* 6/27 P.M. Tr. at 40-45.  It is hardly surprising, then, that he would attempt to protect himself while incarcerated.  The jury, in all likelihood, would not have been troubled by Mr. Saravia's possession of shanks while incarcerated.[6]  *See Bowie*, 198 F.3d at 911.

WHEREFORE, for the foregoing reasons, the government requests that the Court deny the defendants' motions.

Respectfully submitted,

RONALD C. MACHEN JR.
UNITED STATES ATTORNEY
D.C. Bar No. 447-889

BY:        _____/s/_____
NIHAR R. MOHANTY
Assistant United States Attorney
D.C. Bar No. 436-686
555 Fourth Street, N.W., Room 4120
Washington, D.C. 20530
(202) 252-7700
nihar.mohanty@usdoj.gov (email)

_____/s/_____
LAURA GWINN
Trial Attorney
United States Department of Justice
Criminal Division
1301 New York Avenue, NW
Washington, D.C.
(202) 353-9178
laura.gwinn@usdoj.gov (email)

---

[6] Mr. Saravia explained why he possessed a shank on one occasion to the probation officer who prepared his pre-sentence report.  The government will provide a copy of the relevant portions of that report *in camera* in a supplement to this filing.