IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLUMBIA

UNITED STATES OF AMERICA　　　*

　　v.　　　　　　　　　　　　*　Case No. 10-256-RCL

MOISES HUMBERTO RIVERA-LUNA　*

*　*　*　*　*

## DEFENDANT MOISES HUMBERTO RIVERA- LUNA'S MOTION IN LIMINE TO EXCLUDE GUATEMALAN DETENTION RECORDS

Defendant Moises Humberto Rivera-Luna, through undersigned counsel, respectfully moves this Court for an order excluding certain records that the government seeks to introduce at trial purportedly originating from a Guatemalan detention facility. The government has provided notice that it intends to introduce approximately nine pages of records relating to Mr. Rivera-Luna that allegedly contain information regarding his family members, emergency contacts, aliases, visitors, and related administrative information. The government acknowledges that the records were initially received informally from the Guatemalan government and that it is awaiting official certification.

Even assuming the government ultimately obtains a certification under Federal Rule of Evidence 902 or 18 U.S.C. § 3505, the records are inadmissible. The certification procedures contemplated by those provisions address only the method of authentication. They do not cure the more fundamental defects presented here:1) the government cannot establish the reliability required for admission under the business-records exception, 2) the records are irrelevant to the charged conspiracy, 3) their minimal probative value is substantially outweighed by the risk of jury confusion and unfair prejudice under Rule 403. For these reasons, the Guatemalan detention records should be excluded.

1

## I.    BACKGROUND

On November 14, 2025, the government filed a motion in limine seeking to admit several categories of records allegedly generated by prison authorities in El Salvador during a period when the government contends Mr. Rivera-Luna was incarcerated there between approximately 2010 and 2012. The records the government sought to introduce included purported prison location records, alleged gang-affiliation and nickname records, a release-date record, and a visitor log.  The government acknowledged that El Salvador had refused to provide the certification necessary to admit those records under the public-records hearsay exception. Instead, the government argued that the documents should be admitted under Federal Rule of Evidence 807, the residual hearsay exception. Mr. Rivera-Luna opposed the motion.

On November 25, 2025, this Court denied the government's motion. The Court concluded that the government had failed to satisfy the requirements of Rule 807, particularly the requirement that the proffered evidence be "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  In analyzing the government's proffer, the Court observed that the government's explanation failed to address several of the records it sought to introduce and did not demonstrate why the documents were necessary considering other available evidence. The Court further emphasized that the burden rests on the party seeking to introduce evidence to establish both relevance and admissibility.

The government now seeks to introduce a different set of foreign detention records, this time purportedly originating from a detention facility in Guatemala. According to the government's notice, the records allegedly contain information regarding family members, emergency contacts, aliases, and visitor information associated with Mr. Rivera-Luna.

Despite the Court's prior ruling rejecting the government's attempt to admit foreign prison

2

records, the government now seeks to introduce another set of foreign detention documents that suffer from similar, and in some respects even greater, evidentiary deficiencies.

## II.    ARGUMENT

### A.  **Certification Does Not Establish Admissibility.**

The government appears to assume that once it receives certification from Guatemalan authorities, the records will automatically become admissible. That assumption is incorrect. Certification under Federal Rule of Evidence 902 or 18 U.S.C. § 3505 merely provides a mechanism for authenticating foreign business records through written certification rather than live testimony. It does not eliminate the Court's obligation to determine whether the records are otherwise admissible under the Federal Rules of Evidence.  Thus, even where certification exists, courts must independently evaluate whether the records are reliable and admissible.

Federal Rule of Evidence 902 governs the self-authentication of certain categories of documents. Under Rule 902(3), foreign public documents may be deemed self-authenticating if they are accompanied by a certification attesting to the genuineness of the signature and official position of the person executing the document. Similarly, Rule 902(11) permits the admission of domestic business records through a written certification from a custodian of records rather than live testimony, provided the certification establishes the foundational elements required by Federal Rule of Evidence 803(6).

Congress created a comparable procedure for foreign business records in criminal cases through 18 U.S.C. § 3505. That statute permits a foreign record of regularly conducted activity to be admitted through a written certification from a foreign custodian rather than through in-court testimony. The statute requires that the certification establish that the record was made at or near the time of the events recorded, that the information was transmitted by a person with

knowledge, that the record was kept in the course of a regularly conducted business activity, and that making such a record was a regular practice of that activity. 18 U.S.C. § 3505(a).

However, neither Rule 902 nor § 3505 renders a document automatically admissible. Those provisions merely provide a mechanism for establishing authentication and foundational elements without live testimony. They do not eliminate the Court's responsibility to determine whether the evidence is otherwise admissible under the Federal Rules of Evidence.  For example, the statutory language of § 3505 itself recognizes this limitation. The statute expressly provides that foreign records may be admitted unless "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." 18 U.S.C. § 3505(a). Thus, the statute preserves the trial court's responsibility to examine whether the records possess the reliability necessary to justify their admission.

Accordingly, even if the government ultimately obtains a certification from Guatemalan authorities that satisfies the formal requirements of Rule 902 or § 3505, the Court must still determine whether the records themselves are reliable and whether their admission is appropriate under the Federal Rules of Evidence.  Here, certification would not cure the fundamental deficiencies present in the records the government seeks to introduce. The certification would not explain who provided the underlying information contained in the records, whether that information was verified, how it was entered into the detention system, or whether the information originated from the detainee himself or from unidentified third parties. Nor would certification establish that the information recorded in the documents was collected independently of the present investigation.  Because those deficiencies go to the reliability and probative value of the records themselves, certification under Rule 902 or § 3505 cannot render the records admissible.

4

This Court's prior ruling denying the government's attempt to admit Salvadoran prison records underscores that the existence of foreign detention documents does not, standing alone, establish their admissibility. As the Court previously emphasized, the burden rests squarely on the government to demonstrate both the relevance and evidentiary reliability of such records, and certification alone cannot satisfy that burden where the underlying records lack sufficient indicia of trustworthiness.

B.  **The Government Cannot Establish the Reliability Required by Rule 803(6).**

Federal Rule of Evidence 803(6) permits the admission of records of a regularly conducted activity only where the proponent establishes that the record was made at or near the time of the events recorded by, or from information transmitted by, a person with knowledge, that the record was kept in the course of a regularly conducted business activity, and that making such a record was a regular practice of that activity. The rule rests on the assumption that records maintained in the ordinary course of institutional activity possess sufficient indicia of reliability because they are created routinely and relied upon for operational purposes.  Courts have repeatedly recognized that the reliability of a business record depends not only on the procedures used to maintain the record but also on the reliability of the information provided to the record keeper. When the source of the information is an outsider to the record-keeping entity, the trustworthiness rationale underlying Rule 803(6) may not apply.

The records the government seeks to introduce here contain precisely this type of problematic information. According to the government's notice, the documents allegedly include entries concerning family members, emergency contacts, aliases, and visitor information associated with Mr. Rivera-Luna. Such information is typically derived from statements provided by detainees themselves or by unidentified third parties, rather than from observations

made by detention officials.  Even if the detention facility maintained the records in the ordinary course of its administrative activities, the underlying statements recorded within the documents remain hearsay unless the government can establish an independent exception for each layer of hearsay. See Fed. R. Evid. 805.  Certification under Rule 902 or 18 U.S.C. § 3505 does not resolve this problem. A certification may establish that the record was kept in the ordinary course of institutional activity, but it cannot establish the reliability of the underlying statements recorded in the document. If the information contained in the records was provided by detainees, visitors, or other third parties, the business-records exception does not automatically render those statements admissible.

Records incorporating unverified third-party statements may lack the guarantees of trustworthiness required by Rule 803(6). The rule itself explicitly preserves this safeguard, providing that records are admissible only if "the source of information or the method or circumstances of preparation do not indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). Similarly, the foreign-records statute invoked by the government preserves the same limitation, providing that foreign business records are admissible only where "the source of information or the method or circumstances of preparation indicate no lack of trustworthiness." 18 U.S.C. § 3505(a).  Here, the government has not demonstrated how the information contained in the Guatemalan detention records was originally collected, who provided the information, whether detention officials verified the information before entering it into the system, or what procedures exist to detect or correct inaccuracies. Without such information, the Court cannot determine whether the records possess the reliability necessary to justify admission under Rule 803(6).

These reliability concerns are particularly significant in this case because the records are offered not merely as administrative documents but as substantive evidence linking Mr. Rivera-

Luna to alleged co-conspirators and to purported aliases. Where records are used in this manner, the Court must scrutinize the reliability of the information contained within them. The Court's prior ruling denying the government's attempt to admit Salvadoran prison records illustrates the importance of such scrutiny. In that ruling, the Court emphasized that the government bears the burden of demonstrating both the relevance and admissibility of foreign detention records before they may be presented to the jury. Even if certification were ultimately obtained, the government has not shown that the Guatemalan detention records were created through procedures that ensure the reliability of the information contained within them. Because the reliability of the underlying information remains unknown, the records cannot satisfy the requirements of Rule 803(6) and should be excluded.

## C.  Foreign Government Records Require Heightened Scrutiny.

Records generated by foreign governmental institutions present unique reliability concerns that warrant scrutiny before they are admitted into evidence in a criminal trial. Unlike domestic records maintained by institutions subject to United States legal standards and evidentiary practices, foreign government records often originate from systems whose record-keeping procedures, verification protocols, and administrative practices are not subject to the same transparency or evidentiary safeguards. As a result, courts must carefully examine the circumstances under which such records were created and maintained before permitting them to be presented to a jury. In this case, the records originate from a foreign detention system and contain administrative entries regarding matters such as aliases, family members, and visitor information. The government has not provided any information describing the procedures used by Guatemalan detention authorities to collect, verify, or maintain such information. Nor has the government demonstrated that detention officials independently verified the information recorded

7

in the documents.  The government has not identified the individuals who entered the information into the detention system, the sources from which the information was obtained, or the procedures used to ensure the accuracy of the entries. Without such information, the Court cannot determine whether the records were created through reliable procedures or whether the information contained within them may have been derived from unverified statements made by detainees or other third parties.  These reliability concerns are compounded by the circumstances under which the records were obtained. The government acknowledges that the records were initially received informally from the Guatemalan government and that certification remains pending. Records obtained through law-enforcement channels during a criminal investigation may raise additional reliability concerns, particularly where the documents are produced in response to requests from U.S. authorities rather than as part of routine administrative activity.

The need for scrutiny is further reinforced by this Court's prior ruling addressing the government's attempt to introduce foreign prison records in this case. In denying the government's earlier motion to admit Salvadoran prison records, the Court emphasized that the government bears the burden of demonstrating both the relevance and admissibility of such records before they may be presented to the jury.  Without evidence explaining how the Guatemalan detention system collects, verifies, and maintains the information contained in these records, the Court cannot determine whether the documents possess the reliability necessary to justify their admission. Because foreign detention records present heightened risks of inaccuracy, misidentification, and unverifiable third-party input, courts must exercise caution before permitting such documents to be introduced at trial.  Thus, in the absence of a reliable evidentiary foundation demonstrating the trustworthiness of the records and the procedures used to generate them, the Guatemalan detention records should be excluded.

D. **The Records Are Not Relevant to the Charged Conspiracy.**

Under Federal Rule of Evidence 401, evidence is relevant only if it has "any tendency to make a fact more or less probable than it would be without the evidence," and if that fact is "of consequence in determining the action." Evidence that does not satisfy this threshold requirement is inadmissible. Fed. R. Evid. 402.

The government's theory of the case is that Mr. Rivera-Luna exercised authority over members of the alleged conspiracy while incarcerated in El Salvador. According to the government, communications with alleged members of the conspiracy occurred from prison facilities in El Salvador during the relevant period of the charged conspiracy. The records the government now seeks to introduce, however, originate from a detention facility in Guatemala. The government has not alleged that Mr. Rivera-Luna was incarcerated in Guatemala during the time of the charged conspiracy, nor has the government suggested that any of the alleged communications underlying the conspiracy occurred from Guatemala. Because the government's theory of the case is premised on alleged communications from El Salvadorian prisons, records from a detention facility in Guatemala do not make it probable that Mr. Rivera-Luna participated in the alleged conspiracy or communicated with its members. As a result, the records lack the basic relevance required by Rules 401 and 402.

The government may attempt to argue that the Guatemalan detention records are relevant to establish Mr. Rivera-Luna's identity. But evidence offered to prove identity must still possess probative value sufficient to assist the jury in determining a disputed fact. Here, the government has not demonstrated how administrative detention records from an unrelated foreign prison system meaningfully advance the identification of the individual who allegedly communicated with members of the conspiracy. Moreover, the government's identity theory suffers from the same reliability problems discussed above. The records allegedly contain information such as aliases,

9

family members, and visitor data, information that may have been supplied by detainees themselves or by unidentified third parties.  This sort of information could be entered into the detention system without verification. Evidence of such uncertain reliability does little to establish identity and therefore carries minimal probative value.  Therefore, because the Guatemalan detention records do not make any material fact in this case probable, they are not relevant and must be excluded under Rules 401 and 402.

### E.  The Records Should Be Excluded Under Rule 403.

Rule 403 permits the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time.  Here, the probative value of the Guatemalan detention records is minimal. As discussed above, the government's theory of the case centers on alleged communications made by Mr. Rivera-Luna while incarcerated in El Salvador. Records from a detention facility in Guatemala do not advance that theory.  At the same time, the risk of confusion and unfair prejudice is substantial. Introducing detention records from a foreign prison system that is unrelated to the alleged conspiracy may create significant confusion for the jury regarding the timeline and location of the alleged events. Jurors may mistakenly believe that the records reflect incarceration during the period of the charged conspiracy.  Most importantly, permitting the jury to learn that Mr. Rivera-Luna was incarcerated in a Guatemalan detention facility risks unfair prejudice because jurors may improperly infer that he has a history of criminal conduct an inference that would have little probative value yet could significantly influence the jury's evaluation of the evidence.

### III.    CONCLUSION

For all these reasons, the Guatemalan detention records the government seeks to introduce are inadmissible. Even if the government ultimately obtains certification under Federal Rule of Evidence 902 or 18 U.S.C. § 3505, such certification will address only authentication and would not cure the fundamental deficiencies discussed above. The government has failed to demonstrate that the records satisfy the requirements of the business-records exception, that they are relevant to the charged conspiracy, or that their probative value is not substantially outweighed by the risk of unfair prejudice and jury confusion. Accordingly, the Court should exclude the Guatemalan detention records from trial.

Respectfully submitted,

*Alfred Guillaume*

Alfred Guillaume III, #MD0085
Law Offices of Alfred Guillaume
III 1350 Connecticut Ave. NW,
#308
Washington, D.C. 20036

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 5th day of March 2026, a copy of the foregoing Motion was served electronically to all parties of record, including to the Office of the United States Attorney for the District of Columbia.

*Alfred Guillaume*

Alfred Guillaume III

11