## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

**TOKIRO RODAS-RAMIREZ** *and*
**MOISES HUMBERTO RIVERA-LUNA,**

*Defendants.*

**Case No. 10-cr-256-14, -16 (RCL)**

## FINAL JURY INSTRUCTIONS

Jury instructions as given by the Court in the above-captioned case on April 13–14, 2026.

Royce C. Lamberth
United States District Judge

To start, I will provide you with a copy of my instructions. During your deliberations, you may, if you want, refer to these instructions. While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole, and you may not follow some and ignore others. If you have any questions about the instructions, you should feel free to send me a note. Please return your instructions to me when your verdict is returned.

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions I provide you as a whole. You may not ignore or refuse to follow any of them.

Your function, as the jury, is to determine what the facts in this case are. You are the sole judges of the facts. While it was my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence. You alone decide the credibility or believability of the witnesses.

As human beings, we all have personal likes and dislikes, opinions, and prejudices, and biases. Generally, we are aware of these things, but you should also consider the possibility that you have implicit biases, that is, biases of which you may not be consciously aware. Personal prejudices, preferences, or biases have no place in a courtroom, where the goal is to arrive at a just and impartial verdict. All people deserve fair treatment in the legal system regardless of any personal characteristic, such as race, national or ethnic origin, religion, age, disability, sex, gender identity or expression, sexual orientation, education, or income level, or any other personal characteristic. You should determine the facts solely from a fair consideration of evidence.

You may not take anything that I may have said or done during the trial as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such

opinion, you should ignore it. The verdict in this case is your sole and exclusive duty and responsibility.

If any reference by me or by the attorneys to the evidence is different from your own memory of the evidence, it's your memory that should control during your deliberations.

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses here on the witness stand, the exhibits that were admitted into evidence, the facts of which I took judicial notice. and the facts stipulated to by the parties.

I may take what is called "judicial notice" of public acts, places, facts, and events that I consider to be matters of common knowledge or matters than can be determined easily through undisputed sources. In this case, I took judicial notice that Defendant Moises Humberto Rivera-Luna was convicted of misdemeanor Infliction of Corporal Injury on a Spouse or Cohabitant on November 29, 1994, in the Superior Court of Los Angeles, California, Case Number 94M04984. When I take judicial notice of a particular fact, you may regard the fact as proven evidence. Because you are the sole judge of the facts, however, you are not required to accept any fact that is judicially noted.

During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts. You should consider any stipulation of fact to be undisputed evidence.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

The statements and arguments of the lawyers are not evidence. They are only intended to assist you in understanding the evidence. Similarly, the questions of the lawyers are not evidence.

The indictment is merely the formal way of charging or accusing a person of a crime. You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of the defendants' guilt or draw any inference of guilt from it.

Every defendant in a criminal case is presumed to be innocent. This presumption of innocence remains with a defendant throughout the trial unless and until the government has proven that he is guilty beyond a reasonable doubt. This burden of proof never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence at all. If you find that the government has proven beyond a reasonable doubt every element of an offense with which a defendant is charged, it is your duty to find him guilty of that offense. On the other hand, if you find the government has failed to prove any element of an offense beyond a reasonable doubt, it is your duty to find that defendant not guilty of that offense.

The government has the burden of proving the defendants guilty beyond a reasonable doubt. In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable. In criminal cases like this one, the government's proof must be more powerful than that. It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case. If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason. The government is not required to prove guilt beyond all doubt or to a

mathematical or scientific certainty. Its burden is to prove guilt beyond a reasonable doubt.

There are two types of evidence from which you may determine what the facts are in this case: direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is what we call circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

One of the questions that you were asked when we were selecting this jury was whether the nature of the charges would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge, or of the charges together, to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against the lawyer who made them or the party she or he represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should just ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer, and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

In determining whether the government has proven the charges against the defendants beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses. You alone determine whether to believe any witness and the extent to which any witness should be believed. Judging a witness's credibility means evaluating whether the witness has testified truthfully and whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You should evaluate the credibility of witnesses free from prejudices and biases.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness here on the witness stand; the witness's manner of testifying; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any reason for not telling the truth; whether the witness had a meaningful opportunity to observe the matters about which he or she has testified; and whether the witness has any interest in the outcome of this case, stands to gain anything by

testifying, or has friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including the time that has elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

You may consider whether there any inconsistencies or consistencies in a witness's testimony or between the witness's testimony and any previous statements made by the witness. You may also consider any consistencies or inconsistencies between the witness's testimony and any other evidence that you credit. You may consider whether any inconsistencies are the result of lapses in memory, mistake, misunderstanding, intentional falsehood, or differences in perception.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate. You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, or motivated by self-interest, you may consider and determine whether such bias or prejudice has colored the testimony of that witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it's fairly entitled to receive.

You have heard testimony from various accomplices and cooperating witnesses. The government is permitted to use a witness who testifies that he or she participated in the offenses charged against the defendant, although the testimony of such a witness should be considered with

caution. You should give his or her testimony as much weight as in your judgment it deserves.

You have also heard testimony, or evidence rather, that various witnesses entered into a plea agreement with the government pursuant to which the witnesses agreed to testify truthfully in this case and the government agreed, in some cases: to dismiss a charge against him or her; to decline prosecution of a charge against him or her; to bring the witness's cooperation to the attention of his or her sentencing judge; or to file papers with his or her judge which would permit that judge to impose a more lenient sentence than that judge might otherwise be able to impose. In fact, you have heard evidence that some witnesses have received a reduced sentence, dismissal of charges, or other favorable treatment as a result of their cooperation.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict a defendant on the basis of this testimony alone, if it convinces you of a defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as any other witness; the plea agreement does not protect him or her against a prosecution for perjury or making a false statement, should he or she lie under oath in this Court.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement a witness entered into with the government has motivated him or her to testify falsely against a defendant. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

As I have just explained, you have heard evidence that Carlos Silva, Manuel Saravia, Jorge Solorzano, and Antonio Urrutia-Barrera have been convicted of a crime and sentenced. A witness's prior criminal conviction is admitted into evidence solely for your consideration in evaluating his

or her credibility as a witness. Admittedly, the witness's previous conviction to the same charge or charges for which the defendants are on trial may not be considered as evidence of the defendants' guilt. A defendant is entitled to have the issue of his or her guilt determined solely on the basis of the evidence against him or her, and not on whether another party has been convicted of the same charge or charges with which the defendants are accused. For these reasons, you may consider the witnesses' prior convictions only in evaluating the believability of the witnesses.

Testimony from a law enforcement officer or agent, including a current or former police officer or agent, should be evaluated by you just as any other evidence in the case. In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness. In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a police or law enforcement officer or agent.

Every defendant in a criminal case has an absolute right not to testify. The defendants, with the advice of their respective counsel, have chosen to exercise this right. You must not hold their decision against them. It would be improper for you to speculate as to the reason or reasons for their decision or even to discuss their decision during your deliberations. You must not assume the defendants guilt — are guilty because they chose not to testify and must not draw any inference of — at all from their decision.

In this case, the following witnesses provided testimony and expressed opinions concerning the following subjects:

    a.    Sgt. Raymond Betts testified as an expert witness on MS-13, specifically in its structure, organization, leadership, language, rules, practices, signs, history, and methods.

    b.    Dr. Wayne Williams performed the autopsy of Louis Membrano-Zelaya and testified to the cause and manner of death.

    c.    Julien Mason testified as an expert in the field of firearm and toolmark

identification.

d.     Dr. Laron Locke performed the autopsy of Felipe Enriquez and testified to the cause and manner of death.

e.     Dr. Zabiullah Ali performed the autopsy of Luis Chavez-Ponce and testified by written, read to you today, testified to the cause and manner of death.

f.     FBI Special Agent John Orlando testified concerning cellular technology and the analysis of historical cellular telephone and cell site records.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness who possesses knowledge, skill, experience, training, or education may testify and state an opinion concerning such matters. You're not bound to accept the witness's opinion. If you find that the opinion is not based on sufficient education or experience, that the reasons supporting the opinion are not sound, or that the opinion is outweighed by other evidence, you may completely or partially disregard the opinion. You should consider this evidence with all the other evidence in the case and give it as much weight as you think it fairly deserves.

The law treats prior inconsistent statements differently depending on the circumstances in which they were made. I will explain how you should evaluate those statements.

You have heard evidence that some witnesses made statements on earlier occasions and that these statements may be consistent with their testimony here at trial. The earlier statements were brought to your attention to help you in evaluating the credibility of the witness and as evidence in this case. If you find that the earlier statements were consistent with the witness's present testimony in Court, you may consider this consistency in judging the credibility of the witness here at trial and as proof that what was said in the earlier statements was true.

It is for you to decide whether a witness made a statement on an earlier occasion and whether such statement was in fact consistent with the witness's in-court testimony.

The burden is on the government to prove beyond a reasonable doubt, not only that each offense was committed, but also that the defendants are the persons who committed them.

In deciding whether the government has proved beyond a reasonable doubt that the defendants are the persons who committed the offenses, you may consider any evidence relating to the identities of those persons.

A number of factors may affect the accuracy of an identification of a defendant by a witness, including:

1. The witness's opportunity to observe the criminal act and the person committing it, including, but not limited to, the length of the encounter, the distance between the various parties, the lighting conditions at the time, and the witness's state of mind at the time of the offense;

2. Any subsequent identification and the circumstances surrounding that identification, including, the witness's state of mind when making the identification, any suggestive circumstances that may have influenced the witness, and any statements or actions by law enforcement officers concerning the identification;

3. Any failure of a witness to identify a defendant as the person who committed the offense;

4. An identification by the witness of another person as the person who committed the offense; and

5. Any other facts that may have been brought to your attention by the remaining evidence that you conclude bears upon the accuracy of the witness's in-court or out-of-court identification of a defendant.

Based upon any identifications by the witnesses and all additional evidence you have heard, you must be satisfied beyond a reasonable doubt that the defendants are the persons who committed these offenses before you may convict them.    If the evidence concerning the identification of a defendant is not convincing beyond a reasonable doubt, you must find that defendant not guilty of that offense.

During the course of this trial, you heard certain tape recorded conversations which were obtained through the use of wire interceptions, commonly referred to as "wire taps." The term "intercept" means to obtain the contents of any wire or oral communication used by — using an intercepting device. The wire interceptions, or wiretaps, in this case were court-ordered, that is, they were approved by a judge, and the government's use of these interceptions was lawful.

During the course of this trial, you heard the phrase "consensual tape recording." As I told you at the beginning of the trial, this term should not be confused with the phrase "wire interception" or "wiretap." A wire interception or wiretap is a court-ordered interception of communications which does not require the consent of the parties to the conversation. A consensual tape recording, on the other hand, is a recording where one party to the conversation consents to the conversation being tape recorded. It is lawful to conduct consensual tape recordings, and the other party or parties to the conversation do not have to consent to the taping. Consensual tape recorded conversations may occur over the telephone or face to face.

Tape recordings of telephone conversations in Spanish identified by witnesses have been received in evidence. Ordinarily, where conversations are in English, transcripts of these tape-recorded English conversations are furnished for the convenience and guidance of the jury.

But the tapes in this case present a different situation. As you noted, the conversations on these tapes are in Spanish. Those transcripts that present a translation of words spoken in Spanish are admitted as evidence and you should treat those transcripts as you would any other evidence in this trial, according those portions such weight and credibility as you think they merit. Even if you speak or read Spanish, you must accept the translations as presented in the transcripts; you may not substitute your understanding of the meaning of the Spanish for that of the translator. I won't be sending the tapes back with you during your deliberations because the tapes are in

Spanish and the Spanish language, even if you understand it, is not what we're using during this trial.

With respect to those conversations, you have heard testimony that many of those conversations were intercepted and recorded pursuant to the authorization of a judge of this court. You are specifically instructed that the interception and recording of telephone conversations pursuant to court authorization and the use of those recordings in a trial such as this one is legal. You must not concern yourself with the legality or propriety of such interceptions.

I have admitted documents that are in Spanish with an English translation. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must accept the English translation that you've been given.

You have heard evidence that defendant Moises Humberto Rivera-Luna was deported following a conviction in a domestic assault case in California. You have also heard evidence that defendant Tokiro Rodas-Ramirez was deported.

You may only use this evidence as proof of their identity in this case. Moises Humberto Rivera-Luna and Tokiro Rodas-Ramirez are only on trial for the charges in the indictment. Rivera-Luna is not charged in this case with any offense relating to his deportation or conviction in a domestic assault case, nor is Rodas-Ramirez charged in this case with any offense relating to his deportation.

Therefore, you may not use this evidence to conclude that Moises Humberto Rivera-Luna and Tokiro Rodas-Ramirez have a bad character or that they have a criminal personality. The law does not allow you to convict a defendant simply because you believe he has done bad things not specifically charged as crimes in this case.

Certain records from Guatemala were introduced showing that defendant Moises

Page 13

Humberto Rivera Luna was in custody there for a period of time in 2022. This evidence was admitted for a limited purpose. The limited purpose is for your consideration on the issue of identity. The Government contends that the certain references in these records are relevant to showing that Mr. Rivera-Luna is the person referred to as "Viejo Santos." You are free to accept or reject this evidence as you see fit as with any other evidence. The circumstances of why he was held in custody in Guatemala are not relevant, and you may not speculate as to why he was in custody there. Beyond the limited purpose of this evidence — i.e., whether it tends to establish the identity of Mr. Rivera-Luna as "Viejo Santos" — this evidence has no relevance as to whether Mr. Rivera-Luna was involved in any of the crimes charged in the indictment.

You may find a defendant guilty of a specific crime charged in the indictment without finding that he personally committed each of the acts that make up the crime or that he was present while the crime was being committed. Any person who in some way intentionally participates in the commission of a crime can be found guilty either as an aider and abettor or as a principal. It makes no difference which label you attach. The person is as guilty of the crime as he would be if he had personally committed each of the acts that make up the crime.

To find that a defendant aided and abetted in committing a crime, you must find that the defendant knowingly associated himself with the commission of the crime, that he participated in the crime as something he wished to bring about, and that he intended by his actions to make it succeed. Some affirmative conduct by the defendant in planning or carrying out the crime is necessary. Mere physical presence by the defendant at the place and time the crime is committed is not by itself sufficient to establish his guilt.

For purposes of aider-and-abettor liability, the government is not required to prove that anyone discussed or agreed upon a specific time or method of committing the crime. The

government is not required to prove that the crime was committed in the particular way planned or agreed upon, nor need the government prove that the principal offender and the person alleged to be the aider and abettor directly communicated with each other.

I am about to instruct you on the elements of each of the offenses with which the defendants are charged. With respect to each charge, regardless of whether a defendant is an aider and abettor or a principal offender, the government must prove beyond a reasonable doubt that the defendant personally acted with the intent for the offense with which he is charged.

It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and the defendant knowingly and intentionally aided and abetted in committing the crime.

Count One of the Indictment charges the defendants with a specific form of conspiracy, that is, a conspiracy to violate the law prohibiting racketeer influenced and corrupt organizations. This is commonly known as RICO conspiracy, and I will refer to it as such in these instructions.

## COUNT ONE

Count One of the Indictment reads as follows:

> Beginning on a date unknown to the Grand Jury but since at least the late 1990s, and continuing up through and including May 2013, in the District of Columbia, the District of Maryland, and elsewhere, MOISES HUMBERTO RIVERA-LUNA, also known as Santos, also known as Viejo Santos; TOKIRO RODAS-RAMIREZ, also known as Johnny, also known as Perverso; together with others known and unknown, each being a person employed by and associated with MS-13, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce, unlawfully, knowingly, and intentionally did conspire to violate Title 18, United States Code, Section 1962(c), that is to conduct and

participate, directly and indirectly, in the conduct of the affairs of the MS-13 enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which pattern of racketeering activity consisted of multiple acts involving offenses chargeable under the following provisions of District of Columbia and Maryland law:

a.      Murder, in violation of District of Columbia Code §§ 22-2101 and 2103, and in violation of Maryland Code Criminal Law §§ 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland;

b.      Robbery, in violation of District of Columbia Code, § 22-2801 and in violation of Maryland Code, Criminal Law §§ 3-402 and 3-403 and the Common Law of Maryland;

c.      Extortion, in violation of District of Columbia Code, § 22-3251, and Maryland Code, Criminal Law § 3-701, 3-705, and the Common Law of Maryland;

And multiple acts involving the following provisions of federal narcotics law:

d.      Sections 841(a)(1) and 846 of Title 21, United States Code;

And multiple acts indictable under the following provisions of federal law:

e.      18 U.S.C. § 1512 (Witnesses Retaliation/Tampering);

f.      18 U.S.C. § 1503 (Obstruction of Justice).

It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

The defendants are charged with violating 18 U.S.C. section 1962(d), a portion of the law on Racketeer Influenced and Corrupt Organizations. That section reads as follows: "It shall be

unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of [the RICO Act]."

Section 1962 of the RICO Act provides that:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The word "racketeering" has certain connotations in our society. For your purposes, all that matters is the way that Congress used the term in the statute, which I will explain to you in a moment. Any other connotations that the term has should have no bearing on your determination of whether the defendant is guilty of the charges against him.

In order to satisfy its burden of proof as to Count One, the government must prove the following elements beyond a reasonable doubt:

FIRST: An enterprise existed as charged in the indictment;

SECOND: The enterprise engaged in, or its activities affected, interstate or foreign commerce;

THIRD: The defendant was employed by or associated with the enterprise; and

FOURTH: The defendant knowingly and willfully became a member of the conspiracy. The conspiracy charged in the indictment is to participate in the conduct of the affairs of the enterprise, where the enterprise engaged in a pattern of racketeering activity.

The first element that the government must prove beyond a reasonable doubt is that an "enterprise" existed as charged in the indictment. An "enterprise" is a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time. This group of people, in addition to having a common purpose, must have an ongoing

organization, either formal or informal, and it must have personnel who function as a continuing unit, although the identities of the persons may change from time to time. This group of people does not have to be a legally cognizable entity, such as a partnership or a corporation. This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.

The government has charged that the enterprise in this case is "La Mara Salvatrucha" or "MS-13," including its leadership, members and associates, and that the "common purposes" include:

      a.      Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, violence, threats of violence, assaults, and murder;

      b.      Promoting and enhancing the enterprise and the activities of its members and associates by committing crimes, including, but not limited to, murder, attempted murder, narcotics trafficking, theft of vehicles, robberies, extortion, human smuggling, and other criminal activities;

      c.      Keeping victims, potential victims, and community members in fear of the enterprise and its members and associates through violence and threats of violence;

      d.      Providing financial support and information to MS-13 members, including those incarcerated in the United States and El Salvador; and

      e.      Providing assistance to other MS-13 members who committed crimes for and on behalf of the gang, to hinder, obstruct, and prevent law enforcement officers from identifying the offenders, apprehending the offenders, and successfully prosecuting and punishing the offenders.

If you find that the government has proven that there was a group of people characterized

by (1) a common purpose, (2) an ongoing formal or informal organization, and (3) personnel who function as a continuing unit, then you may find that an enterprise existed.

If you find that this enterprise existed, you must also determine whether this enterprise continued in an essentially unchanged form during substantially the entire period charged in the indictment. This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.

The second element that the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect upon interstate or foreign commerce. Interstate commerce means the movement of goods, services, money, and individuals between states, or between a state and the District of Columbia or a U.S. Territory or a possession, or between the United States and a foreign state or nation.

The government must prove that the enterprise engaged in interstate or foreign commerce or that its activities affected interstate or foreign commerce in any way, no matter how minimal. It does not have to prove that the racketeering activity affected interstate or foreign commerce, although that racketeering acts did affect interstate or foreign commerce is sufficient to satisfy this element. It is not necessary to prove that the acts of the defendant affected interstate or foreign commerce as long as the acts of the enterprise had such effect. In addition, the government is not required to prove that the defendant knew he was affecting interstate or foreign commerce. Finally, there is no requirement that the activity affecting interstate commerce be legal.

The third element that the government must prove beyond a reasonable doubt is that the defendant was associated with the enterprise. It is not required that the defendant be associated with the enterprise for the entire time that the enterprise existed or that the defendant knew everyone who was associated with the enterprise at some time. It is required, however, that the

Page 19

government prove, beyond a reasonable doubt, that at some time during the period indicated in the indictment, the defendant himself was associated with the enterprise.

A person cannot be associated with an enterprise if he does not know of the enterprise's existence or the nature of its activities. Thus, in order to prove this element, the government must prove beyond a reasonable doubt that the defendant was connected to the enterprise in some meaningful way, and that he knew of the existence of the enterprise and the general nature of its activities.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the conspiracy. A "conspiracy" is a kind of criminal partnership—a combination or agreement of two or more persons to join together to accomplish some unlawful purpose.

In order to prove a conspiracy, the government must establish that at least two or more persons entered the unlawful agreement charged in the indictment—that is, an agreement to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity—and that the defendant knowingly and willfully became a member of the conspiracy.

You need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished. What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish an unlawful act.

The focus of this element is on the defendant's agreement to participate in the objective of

the enterprise to engage in a pattern of racketeering activity, and not on the defendant's agreement to commit individual criminal acts. The government must prove that the defendant participated in some manner, however slight, in the overall objective of the conspiracy and that the conspiracy itself involved, or would have involved, the commission of at least two racketeering acts. The extent of the defendant's participation has no bearing on the defendant's guilt. A conspirator's liability is not measured by the extent or duration of his participation. Each member may perform separate and distinct acts and may perform them at different times. Some conspirators play major roles, while others play minor roles. An equal role is not what the law requires.

The term "Racketeering Activity," as charged in the indictment, includes:

1.  Murder, in violation of District of Columbia Code, sections 22-2101 and 2103, and in violation of Maryland Code Criminal Law sections 2-201, 2-204, 2-205, 2-206 and the Common Law of Maryland;

2.  Robbery, in violation of District of Columbia Code, section 22-2801 and in violation of Maryland Code, Criminal Law sections 3-402 and 3-403 and the Common Law of Maryland;

3.  Extortion, in violation of District of Columbia Code, section 22-3251, and Maryland Code, Criminal Law 3-701, 3-705, and the Common Law of Maryland;

4.  Offenses involving trafficking in controlled substances in violation of Title 21 United States Code, Sections 841 and 846;

5.  Acts indictable under Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant) and Section 1503 (Obstruction of Justice).

I will define those crimes a little later.

The phrase "pattern of racketeering activity" requires at least two acts of racketeering

Page 21

activity that are related to the enterprise and to each other and that pose a threat of continued criminal activity. It is not sufficient for the government to prove only that two of the alleged racketeering acts were committed or intended to be committed. A series of disconnected acts does not constitute a pattern, and a series of disconnected crimes does not consist of a pattern of racketeering activity, nor do they amount to or pose a threat of continued racketeering activity.

To prove that the alleged racketeering acts are related, the government must prove that the acts had the same or similar purposes, results, participants, victims, or methods of commission, or that they are otherwise interrelated by distinguishing characteristics and are not isolated events.

To prove that the alleged racketeering activities posed a threat of continued racketeering activity, the government must establish that the acts were part of a long-term association that existed for criminal purposes.

The government is not required to prove that the defendant personally committed two such acts, although you may conclude that the defendant agreed to participate in the conduct of the enterprise from proof that he agreed to commit or actually committed such acts. You are further instructed that the government is not required to prove that the defendant knew all of the other conspirators or that he agreed with each of them to violate the law. Instead, the focus of this count is on the defendant's own agreement to join or remain in the conspiracy charged. What is important is the government prove that the defendant knowingly adopted the goal of furthering or facilitating the criminal behavior or, in other words, the defendant knew generally about the pattern of racketeering activity and agreed to facilitate the racketeering scheme in some manner, and not that the defendant himself committed the crimes encompassing the pattern of racketeering activity.

The government is not required to prove that each co-conspirator explicitly agreed with every other co-conspirator to conduct and participate in the affairs of the enterprise through a

Page 22

pattern of racketeering activity, or knew all his fellow conspirators or was aware of all of the details of the conspiracy. Rather, to establish sufficient knowledge, it is only required that the defendant knew the general nature and common purpose of the conspiracy and that the conspiracy extended beyond his individual role. Moreover, the elements of a RICO conspiracy, such as the conspiratorial agreement, the defendant's knowledge of it, and the defendant's participation in the conspiracy, may be inferred from circumstantial evidence.

I want to caution you, however, that a defendant's mere presence at the scene of the alleged crime does not, by itself, make him a member of the conspiracy. Similarly, mere association with one or more members of the conspiracy does not automatically make a defendant a member. A person may know, or be friendly with, a criminal, without being a criminal himself. Mere similarity of conduct or the fact that the alleged conspirators may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy.

I also want to caution you that mere knowledge or acquiescence, without participation, in the unlawful plan is not sufficient. Moreover, the fact that the acts of the defendant, without knowledge, merely happen to further the purposes or objectives of the conspiracy does not make the defendant a member. More is required under the law. What is necessary is that the defendant must have participated with knowledge of at least some of the purposes or objectives of the conspiracy and with the intention of aiding in the accomplishment of those unlawful ends.

In sum, before you may find the conspiracy element of Count One, the government must have proven beyond a reasonable doubt that the defendant, with an understanding of the unlawful character of the conspiracy, intentionally engaged, advised or assisted in it for the purpose of furthering the unlawful, illegal undertaking.

It is for you to determine whether the racketeering acts alleged in the indictment were part

of the conspiracy.

Murder: First degree murder is the intentional killing of another person with willfulness, deliberation, and premeditation. Willful means that the person actually intended to kill the victim. Deliberately means that the person was conscious of the intent to kill. Premeditated means that the person thought about the killing and that there was enough time before the killing, though it may only have been brief, for the assailant to consider the decision whether or not to kill and enough time to weigh the reasons for and against the choice. The premeditated intent to kill must be formed before the killing. Second degree murder is the killing of another person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result. Second degree murder does not require premeditation or deliberation. Attempted murder is a substantial step, beyond mere preparation, toward the commission of murder in the first or second degree. In order to prove attempt, the government must show that the assailant had the apparent ability, at that time, to commit the crime of murder and the requisite intent.

Robbery: Robbery is the taking away of property from another, by force or threat of force, with the intent to permanently deprive the victim of the property. Property means anything of value.

Extortion: Under Maryland and District of Columbia law, extortion occurs when a defendant or defendants obtain property from a complainant with the complainant's consent where that consent was obtained through use of actual or threatened force or violence or by threat of economic injury.

Federal Narcotics Law: According to federal law, Title 21, United States Code Section 841(a), possession with intent to distribute a controlled substance means that a defendant possessed a controlled substance knowingly and intentionally with the specific intent to distribute the

controlled substance. Distribute means to transfer or attempt to transfer a controlled substance to another person, although no payment is required for that exchange. The government charges that the controlled substance involved here was cocaine, which is by law a controlled substance. Conspiracy to possess with intent to distribute or to distribute a controlled substance pursuant to 21 U.S.C. § 846 means that there was an agreement between two or more people to commit the crimes of possession with intent to distribute or distribution of a controlled substance and that the defendant intentionally joined in that agreement.

Witness Tampering: Witness tampering in violation of 18 U.S.C. § 1512 requires two elements for purposes of this case. First, the conduct must involve the use of physical force or the threat of physical force against another, or attempt to do so, or intimidation, threats, or attempt to do so. Second, the conduct must be done with the intent to cause another to withhold testimony from an official proceeding, or hinder, delay or prevent the communication to a law enforcement officer of the United States any information relating to the commission or possible commission of a federal offense.

Obstruction of Justice: The federal obstruction of justice statute is codified at 18 U.S.C. Section 1503. It provides that whoever corruptly or by threats of force, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede the due administration of justice is guilty of a crime.

This law is aimed at a variety of means by which the orderly and due process of the administration of justice may be impeded, thwarted or corrupted. The due administration of justice includes but is not limited to a grand jury proceeding or investigation. The sweep of the statute extends to any corrupt endeavor or effort to interfere with a juror's function in the discharge of his duties. The key word in the statute is "endeavor." As used in the statute, "endeavor" means any

effort or any act, however contrived, to obstruct, impede, or interfere with the grand jury or trial proceeding. It is the endeavor which is the gist of the crime. Success of the endeavor is not an element of the crime. Any effort, whether successful or not, that is made for the purpose of corrupting, obstructing or impeding the proceeding is condemned. The word "corruptly" as used in the statute means simply having the improper motive or purpose of obstructing justice.

The law does not require that the federal proceeding be pending at the time of the use of force or threat or that the individual know whether any proceeding is federal or local, as long as the proceeding itself was reasonably foreseeable and the intent of the force or threat was to obstruct the proceeding, and the actions were likely to affect such a proceeding.

In order to convict the defendant of the RICO conspiracy charged in Count One, all twelve of you must agree as to which type or types of predicate racketeering activity were intended as part of the conspiracy the defendant joined: for example, at least two acts of murder, or robbery, or witness tampering, or one of each, or any combination thereof. On the verdict form, you will first be asked whether you find the defendant guilty or not guilty of the charge in Count One. If you find the defendant guilty, you will be asked to specify what type or types of racketeering activity you find to have been the objective(s) of the conspiracy he joined. You will be asked separately about Murder, Robbery, Extortion, Federal Narcotics Laws, Witness Tampering, and Obstruction of Justice.

SPECIAL FINDINGS: If you find that the government proved beyond a reasonable doubt that the defendants committed the offense of conspiracy to participate in a racketeer influenced and corrupt organization, you should go on to make two special findings:

Whether the government has proven beyond a reasonable doubt that the defendant Tokiro Rodas-Ramirez did willfully and with deliberate premeditation kill and murder Luis Miguel

Chavez Ponce on or about July 29, 2008, in violation of Maryland Law.

Whether the government has proven beyond a reasonable doubt that one or more individuals on the authorization of the defendant Moises Humberto Rivera-Luna did feloniously, willfully and with deliberate premeditation kill and murder Felipe Leonardo Enriquez, also known as Zombie, on or about March 31, 2010, in violation of Maryland Law.

## COUNT TWO

In Count Two, Tokiro Rodas-Ramirez is charged with violation of Title 18, United States Code, Section 1959 by either committing or conspiring to commit a violent crime with reference to a racketeering enterprise. Section 1959 reads as follows:

> Whoever, for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires to do so [is guilty of a crime].

Count Two realleges and incorporates the allegations concerning the existence and purposes of the enterprise in paragraphs 1 through 14 of Count One of the Indictment and then reads as follows:

> On or about April 7, 2008, in the District of Columbia, as consideration for the receipt of, and as consideration for promise and agreement to pay, anything of pecuniary value from MS-13, and for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, the defendant, Tokiro Rodas-Ramirez, also known as Perverso, also known as Johnny, and others known to the Grand Jury, unlawfully,

knowingly, and intentionally did assault with a dangerous weapon Dimas Perez in violation of D.C. Code Section 22-402.

In order to prove a violation of section 1959, the government must establish beyond a reasonable doubt each of the following five elements of the offense:

FIRST: An enterprise affecting interstate or foreign commerce existed;

SECOND: The enterprise was engaged in racketeering activity;

THIRD: The defendant had or was seeking a position in the enterprise;

FOURTH: The defendant committed or aided and abetted in the commission of the alleged crime of violence; and

FIFTH: That the defendant's general purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise.

The first element the government must prove beyond a reasonable doubt is that an "enterprise" existed and that the enterprise was engaged in, or had an effect upon, foreign commerce. The government has charged the same enterprise for these counts as in Count One, the RICO conspiracy count, that is, MS-13, including its leadership, members, and associates. I have already instructed you on what is necessary for the government to prove the existence of an enterprise that was engaged in, or had an effect upon, interstate or foreign commerce.

The second element the government must prove beyond a reasonable doubt is that the enterprise was engaged in racketeering activity. I have already instructed you about the types of racketeering activity charged in this case. As I explained, "racketeering activity" includes such offenses as murder in violation of the laws of the District of Columbia and Maryland, robbery, extortion, narcotics trafficking, witnesses tampering, and obstruction of justice. It is for you to determine whether the enterprise "engaged in" those activities, as charged. You should give the

words "engaged in" their ordinary, everyday meaning. For an enterprise to be engaged in racketeering activity, it is enough to show that the enterprise committed or engaged or was planning to commit racketeering activity within a period of time short enough under all of the circumstances so that it is appropriate to say that the enterprise was engaged in racketeering activity. However, unlike Count One, the government is not required to prove beyond a reasonable doubt that the enterprise engaged in a pattern of racketeering activity–that is, at least two racketeering acts. The government is only required to prove beyond a reasonable doubt that the enterprise was engaged in racketeering activity to satisfy the second element.

The third element the government must prove beyond a reasonable doubt is that the defendant was seeking or had a position in the enterprise.

To establish this element, the government must prove that the defendant was actively engaged in promoting the illegal activities of the enterprise or that he, by his acts, was attempting to become a member of the enterprise. It is not enough to prove that the defendant was doing business with the enterprise; the government must prove that he was actually a member of the enterprise or that he was actively seeking membership in the enterprise.

The fourth element the government must prove beyond a reasonable doubt is that the defendant committed or aided and abetted in the commission of the alleged crime of violence charged in the indictment. Under the aiding and abetting statute, it is not necessary for the government to prove that a defendant himself physically committed the crime with which he is charged in order for the government to sustain its burden of proof. A person who aids and abets another to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find that the defendant aided and abetted in the commission of an offense if you find that the government has proven beyond a reasonable doubt that another person

actually committed the offense and that the defendant aided or abetted that person in the commission of the offense.

As you can see, the first element is that you find that another person has committed the crime of violence. No one can be convicted of aiding or abetting the criminal acts of another if no crime was committed by the other person in the first place. But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime. In order to determine that question, you should follow my instructions on aiding and abetting.

The fifth element the government must prove beyond a reasonable doubt is that the defendant's general purpose in committing or aiding and abetting the commission of the charged crime of violence was to gain entrance to or to maintain or to increase his position in the enterprise. The government is not required to prove this was the defendant's sole or principal motive.

In determining whether a defendant's purpose in committing the crime of violence was to gain entrance to or maintain or increase his position in the enterprise, you should give the words "gain entrance," "maintain," and "increase" their ordinary meanings. You should consider all of the facts and circumstances in making that determination.

For example, you may consider evidence that the crime, if proven, was committed in order to maintain discipline within the enterprise and served to maintain the defendant's position in the enterprise. If the defendant committed the crime because he knew it was expected of him by reason of his membership in the enterprise, or if he committed the crime because he thought it would enhance his position or prestige within the enterprise, or if he committed it because he thought it was necessary to maintain the position he already held, then this element would be established.

The crime of violence alleged against Tokiro Rodas-Ramirez in Count Two is Assault with a Dangerous Weapon. The elements of Assault with a Dangerous Weapon, each of which the government must prove beyond a reasonable doubt, are that:

1. Tokiro Rodas-Ramirez attempted or aided and abetted an attempt with force and violence to injure Dimas Perez;

2. At the time, he or the person he aided and abetted had the apparent present ability to injure Dimas Perez;

3. He or the person he aided and abetted intended to perform the acts constituting the assault; and

4. He or the person he aided and abetted committed the assault with a dangerous weapon.

A dangerous weapon under District of Columbia law is defined as one which is likely to produce death or great bodily injury by the use made of it.

## COUNT THREE

Count Three of the Indictment charges defendant Tokiro Rodas-Ramirez with the crime of using a firearm to commit, or carrying a firearm during the commission of, or discharging a firearm during the commission of, or possessing a firearm in furtherance of, a crime of violence. The indictment reads:

> On or about April 7, 2008, in the District of Columbia, the defendant, Tokiro Rodas-Ramirez, also known as Perverso, also known as Johnny, and another known to the Grand Jury unlawfully, willfully, and knowingly did use and carry a firearm during and in relation to a crime of violence for which they may be prosecuted in a court of the United States, namely, Assault with a Dangerous Weapon in Aid of Racketeering as alleged in Count Two, and did possess, brandish, and discharge the firearm in furtherance of the offense charged in Count Two.

You will recall that Count Two of the Indictment, on which I just instructed you, charges

defendant Tokiro Rodas-Ramirez with the assault of Dimas Perez. Under Count Three, the defendant is charged with using, carrying, brandishing, discharging, or possessing a firearm during or in furtherance of the commission of the crime of Assault with a Dangerous Weapon in Aid of Racketeering or with aiding and abetting another person to do so, as charged in Count Two.

If upon all of the evidence you find that the government has failed to prove Count Two beyond a reasonable doubt, then you will proceed no further as to Count Three. Count Three is to be considered only if you first find the defendant Tokiro Rodas-Ramirez guilty of Count Two. Specifically, you may deliberate on Count Three as to the defendant only if you find him guilty of Count Two.

In reaching your verdict on Count Three, you may consider the evidence of Count Two only for the purpose of determining whether the elements of Count Three have been satisfied.

The government must prove each of the following elements beyond a reasonable doubt to sustain its burden of proving the defendant guilty:

> FIRST: The defendant used or possessed a firearm, or aided and abetted one who did so;
> SECOND: The defendant did so knowingly and intentionally; and
> THIRD: The defendant did so during and in relation to a crime of violence.

The first element the government must prove beyond a reasonable doubt is that the defendant committed or aided and abetted the commission of a crime of violence for which he might be prosecuted in a court of the United States. The defendant is charged in Count Two with Assault with a Dangerous Weapon in Aid of Racketeering, which is a crime of violence. However, it is up to you to determine that the government has proven beyond a reasonable doubt that the defendant committed or aided and abetted in committing that crime of violence.

The second element the government must prove beyond a reasonable doubt is that the

defendant knowingly used or carried a firearm, or aided and abetted the use and carrying of a firearm, during and in relation to, or that the defendant knowingly possessed or that the defendant knowingly discharged a firearm in furtherance of, the commission of the crime referenced in that count, or that he aided and abetted another person to do so.

A "firearm" is any weapon which will or is designed to or may be readily converted to expel a projectile by the action of an explosive.

"Use" of a firearm means proof beyond a reasonable doubt of active employment of the firearm by a person during and in relation to the commission of the crime of violence. This does not mean that the person must actually fire or attempt to fire the weapon, although those would obviously constitute use of the weapon. Brandishing, displaying, or even referring to the weapon so that others present knew the person had the firearm available if needed all constitute use of the firearm. However, the mere possession of a firearm at or near the site of the crime without active employment as I just described it is not sufficient to constitute use of the firearm.

"Carrying" a firearm means proof beyond a reasonable doubt that the person had the weapon within his control in such a way that it furthered the commission of the crime of violence or was an integral part of the commission of the crime. A person did not necessarily have to hold the firearm physically, that is, have actual possession of it on his person. If you find that the person had dominion and control over the place where the firearm was located, and had the power and intention to exercise control over the firearm in such a way that it furthered the commission of the crime of violence, you may find that the government has proven that the person carried the weapon. It is not sufficient to prove carrying if all the government has proven is that the firearm was transported in a vehicle in which the person was riding. There must be proof that the person knew of the weapon's presence and had the power and intention to exercise control of the weapon so

Page 33

that it was available for his use in the commission of the crime if the need arose.

"Possession" of a firearm in furtherance of the crime means proof beyond a reasonable doubt that the person had possession of the firearm and that such possession was in furtherance of that crime. Possession means that the person either had physical possession of the firearm on his person or that he had dominion and control over the place where the firearm was located and had the power and intention to exercise control over the firearm. Possession may be sole or joint. If one person alone possesses something, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the firearm. This is called joint possession. If you find the defendant had such power and intention, then he possessed the firearm even if he possessed it jointly with another. Possession cannot be found solely because the defendant associated with another person who did possess the firearm, or solely because he was near to the firearm, or solely because he knew that the firearm was present. These factors may be considered by you, however, in connection with all of the evidence, in making your decision whether the defendant possessed the firearm.

To possess a firearm in furtherance of the crime means that the firearm helped forward, advance or promote the commission of the crime. The mere possession of the firearm at the scene of the crime is not sufficient under this definition. The firearm must have played some part in furthering the crime in order for this element to be satisfied. To satisfy this element, you must also find that the person carried or used the firearm knowingly. This means that he carried the firearm purposely and voluntarily, and not by accident or mistake. It also means that he knew that the weapon was a firearm, as we commonly use the word. However, the government is not required to prove that the person knew that he was breaking the law.

In order to find that the defendant aided and abetted the using or carrying of a firearm

during and in relation to, or the possessing of a firearm in furtherance of the Assault with Dangerous Weapon in Aid of Racketeering (Count Three), the government must prove beyond a reasonable doubt that the defendant acted with advance knowledge that another participant would use or carry a firearm during and in relation to, or possess a firearm in furtherance of, the commission of the Assault with Dangerous Weapon in Aid of Racketeering.

If you find the defendant guilty of using or carrying a firearm during and in relation to or possessing a firearm in furtherance of, or aiding and abetting the using or carrying a firearm during and in relation to or possessing a firearm in furtherance of the Assault with Dangerous Weapon in Aid of Racketeering, you must then determine whether the defendant Tokiro Rodas-Ramirez brandished and discharged or aided and abetted the brandishing and discharging of a firearm, during and in relation to the Assault with Dangerous Weapon in Aid of Racketeering.

In order to find that the defendant aided and abetted the brandishing of a firearm during and in relation to the Assault with Dangerous Weapon, the government must prove beyond a reasonable doubt that the defendant acted with advance knowledge that another participant would display or make the presence of a firearm known for purposes of intimidation. The defendant need not have had actual advance knowledge that a participant would actually brandish the firearm. This requirement is satisfied if the defendant knew that a participant intended to brandish a firearm to intimidate if the need arose.

You must also determine whether the firearm was discharged, even accidentally. To aid and abet the use, carrying, or possession of a firearm that was discharged, the defendant need not have advance knowledge that the discharge would occur.

Advance knowledge means knowledge at a time when the defendant chose to begin or continue the defendant's participation in the violent crime. The defendant chose to continue the

defendant's participation if the defendant learned of the firearm and continued to participate. But the defendant did not choose to continue to participate if the defendant learned of the firearm too late for the defendant to reasonably walk away.

On the verdict form as to Count Three, you must determine whether government has proven beyond a reasonable doubt that the defendant Tokiro Rodas-Ramirez used, carried, or possessed or aided and abetted the use, carrying, or possession of a firearm during and in relation to the Assault with Dangerous Weapon in Aid of Racketeering. If you find that the government has proven beyond a reasonable doubt that the defendant Tokiro Rodas-Ramirez used, carried, or possessed or aided and abetted the use, carrying, or possession of a firearm during and in relation to the Assault with Dangerous Weapon in Aid of Racketeering, you must then determine whether the defendant Tokiro Rodas-Ramirez brandished and discharged or aided and abetted the brandishing and discharging of a firearm during and in relation to the Assault with Dangerous Weapon in Aid of Racketeering. Your verdict must be unanimous as to any and all selections.

A conspiracy is a kind of partnership in crime and its members may be responsible for each others' actions. A defendant is responsible for an offense committed by another member of the conspiracy if the defendant was a member of the conspiracy when the offense was committed and if the offense was committed in furtherance of, and as a natural consequence of, the conspiracy.

In order to find Tokiro Rodas-Ramirez guilty of Counts Two and Three under this theory, you must find beyond a reasonable doubt that:

1. There was a conspiracy to kill rival gang members.

2. The offense was committed by a co-conspirator of Tokiro Rodas-Ramirez;

3. Rodas-Ramirez was a member of the conspiracy to kill rival gang members at the time of the offense;

4. The offense was committed during the existence of the conspiracy;

5. The offense was committed in furtherance of the conspiracy; and

6. The offense was a reasonably foreseeable consequence of the conspiracy. It is not necessary to find that the crime was intended as part of the original plan, only that it was a foreseeable consequence of the original plan.

In order to determine whether a conspiracy existed at the time of the crime and whether Tokiro Rodas-Ramirez was a member, you must find beyond a reasonable doubt the following two elements, that:

1. Beginning on a date unknown but since at least the late 1990s, and continuing up through and including May 2013, an agreement existed between two or more people to kill rival gang members. This does not have to be a formal agreement or plan in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests or do similar things does not necessarily show that an agreement exists to commit the crime that allegedly was the subject of the charged conspiracy. It is enough that the government prove beyond a reasonable doubt that there was a common understanding among those who were involved to kill gang members.

2. Tokiro Rodas-Ramirez intentionally joined in that agreement. It is not necessary to find s/he agreed to all the details of the crime or that he even knew the identity of all the other people the government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy. But mere presence at the scene of the agreement or of the crime or merely being with the other participants does not show that

Tokiro Rodas-Ramirez knowingly joined in that. Similarly, unknowingly acting in a way that helps the participants, without more, does not make a person part of the conspiracy. In addition, merely knowing about the agreement itself, without more, does not make Tokiro Rodas-Ramirez a part of the conspiracy.

A conspiracy can be proved indirectly by facts and circumstances that lead to a conclusion that a conspiracy existed. The government's burden is to prove such facts and circumstances existed and lead to that conclusion in this particular case.

In deciding whether an agreement existed, you may consider the acts and statements of all the alleged participants. In deciding whether Tokiro Rodas-Ramirez became a member of that conspiracy, you may consider only his acts and statements.

Someone's intent ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent from the surrounding circumstances. You may consider any statement made or acts done by the defendant, and all other facts and circumstances received in evidence which indicate his intent.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances and evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the defendant acted with the necessary state of mind.

You have heard some testimony regarding a prior proceeding related to this case. Indeed, transcripts of three witnesses—Officer Alfonso Matos, Dr. James Locke, and Dr. Zabuilah Ali—were read at the trial. You are not to speculate as to the nature of the prior proceeding. You should give the testimony of each of those three witnesses the weight you think it deserves keeping all of

my instructions I read to you yesterday in mind.  I will send in with you my written instructions so that you have them available during your deliberations.

The indictment charges that the offenses were committed "on or about" a certain date or dates. The proof need not establish with certainty the exact date of the alleged offenses. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offenses were committed on a date reasonably near the date or dates alleged.

Each count of the indictment charges a separate offense.  Moreover, each defendant is entitled to have the issue of his guilt as to each of the crimes for which he is on trial determined from his own conduct and from the evidence that applies to him as if he were being tried alone. You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the Indictment, as well as to each defendant. I will send a verdict form with you so you have that with you in the jury room.

The fact that you may find any one defendant guilty or not guilty on any one count of the Indictment should not influence your verdict with respect to any other count of the Indictment for that defendant, unless I have instructed you otherwise. Thus, you may find any one or more of the defendants guilty or not guilty on any one or more counts of the Indictment, and you may return different verdicts as to different defendants and as to different counts. At any time during your deliberations, you may return your verdict of guilty or not guilty with respect to any defendant on any count.

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict.  In other words, your verdicts must be unanimous.

You will be provided with a Verdict Form for use when you have concluded your deliberations. The Form is not evidence in this case, and nothing in it should be taken to suggest

or convey any opinion by me as to what the verdict should be. Nothing in the Form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The Form is meant only to assist you in recording your verdict.

During the trial, I have permitted all jurors who wanted to do so to take notes. You may take your notebooks with you to the jury room and use them during your deliberations if you wish. As I told you at the beginning of the trial, your notes are only to be an aid to your memory. They are not evidence in the case, and they should not replace your own memory of the evidence. Those jurors who have not taken notes should rely on their own memory of the evidence. The notes are intended to be for the notetaker's own personal use.

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdicts. Sometimes only those parts of an exhibit that are relevant to your deliberations were admitted. Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted. Thus, as you examine the exhibits, and you see or hear a statement where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what parts have been taken out or redacted.

Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

When you retire to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence.

Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

The question of possible punishment of a defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing a sentence in the event of a conviction rests exclusively with me in the federal system. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all. I can tell you, however, that the death penalty is not a possible punishment in this case.

You have heard testimony from some witnesses who communicated through an interpreter, and the defendants used the services of an interpreter in this trial.

You are to consider only the evidence provided through the official court interpreters. Although some of you may know Spanish, it is important that all jurors consider the same evidence. Therefore, you must base your decision on the evidence presented in the English interpretation. You must disregard any different meaning.

As I have previously instructed you, you should not be biased for or against anyone who uses an interpreter. Do not permit the fact that some witnesses are using the services of an interpreter to influence you in any way.

You should not consider the mere fact that the witnesses have been provided an interpreter in evaluating their credibility. You must evaluate interpreted testimony as you would any other testimony—that is, you must not give interpreted testimony any greater or lesser weight than you would if the witness had spoken English.

If you observed that a witness nodded his or her head during interpretation, you should consider that this did not necessarily indicate agreement or an affirmative answer but may have indicated only that the witness was following the interpretation.

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning the case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch any such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just tell me or tell the Courtroom Clerk you need to speak to me as soon it happens, as soon as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also need to remind you of an instruction I gave you at the beginning of and during the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation of any kind during deliberations. You must not conduct any research in person or electronically via the internet or in another way.

If it becomes necessary during your deliberations to communicate with me, you may send a note by the Deputy Clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court until you reach a verdict.

Bear in mind also that you are never, under any circumstances, to reveal to any person—

not the Deputy Clerk, the marshal, or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1— whether the vote is for conviction or acquittal or on any other issue in the case.

I find that the attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.