IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSE MARTINEZ-AMAYA, *et al.*<br><br>Defendant/Petitioner. | )<br>)<br>)<br>)  Case No. 1:10cr256-RCL<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT
OF §2255 PETITION[1]**

COMES NOW, the Defendant/Petitioner, Jose Martinez-Amaya, by and through counsel,
and in further support of his Petition pursuant to 28 U.S.C. § 2255,[2] as well as of his request for
an evidentiary hearing, hereby states as follows:

**I.     The *Strickland* Standard**

Federal courts, including the D.C. Circuit, consistently apply the *Strickland* standard to
claims of ineffective assistance of counsel, which requires a defendant to demonstrate two
elements: (1) that counsel's performance was deficient, and (2) that the deficient performance of
counsel prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668 (1984).

To satisfy the first prong, the defendant must show that counsel's performance fell below
an objective standard of reasonableness as defined by prevailing professional norms. Courts
apply a "highly deferential" standard of review, indulging a strong presumption that counsel's
conduct fell within the wide range of reasonable professional assistance. Strategic decisions

---

[1] Any argument raised in Mr. Martinez-Amaya's *pro se* is not waived simply because it is not
specifically supplemented in this pleading. This pleading is only meant to add additional support,
not supplant the original Petition.
[2] An ineffective assistance claim may be raised for the first time via § 2255, i.e., it need not have
been raised on appeal. *United States v. Massaro*, 538 U.S. 500, 504 (2003).

made after thorough investigation are considered "virtually unchallengeable" . *United States. v. Doost,* 3 F.4th 432, 437 (D.C. Cir. 2021); *United States v. Shabban,* 782 F.3d 3, 7 (D.C. Cir. 2015).

The second prong requires the defendant to demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A "reasonable probability" is defined as a probability sufficient to undermine confidence in the outcome of the proceeding. *Doost,* 3 F.4th at 437; *Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014); *United States v. Gwyn*, 481 F.3d 849, 853 (D.C. Cir. 2007); *United States v. Gray-Burriss*, 920 F.3d 61, 65 (D.C. Cir. 2019). Both prongs must be satisfied for a claim to succeed, and a court may resolve the claim on either prong without addressing the other if one is not met. *United States v. McLendon*, 944 F.3d 255, 260-61 (D.C. Cir. 2019); *See, e.g., United States v. Eli*, 379 F.3d 1016, 1019 (D.C. Cir. 2004).

## II.    The Standard for Granting an Evidentiary Hearing

Section 2255 requires an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Supreme Court has held that a hearing is required where the movant alleges specific facts outside the record that, if proven, would entitle him to relief and are not conclusively refuted by the existing record. *See Machibroda v. United States*, 368 U.S. 487, 494–95 (1962). The D.C. Circuit applies that rule in ineffective-assistance cases and remands for factual development where the record does not conclusively resolve the claim. *See United States v. Aguiar*, 894 F.3d 351, 361–62 (D.C. Cir. 2018); *United States v. Mohammed*, 693 F.3d 192, 203 (D.C. Cir. 2012); *United States v. Rashad*, 331 F.3d 908, 909–10, 912 (D.C. Cir. 2003); *United States v. Todd*, 287 F.3d 1160, 1164–65 (D.C. Cir. 2002).

### III.    Trial Counsel Was Ineffective for Failing to Move to Sever Mr. Martinez-Amaya's Trial

A. Deficient performance

Trial counsel rendered deficient performance by failing to file a tailored motion to sever Mr. Martinez-Amaya's trial from the co-defendants and from the avalanche of violent-act evidence that was not meaningfully tied to him.

Under D.C. Circuit precedent, even where initial joinder may be proper, Rule 14 imposes a continuing duty on the district court to sever if prejudice emerges during trial. In *United States v. Gooch*, the D.C. Circuit explained that severance may be warranted "at all stages of trial" because the court has a "continuing duty" to sever where prejudice appears. *See United States v. Gooch*, 665 F.3d 1318, 1335 (D.C. Cir. 2012); *see also, Schaffer v. United States*, 362 U.S. 511, 516 (1960).The defendant bears the burden to show prejudice, but severance is proper where there is a serious risk that a joint trial will prevent the jury from making a reliable judgment about guilt or innocence. *See Gooch,* 665 F.3d at 1326.

The D.C. Circuit recognizes three classic forms of Rule 14 prejudice: the jury may cumulate evidence of separate crimes; the jury may infer criminal disposition and treat that inference as guilt evidence; or the defendant may be embarrassed or confounded in presenting distinct defenses. *Id.* (citation omitted). Those risks were not theoretical here. They were the central structural problem in Mr. Martinez-Amaya's trial.

The record showed repeated spillover from highly inflammatory evidence involving co-defendants and other MS-13 members: murders, shootings, threats to witnesses, green lights, DNA and ballistics evidence, gang violence, and violent acts predating or unconnected to Mr. Martinez-Amaya. Co-defendant's counsel expressly argued that large categories of the government's evidence concerned "multiple conspiracies" and crimes her client had nothing to

do with, including the Sorto shooting and the three Reston murders; the court denied the motions to exclude that evidence.

Mr. Martinez-Amaya's counsel did make a Rule 29 motion, but that motion itself demonstrates why severance was required. Counsel argued that the government failed to prove Mr. Martinez-Amaya was involved in multiple murders, including murders that occurred before he arrived in the Washington, D.C. area, and failed to connect him to robbery, extortion, drug distribution, witness tampering, or obstruction. Counsel further argued there was no indication that Mr. Martinez-Amaya agreed to collect rent, collected rent, distributed drugs, possessed drugs with intent to distribute, tampered with witnesses, or obstructed justice.

Those arguments were not merely Rule 29 points; they were the factual foundation for severance. The government's trial presentation created precisely the danger Rule 14 is designed to prevent: the jury heard weeks of violent MS-13 evidence, then was asked to infer Mr. Martinez-Amaya's guilt from membership, association, and coded calls rather than from individualized proof.

A reasonably competent attorney would have filed a motion to sever, renewed it as the government's proof unfolded, and specifically argued that Mr. Martinez-Amaya was being tried on the strength of other defendants' evidence. The failure to do so was not a strategic choice apparent from the record. Mr. Martinez-Amaya did not present witnesses. His defense was not advanced by being tried alongside co-defendants whose cases involved separate violent incidents, DNA/ballistics issues, and distinct defense theories. The only rational strategy was to insist that the jury decide his guilt on evidence against him alone.

B. <u>Prejudice</u>

The prejudice is substantial. The government's direct evidence against Mr. Martinez-Amaya was far thinner than the evidence against other alleged MS-13 actors. The record contained evidence that he was known as "Crimen," that he appeared in certain calls, and that some witnesses associated him with clique business. But the record also contained repeated admissions or defense elicitation that he was not tied to many of the charged violent acts.

For example, the Rule 29 record reflects that counsel argued the government failed to prove Mr. Martinez-Amaya was involved in the murders of Luis Alberto Membreno-Zelaya, Giovanni Sanchez, Luis Chavez-Ponce, or Felipe Enriquez/Zombie. Counsel also argued that the robbery, extortion, drug, witness-tampering, and obstruction evidence was generalized and not tied to Mr. Martinez-Amaya.

In a severed trial, much of the most inflammatory evidence would either have been excluded, narrowed, or presented in a materially different posture. Instead, the jury heard evidence about multiple murders and violent acts while the court allowed the government to treat that evidence as enterprise or conspiracy evidence. The risk was that jurors would convict Mr. Martinez-Amaya because MS-13 was violent, his alleged associates were violent, and the trial record was saturated with violence — not because the government proved his individualized guilt beyond a reasonable doubt.

The prejudice was compounded by the fact that co-defendant counsel actually made a VICAR motive argument for Machado-Erazo that applied with equal or greater force to Mr. Martinez-Amaya: that the government had not proved the defendant acted to maintain or increase his position in the gang or for pecuniary gain. Mr. Martinez-Amaya's counsel did not preserve that same argument for his client. Thus, counsel failed both to separate Mr. Martinez-

Amaya from prejudicial spillover evidence and to preserve the most targeted legal insufficiency argument available to him.

There is at least a reasonable probability that, had counsel moved to sever and forced the court to confront the individualized prejudice to Mr. Martinez-Amaya, the court would have severed, limited the evidence, or created a materially different record for appeal. That satisfies *Strickland* prejudice.

### IV. Trial Counsel Was Ineffective for Failing to Argue in the Rule 29 Motion that the Government Failed to Prove the VICAR Motive Element

A. Deficient performance

Trial counsel also rendered deficient performance by failing to argue, in the Rule 29 motion, that the government failed to prove the essential VICAR motive element: that Mr. Martinez-Amaya acted either for pecuniary gain or for the purpose of gaining entrance to, maintaining, or increasing his position in MS-13.

The omission was legally significant. VICAR murder requires proof of one of three motives: pecuniary consideration, a promise or agreement to pay something of value, or the purpose of gaining entrance to, maintaining, or increasing position in the racketeering enterprise. 18 U.S.C. § 1959(a). The D.C. Circuit further explains that the "maintaining or increasing position" motive may be inferred where the defendant committed the crime in furtherance of enterprise membership or knew the act was expected of him by reason of his membership. *Gooch,* 665 F.3d 1337-38; *United States v. Bostick*, 791 F.3d 127, 142 (D.C. Cir. 2015). That element was not optional. It was a necessary element of any VICAR count. And counsel knew, or should have known, that it was vulnerable. Co-defendant counsel expressly made this argument moments later, arguing that VICAR required proof that the defendant acted to maintain

or increase his gang position or for pecuniary gain, and that there was no evidence of such motive.

Mr. Virgilio's Rule 29 motion did challenge the RICO conspiracy and predicates generally. He argued lack of enterprise, lack of agreement, lack of proof of two racketeering acts, and lack of evidence tying Mr. Martinez-Amaya to murder, robbery, extortion, drug distribution, witness tampering, and obstruction. But he did **not** make the more precise and dispositive argument that even assuming some association with MS-13, the government failed to prove that any charged violent act was committed by Mr. Martinez-Amaya for the purpose required by § 1959.

That omission was unreasonable. A competent attorney in a VICAR case in the D.C. Circuit would have recognized that the motive element was a separate legal requirement and would have preserved the issue under Rule 29. The argument was not obscure; it was available from the statute, D.C. Circuit precedent, the jury instructions, and co-defendant counsel's own Rule 29 argument.

B. The omitted Rule 29 argument was strong

The omitted argument was particularly strong because the government's evidence did not resemble the evidence the D.C. Circuit found sufficient in *Gooch* or *Carson*. In *Gooch*, the D.C. Circuit found VICAR motive sufficient where the victims allegedly stole drug stashes or cooperated with police, thereby posing a threat to the gang; witnesses testified that such conduct would be met with violence; and the defendant was known as gang "muscle" who was expected to retaliate. *Gooch,* 665 F.3d at 1338.

The record against Mr. Martinez-Amaya was materially different. The government did not prove that he was an enforcer, that he committed violence to protect his gang status, that he

killed to retaliate against a threat to the enterprise, or that he received or expected money. To the contrary, counsel's own Rule 29 motion emphasized the absence of evidence that Mr. Martinez-Amaya was involved in the charged murders, robbery, extortion, drug distribution, witness tampering, or obstruction.

The government's proof was, at most, association-plus: membership, calls, dues, clique discussions, and alleged participation in gang communications. But VICAR requires more than proof of association with a violent enterprise. The government had to prove the charged violent act was committed for one of the statutory purposes. Evidence that a defendant knew gang members, attended meetings, paid dues, or participated in conversations does not itself prove that he committed a violent crime to maintain or increase his status.

The record also undercut pecuniary motive. The government did not show that Mr. Martinez-Amaya committed any charged violent act in exchange for money, property, payment, or a promise to pay. Counsel had already argued that there was no evidence Mr. Martinez-Amaya collected rent, engaged in drug distribution, possessed drugs for distribution, or participated in extortion. That same factual record should have been marshaled into a VICAR motive insufficiency argument.

C. Prejudice

The prejudice from the omission is clear. Had counsel made the VICAR motive argument, the trial court would have been required to evaluate whether the government proved an essential element of the VICAR counts against Mr. Martinez-Amaya. Even if the court denied the motion, the issue would have been preserved for de novo appellate review under the D.C. Circuit's Rule 29 standard, which asks whether the evidence, viewed in the light most favorable

to the government, permits a rational juror to find every essential element beyond a reasonable doubt.

The failure to preserve the argument deprived Mr. Martinez-Amaya of a substantial sufficiency issue. The D.C. Circuit's cases make clear that VICAR motive cannot rest on speculation. The evidence must support a rational inference that the defendant acted because violence was expected of him by reason of membership, or because the act furthered or protected his position.

Here, the government's proof did not establish that Mr. Martinez-Amaya acted to maintain or increase status. It did not prove he was a leader, an enforcer, or a person whose position depended on committing the charged violence. Nor did it prove he acted for pecuniary gain. The omitted Rule 29 argument therefore had a reasonable probability of success at trial or on appeal.

At minimum, the omission undermines confidence in the outcome. The jury was permitted to consider VICAR liability in a record saturated with generalized MS-13 violence, while counsel failed to isolate the dispositive statutory defect: the absence of proof that Mr. Martinez-Amaya personally acted with the required VICAR purpose. That is precisely the kind of adversarial failure *Strickland* condemns.

### V.    Combined Prejudice

Even if either omission were considered insufficient in isolation, the cumulative prejudice warrants relief. Counsel failed to move to sever Mr. Martinez-Amaya from a trial dominated by violent acts largely attributable to others, and then failed to preserve the strongest legal insufficiency argument available under § 1959. The two errors reinforced one another. The absence of severance allowed prejudicial spillover to substitute for individualized proof, and the

absence of a targeted Rule 29 VICAR motive argument allowed the government to avoid scrutiny on an essential element.

This was not a case where the evidence against Mr. Martinez-Amaya was overwhelming. Counsel's own Rule 29 motion identified the central weakness: the government had not tied Mr. Martinez-Amaya to the charged murders, extortion, robbery, drug distribution, witness tampering, or obstruction. What counsel failed to do was convert that factual weakness into the two procedural protections the law provided: severance and acquittal on the VICAR counts for failure of proof on motive.

For these reasons, trial counsel's performance was constitutionally deficient, and there is a reasonable probability that, but for counsel's failures, the result of trial or appeal would have been different.

**VI.    The Court Should Grant an Evidentiary Hearing on Mr. Martinez-Amaya's § 2255 Petition**

A. The § 2255 hearing standard requires a hearing unless the existing record conclusively defeats relief.

Section 2255(b) sets a mandatory hearing rule. Unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the court must grant a prompt hearing, determine the issues, and make findings of fact and conclusions of law. 28 U.S.C. § 2255(b).

The Supreme Court has long held that a district court may not resolve controverted factual issues on paper where the allegations are specific, material, and not conclusively refuted by the record. In *Machibroda v. United States*, the Court reversed denial of a § 2255 motion without a hearing because the movant's allegations concerned matters outside the courtroom and the files and records did not conclusively resolve them. *Machibroda v. United States*, 368 U.S.

487, 494–95 (1962). The Court emphasized that the statute requires a hearing unless the motion, files, and records conclusively show no entitlement to relief.

The D.C. Circuit applies that same standard. Although denial of a hearing is reviewed for abuse of discretion, the question remains whether the record conclusively shows the petitioner is entitled to no relief. *United States v. Aguiar* reversed the denial of a hearing where the record did not conclusively defeat an ineffective-assistance claim, emphasizing that the hearing-stage question is not whether the movant has already proven prejudice, but whether he has made sufficient allegations warranting a hearing to prove the claim. *United States v. Aguiar*, 894 F.3d 351, 355, 361–62 (D.C. Cir. 2018).

That is the situation here. Mr. Martinez-Amaya's claims turn on counsel's omissions, strategic reasoning or lack thereof, and the prejudice created by trying him alongside co-defendants in a highly inflammatory MS-13/RICO/VICAR case. The trial record shows what counsel did and did not do; it does not explain why counsel failed to seek severance or why counsel failed to preserve the VICAR motive insufficiency argument in the Rule 29 motion. Those are factual questions that require testimony from trial counsel and, potentially, appellate counsel.

B. Ineffective-assistance claims are particularly suited to evidentiary hearings because the trial record rarely explains counsel's reasons.

The D.C. Circuit has repeatedly recognized that ineffective-assistance claims often require factual development. In *United States v. Mohammed*, the court remanded for an evidentiary hearing because the defendant raised colorable claims under both *Strickland* prongs and the trial record did not conclusively show whether he was entitled to relief. *United States v.*

11

*Mohammed*, 693 F.3d 192, 202–03 (D.C. Cir. 2012). The court explained that the district court is the forum best suited to develop the facts necessary to evaluate counsel's performance.

Judge Kavanaugh's concurrence in *Mohammed* put the point directly: whether in a § 2255 proceeding or on direct appeal, "the key procedural principle remains the same" — the district court should have the first opportunity to consider ineffective-assistance claims because it can take testimony from trial counsel, witnesses, and others.

Similarly, in *United States v. Todd*, the D.C. Circuit held that where an ineffective-assistance claim cannot be resolved on the current record, the proper course is further factual development, unless the trial record conclusively shows either that the defendant is entitled to no relief or that the claim fails. *United States v. Todd*, 287 F.3d 1160, 1164–65 (D.C. Cir. 2002).

The government may argue that the trial judge's familiarity with the case weighs against a hearing. It is true that the D.C. Circuit generally respects a trial judge's decision not to hold a § 2255 hearing where the same judge presided over trial. *Gooch* and *Toms* recognize that principle. But that discretion does not override § 2255(b)'s text. A judge's trial familiarity may resolve claims conclusively refuted by the trial record; it cannot supply testimony about counsel's unrecorded strategic choices, investigation, communications with the client, or reasons for omitting dispositive motions and arguments. Moreover, this case was tried thirteen years ago, and trials involving other defendants charged in the Third Superseding Indictment have occurred in the interim, potentially clouding the court's recollection of the evidence presented against Mr. Martinez-Amaya.

C. <u>The record does not conclusively show that counsel had a reasonable strategic basis for failing to seek severance.</u>

Mr. Martinez-Amaya has alleged a specific, nonconclusory ineffective-assistance claim: trial counsel failed to move to sever him from a joint trial dominated by inflammatory evidence of murders, shootings, gang rules, threats, witness intimidation, and other acts largely attributable to others.

The trial record confirms the factual premise. Co-defendant counsel repeatedly objected to spillover prejudice from evidence such as the Sorto shooting and the three Reston murders, arguing relevance and prejudice. The court denied those objections. Mr. Martinez-Amaya's own Rule 29 motion later emphasized that the government failed to prove his involvement in multiple murders, including Luis Alberto Membreno-Zelaya, Giovanni Sanchez, Luis Chavez-Ponce, and Felipe Enriquez/Zombie. Counsel further argued there was no evidence Mr. Martinez-Amaya agreed to or was involved in robbery, extortion, drug distribution, witness tampering, or obstruction.

Those statements demonstrate that the government's case against Mr. Martinez-Amaya was materially narrower than the violent evidence admitted in the joint trial. Yet the existing record does not disclose why counsel did not file a Rule 14 severance motion, did not seek mid-trial severance as the spillover became concrete, and did not create a fuller severance record for appeal.

That gap matters under *Strickland*. The court cannot presume strategy where the record is silent and where the omitted motion was facially plausible. A hearing is needed to determine:

1. whether counsel considered severance at all;

2. whether counsel had a reasoned strategic basis for not filing;

3. whether counsel discussed severance with Mr. Martinez-Amaya;

4. whether counsel believed the evidence against co-defendants would benefit Martinez-Amaya, and if so, why;

5. whether counsel understood that a severance motion could preserve appellate review of spillover prejudice; and

6. whether counsel's omission resulted from strategy, oversight, or misunderstanding of Rule 14.

Those questions cannot be answered from the transcript alone. Under *Aguiar*, the question now is not whether Mr. Martinez-Amaya has already proven ineffective assistance; it is whether the record conclusively defeats his claim. It does not.

D. The record does not conclusively show that counsel had a reasonable strategic basis for failing to raise the omitted VICAR motive argument in the Rule 29 motion.

The second claim likewise requires a hearing. Counsel moved for judgment of acquittal and argued generally that the government had not proven enterprise, interstate commerce, agreement, racketeering acts, or Mr. Martinez-Amaya's involvement in murders, robbery, extortion, drugs, witness tampering, and obstruction.

But counsel did not make the separate, essential VICAR argument that the government failed to prove Mr. Martinez-Amaya acted for pecuniary gain or for the purpose of gaining entrance to, maintaining, or increasing his position in MS-13. That omission was glaring because co-defendant counsel made precisely that argument moments later for Machado-Erazo, arguing that VICAR required proof of pecuniary motive or position-maintenance motive and that the government had presented "absolutely no evidence" of either.

The hearing is necessary because the transcript establishes the omission but not its cause. Counsel may have overlooked the statutory element; misunderstood the proof required under

VICAR; believed his generalized Rule 29 motion preserved the issue; believed the argument lacked merit; or had some other explanation. The court cannot determine deficient performance without hearing from counsel.

Nor does the record conclusively defeat prejudice. Mr. Martinez-Amaya's Rule 29 motion already identified the evidentiary weaknesses that supported the omitted VICAR motive argument: no proof that he was involved in the charged murders; no proof tying him to robbery, extortion, drug distribution, witness tampering, or obstruction; and no proof of concrete acts by him constituting those predicates. The government's proof included calls involving "Crimen," but those calls largely showed association or discussion of clique business, not a statutory VICAR motive. For example, Government Exhibits 917 and 918 involved calls identifying Crimen and Cocky, discussing people "talking to the police" and money related to a gun, but that evidence did not necessarily establish that Mr. Martinez-Amaya committed a charged violent act to maintain or increase his MS-13 position or for pecuniary gain.

A hearing is therefore necessary to determine whether counsel's omission was professionally unreasonable and whether there is a reasonable probability that, had the VICAR motive argument been made and preserved, the result at trial or on appeal would have been different.

E. <u>The government cannot defeat a hearing by arguing the petition ultimately lacks merit.</u>

At the hearing stage, the question is not whether the petitioner has already carried his ultimate burden. *Aguiar* is directly on point: the D.C. Circuit rejected the view that a movant must prove the full merits before receiving a hearing, explaining that the question is whether the movant made sufficient allegations warranting a hearing to prove the claim.

The anticipated government arguments go to merits and credibility, not to whether a hearing is required. The government may argue that the severance motion would have been denied because joint trials are favored, or that the omitted Rule 29 argument would have failed because the jury could infer VICAR motive from MS-13 evidence. But those arguments do not conclusively defeat the petition. They require factual findings about counsel's reasoning, the comparative strength of the evidence against each defendant, the degree of spillover, whether counsel understood the VICAR motive issue, and whether the omission affected trial or appellate review.

Nor can the court reject the claim simply by labeling the omissions "strategy." *Strickland* deference applies to actual strategic choices made after reasonable investigation and legal assessment. A hearing is necessary to determine whether these were strategic choices at all.

F. <u>The court should grant a focused evidentiary hearing.</u>

Because Mr. Martinez-Amaya's claims turn on counsel's unrecorded reasoning for failing to seek severance and failing to preserve a VICAR-motive insufficiency argument, the existing trial record cannot conclusively defeat relief. A focused evidentiary hearing is therefore required.

Mr. Martinez-Amaya does not request an open-ended inquiry. The court can conduct a focused hearing limited to the two ineffective-assistance issues:

1. **Severance:** why trial counsel did not move to sever, renew severance during trial, or preserve a Rule 14 spillover-prejudice record; and

2. **Rule 29 / VICAR motive:** why trial counsel did not argue that the government failed to prove Mr. Martinez-Amaya acted for pecuniary gain or to gain entrance to, maintain, or increase his position in MS-13.

The court should receive testimony from trial counsel and permit examination regarding counsel's understanding of the evidence, the charged counts, Rule 14, Rule 29, VICAR motive, preservation for appeal, and communications with Mr. Martinez-Amaya. The court should also permit argument on whether counsel's omissions prejudiced trial or appellate review. Because the existing record does not conclusively show that Mr. Martinez-Amaya is entitled to no relief, § 2255(b), *Machibroda*, *Aguiar*, *Mohammed*, and *Todd* require an evidentiary hearing.

Respectfully Submitted,

JOSE MARTINEZ-AMAYA
By Counsel

THE LAW OFFICE OF LANA MANITTA, PLLC

By: _____/s/_____.
Lana Manitta, DC Bar #989100
1800 Diagonal Rd., Ste.600 PMB #1152
Alexandria, VA 22314
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Jose Martinez-Amaya

## NOTICE OF ELECTRONIC FILING/SERVICE

I HEREBY CERTIFY that on this the 11th day of Mau 2026, I filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a Notice of Electronic Filing (NEF) to all counsel of record.

THE LAW OFFICE OF LANA MANITTA, PLLC

By: _____/s/_____.
Lana Manitta, DC Bar #989100
1800 Diagonal Rd., Ste.600 PMB #1152
Alexandria, VA 22314
(703) 705-4428
FAX (703) 705-4429
Lmanitta@ManittaLaw.com
Counsel for Jose Martinez-Amaya